## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SWEPI, LP, a Delaware
Limited Partnership,

   Plaintiff,

vs.             No. CIV 14-0035 JB/SCY

MORA COUNTY, NEW MEXICO;
MORA COUNTY BOARD OF COUNTY
COMMISSIONERS, PAULA A. GARCIA,
Mora County Commissioner; JOHN P. OLIVAS,
Mora County Commissioner; and ALFONSO J.
GRIEGO, Mora County Commissioner,

   Defendants,

and

LA MERCED DE SANTA GETRUDIS DE LO
MORA, a Land Grant; and JACOBO E.
PACHECO, an individual,

   Intervenor-Applicants.

### MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court on Defendant Intervenor-Applicants' Motion to

Intervene, filed March 6, 2014 (Doc. 6)("Motion").   The Court held a hearing on November 3,

2014.   The primary issues are: (i) whether the La Merced de Santa Getrudis de lo Mora ("Mora

Land Grant") and Jacobo Pacheco (collectively "the Intervenor-Applicants") timely filed the

Motion; (ii) whether the Intervenor-Applicants have a protectable interest in the case; (iii) whether

the litigation may impair the Intervenor-Applicants' protectable interests; (iv) whether the

Defendants can adequately represent the Intervenor-Applicants' protectable interests; and

(v) whether the Court should exercise its discretion under rule 24(b) of the Federal Rules of Civil

Procedure to allow the Intervenor-Applicants to intervene in this case.   Because the Intervenor-Applicants timely filed the Motion, because, under controlling rulings from the United States Court of Appeals for the Tenth Circuit, they have a protectable interest that may be impaired, and because, under controlling Tenth Circuit decisions, the Defendants cannot adequately represent the Intervenor-Applicants' interests, the Court will grant the Motion and permit the Intervenor-Applicants to intervene under rule 24(a).   The Court disagrees with the relevant Tenth Circuit environmental case law, but it is bound to follow and apply the law fully and faithfully.   If the Court were not required to grant the Motion under rule 24(a), however, it would not permit intervention under rule 24(b), because the Defendants can adequately represent the Intervenor-Applicants' interests, and because the Intervenor-Applicants will not raise any additional arguments.

**FACTUAL BACKGROUND**

On April 29, 2013, the Mora County, New Mexico, Board of County Commissioners[1] adopted the "Mora County Community Water Rights and Local Self-Government Ordinance," Ordinance 2013-01 (the "Ordinance").   Motion ¶ 1, at 2.   The Ordinance created a bill of rights for the people of Mora County.   Motion ¶ 4, at 2.   It protects "those rights by prohibiting commercial hydrocarbon extraction, and related activities, within the County."   Motion ¶ 4, at 2.

1.     **The Parties.**

SWEPI, LP, is a Delaware Limited Partnership that has its principal place of business in Houston, Texas.   See Complaint for Declaratory and Injunctive Relief and Damages ¶ 3, at 2, filed January 10, 2014 (Doc. 1)("Complaint").   SWEPI, LP, has leased the mineral rights

---

[1]In the Motion, the Intervenor-Applicants contend that "the people of Mora County" also adopted the Ordinance "as an exercise of their constitutionally-guaranteed and inherent rights to local self-government."   Motion ¶ 3, at 2.   Because the people of Mora County did so through the County Commissioners and not by referendum, the Court will not refer to the people of Mora County as the enacting body, but will refer to the County Commissioners as the enacting entity.

associated with certain lands located in Mora County, New Mexico, for the purposes of exploring and producing hydrocarbons.   See Complaint ¶ 4, at 2.   According to SWEPI, LP, the leases have no economic value aside from the right to explore for and extract hydrocarbons.   See Complaint ¶ 4, at 2.   At least one of these leases was leased from the State of New Mexico, through the Commissioner of Public Lands.   See Complaint ¶ 5, at 2-3.   SWEPI, LP, represents that it is prepared to exercise its rights under the leases by exploring for and producing hydrocarbons within Mora County.   See Complaint ¶ 6, at 3.   Specifically, according to SWEPI, LP, it is prepared to (i) drill wells for the purpose of exploring for oil, gas, and other hydrocarbons; (ii) transport to and store in Mora County equipment for the exploration and extraction of oil, gas, and other hydrocarbons; and (iii) construct and maintain infrastructures related to the exploration and extraction of oil, gas, and other hydrocarbons.   See Complaint ¶ 6, at 3.

Mora County is a political subdivision of the State of New Mexico.   See Complaint ¶ 8, at 3.   Mora County has the governing authority and the power to act under color of state law as the New Mexico State Legislature has expressly granted.   See Complaint ¶ 8, at 3.   The Mora County Commissioners is the governing body responsible for exercising the powers that the State of New Mexico has vested in Mora County.   See Complaint ¶ 9, at 4.   Paula A. Garcia, John P. Olivas, and Alfonso J. Griego (collectively the "Individual Commissioners") are the three members of the Mora County Commissioners.   See Complaint ¶¶10-12, at 4.

According to the Intervenor-Applicants, the Mora Land Grant is a political subdivision of the State of New Mexico and is governed by: (i) the Treaty of Guadalupe Hidalgo; (ii) Sections 49-1-1 to -18 of the New Mexico Statutes Annotated; and (iii) the Mora Land Grant's bylaws. See Motion ¶ 9, at 3.   According to the Intervenor-Applicants, the Mora Land Grant was

established in 1835, was confirmed by Congress in 1860, and was patented in 1876.[2]   See Motion

¶ 9, at 3.   The majority of the individual members of the Mora Land Grant live in Mora County.

See Motion ¶ 10, at 4.   According to the Mora Land Grant, its purpose of is to

> protect and assert historical land rights, water rights and use rights of the members
> of the Land Grant, to protect, manage and reconstitute communal lands of the Land
> Grant, to ensure the health of the Land Grant in perpetuity, and to provide for the
> health, safety and general welfare of the residents of the Land Grant.

Motion ¶ 10, at 4.

Pacheco is a twenty-five year old Mora Count individual resident.   See Motion ¶ 12, at 5.

For five months, Pacheco chaired the Mora County "Democracy School Committee," which is an

association that Mora County residents formed to draft an ordinance for "Mora County that would

recognize rights for Mora residents and which would protect those rights by banning oil and gas

extraction within the County."   Declaration of Jacobo E. Pacheco ¶ 4, at 2, filed March 6, 2014

(Doc. 6-6)("Pacheco Dec.").   Pacheco lives about thirty miles from the New Mexico state lands

where SWEPI, LP, intends to drill for oil, gas, and other hydrocarbons.   See Pacheco Dec. ¶ 6,

at 2.   Pacheco and his family frequently visit the state lands, and Pacheco uses the state lands for

hunting, fishing, hiking, riding horseback, and traveling on all-terrain vehicles.   See Pacheco Dec.

¶ 7, at 2.

---

[2]The Mora Land Grant was established in 1835 when Mexican settlors settled the Valley of
Mora and petitioned the governor of the area to convey title of the land to them.   See Michael
Miller, Lo de Mora: A History of the Mora Land Grant on the Eve of Transition, New Mexico
Office of the State Historian, http://dev.newmexicohistory.org/filedetails.php?fileID=21925 (last
visited Dec. 2, 2014).   After the Mexican-American War, in 1859, two Mora residents petitioned
the United States Congress to confirm the Mora Land Grant on behalf of all Mora residents, which
Congress did.   See Miller, supra.   Because of the Civil War and "bureaucratic and legal
wrangling" the issuance of a land patent was delayed until 1876, when it was issued to the original
seventy-six grantees.   Miller, supra.
   A land patent "is an exclusive land grant made by a sovereign entity with respect to a
particular tract of land."   Land Patent, Wikipedia.org, http://en.wikipedia.org/wiki/Land_patent
(last visited Dec. 2, 2014).   "The patent stands as supreme title to the land because it attests that all
evidence of title existent before its issue date was reviewed by the sovereign authority under which
it was sealed and was so sealed as irrefutable."   Land Patent, supra.

2.      <u>**New Mexico Oil and Gas Rights**</u>.

New Mexico recognizes, as an interest in real property, a mineral interest that is severable from the surface estate.   <u>See</u> Complaint ¶ 18, at 5.   Mineral estates may be conveyed, leased, or reserved, and taxes are assessed against the mineral estate separately from the surface estate.   <u>See</u> Complaint ¶ 18, at 5.

The Enabling Act of 1910, 36 Stat. 557, granted New Mexico its statehood, gave New Mexico the authority to enact a state constitution and state laws, and transferred certain federal lands to the State of New Mexico to be held in trust for the benefit of public schools.   <u>See</u> Complaint ¶ 18, at 5.   Section 10 of the Enabling Act gave New Mexico the authority to sell or lease public state lands, with the proceeds from the sales and leases going towards public schools, public universities, or other public purposes.   <u>See</u> Complaint ¶ 19, at 5-6.

According to SWEPI, LP, the Land Commissioner is the executive officer of the State Land Office and has jurisdiction over all land that the State of New Mexico owns.[3]   <u>See</u> Complaint ¶ 21, at 6 (citing N.M. Stat. Ann. § 19-1-1 ("[T]he commissioner of public lands . . . shall have jurisdiction over all lands owned in this chapter by the state, except as may be otherwise specifically provided by law . . . .")).   The Land Commissioner is authorized to lease any state land for oil-and-gas development, subject to limitations the New Mexico Legislature places on the Land Office.   <u>See</u> Complaint ¶ 22, at 6.   The oil-and-gas lease forms, which the Land Commissioner is authorized to use, grants the lessee the exclusive right to explore, develop, and produce oil and gas on the specified state land, and grants the lessee various ancillary rights,

---

[3]While SWEPI, LP, contends that the Land Commissioner has jurisdiction over all land that the State of New Mexico owns, the Land Commissioner and the State Land Office have jurisdiction over only state trust lands.   <u>See</u> <u>State Trust Land</u>, New Mexico State Land Office, http://www.nmstatelands.org/overview-1.aspx (last visited Dec. 2, 2014)(noting that the State Land Office is responsible for state trust land).   The United States Congress granted state trust lands to the State of New Mexico through the Ferguson Act of 1898, 30 Stat. 484, and the Enabling Act of 1910.   <u>See</u> <u>State Trust Land</u>, <u>supra</u>.

including rights to drill for and produce oil.   See Complaint ¶ 23, at 6.   The Land Commissioner "has promulgated rules designed to ensure that oil-and-gas exploration and extraction is done with minimal disruption and damages to the surface estate and to prevent contamination of surface and subsurface waters."   Complaint ¶ 24, at 6-7.

In 1978, the New Mexico Legislature passed the New Mexico Oil and Gas Act, N.M. Stat. Ann. § 70-2-1 to -38.   See Complaint ¶ 25, at 7.   The Act created the Oil Conservation Commission and its sub-agency, the Oil Conservation Division.   See Complaint ¶ 25, at 7.   The Legislature empowered the Oil Commission "to conserve oil and gas, prevent waste, protect correlative rights, and to ensure that oil and gas operations throughout the state are conducted safely and do not impose an unreasonable risk to water, public health and the environment." Complaint ¶ 27, at 7.   The Oil Commission has adopted an extensive set of rules and regulations to carry out its mission.   See Complaint ¶ 29, at 7-8.   The Oil Commission also has the authority to obtain injunctions and to seek monetary penalties for violations of the Oil and Gas Act, or of its rules, regulations, or orders.   See Complaint ¶ 30, at 8.

### 3.    The Ordinance.

On April 29, 2013, the Individual Commissioners voted two to one to enact an anti-oil-and-gas ordinance, titled "Mora County Community Water Rights and Local Self-Government Ordinance."   Complaint ¶ 31, at 8.   The Ordinance, in full, provides:

> WHEREAS, We, the residents in Mora County, are a multi-cultural community with indigenous roots of Many; and
>
> WHEREAS, We recognize the Earth, water, and air as a source of life for all living in Mora County; and
>
> WHEREAS, We are convinced that the quality of life for residents in Mora County, for both the present and the future, will be destroyed if we allow at-risk exploitation and pollution of the Earth, water, and air; and

- 6 -

**WHEREAS, We the People of the County of Mora declare that we have the duty to safeguard the water both on and beneath the Earth's surface, and in the process, safeguard the rights of people within the county of Mora and the rights of the ecosystems of which Mora County is a part; and**

**WHEREAS, We the People of Mora County declare that all of our water is held in the public trust as a common resource to be used for the benefit of Mora residents and of the natural ecosystems of which they are a part.   We believe that industrial use of water supplies in this county placing the control of water in the hands of a corporate few, rather than the county would constitute abuse and usurpation; and that we are therefore duty bound to oppose such abuse and usurpation.   That same duty requires us to recognize that two centuries' worth of governmental conferral of constitutional powers upon corporations has deprived people of the authority to govern their own communities, and requires us to take affirmative steps to remedy that usurpation of governing power; and**

WHEREAS, we are conscious of the urgency of taking decisive action to protect our collective rights and the rights of future generations, and of ensuring a balanced environment for the survival of all residents of Mora County; THEREFORE,

BE IT ORDAINED BY THE GOVERNING BODY OF MORA COUNTY, NEW MEXICO . . . AN ORDINANCE PROTECTING THE RIGHT OF HUMAN COMMUNITIES, NATURE, AND NATURAL WATER, BY ESTABLISHING A LOCAL BILL OF RIGHTS FOR MORA COUNTY THAT PROTECTS THE NATURAL SOURCES OF WATER FROM DAMAGE RELATED TO THE EXTRACTION OF OIL, NATURAL GAS, OR OTHER HYDROCARBONS, BY AFFIRMING THE RIGHT TO LOCAL AUTONOMY AND SELF-GOVERNANCE, AND BY ELIMINATING LEGAL PRIVILEGES AND POWERS FROM CORPORATIONS VIOLATING THE ORDINANCE.

## Section 1.   Name and Purpose

Section 1.1 *Name*:   This Ordinance shall be known and may be cited as the "Mora County Community Water Rights and Local Self-Government Ordinance."

Section 1.2 *Purpose*:   The People of the County of Mora are a cohesive community of diverse elements, united by common culture, social bonds and a common destiny, and are represented politically in various aspects by the Mora County Government, numerous Acequias, Land Grants and Mutual Domestic Water Consumers Associations.   The People of Mora County recognize that water is essential for the life, prosperity, sustainability, and health of their community and that damage to natural groundwater and surface water sources imposes great tangible loss, to the People, natural communities and ecosystems of Mora County, not just for today but for future generations.   The People of Mora County recognize that they may be forced, without their consent, to endure or attempt to

repair harm inflicted on their environment and their vital water supply, which they have no equivalent governing authority to prevent under current state and federal law.   The governing body of Mora County adopts this Mora County Community Water Rights and Local Self-Government Ordinance to overcome that liability, to provide for community health and safety, to promote a sustainable lifestyle, and to secure the comfort and convenience of the people.

## Section 2.   Authority

This Ordinance is enacted pursuant to the inherent right of the residents of Mora County to govern their own community.   That authority precedes government and is secured, without limitation, by:

> The Treaty of Guadalupe Hidalgo, Article VIII & Article IX, which guarantees the "free enjoyment of their liberty and property" of the inhabitants of what became Mora County, and which states that property of every kind "shall be inviolably respected."   According to a 2001 Government Accounting Office report (http://www.gao.gov/new.iemts/d01951.pdt), this guarantees traditional communal use rights under the Treaty, including, but not limited to, the following rights-hunting "caza," pasture "pastas," wood gathering "leña," and watering "abrevederos;"

> The Declaration of Independence, which states that governments are instituted to secure the rights of people, "deriving their just powers from the consent of the governed;"

> The New Mexico Constitution, Article 2, which declares that "all political power is vested in and derived from the people: all government of right originates with the people, is founded upon their will and is instituted solely for their good."   That section also declares that the people "have the sole and exclusive right to govern themselves as a free, sovereign, and independent state" and that "all persons are born equally free, and have certain natural, inherent and inalienable rights" and that "[t]he enumeration in this constitution of certain rights shall not be construed to deny, impair, or disparage others retained by the people;"

> The Mora County Comprehensive Land Use Plan, which states that "[t]he connection between our land, our water and our people has sustained our culture since the first settlements in Mora County, and our future depends on keeping these connections strong.   Water is a vital link, which, if severed from the land, will also fragment our people from their land.   The allocation of our limited water resources must recognize traditional subsistence agricultural and grazing activities as a priority over other types of more profitable

land uses.   Water is not just a commodity to be bought and sold, or exploited for short-term gains.   Water is the lifeblood of Mora County's traditions, culture and land use.   A sustainable future for Mora County requires protection of the most valuable resource for our communities -- the Water!"

## Section 3.   Definitions

<u>Section 3.1:</u>   "Corporation" shall mean any corporation, limited partnership, limited liability partnership, business trust, or limited liability company organized under the laws of any state of the United States or under the laws of any country, and any other business entity that possesses State-conferred limited liability attributes for its owners, directors, officers, and/or managers.

<u>Section 3.2:</u>   "Extraction" shall mean the digging or drilling of a well for the purposes of exploring for, developing or producing oil, natural gas, or other hydrocarbons.

<u>Section 3.3:</u>   "Horizontal drilling" shall mean intentional deviation of a wellbore from the vertical for the purpose of reaching subsurface areas laterally remote from the point where a well drilling bit or similar equipment enters the earth at the surface.

<u>Section 3.4:</u>   "Hydraulic fracturing" shall mean an activity in which water, propane, diesel, chemicals and a solid proppant or any other agent are pumped into a wellbore at a rate sufficient to increase the pressure downhole to a value in excess of the fracture gradient of the formation rock, causing the formation to crack, thus allowing the fracturing fluid to enter and extend the crack farther into the formation, forming passages through which natural gas, oil, or other hydrocarbons can flow.

<u>Section3.5:</u>   "Hydrocarbons" shall mean any of numerous organic compounds, such as benzene and methane, that contain only carbon and hydrogen.

<u>Section 3.6:</u>   "La Querencia de la Tierra" shall mean the loving respect which Mora County residents have towards the land and Earth, which is rooted in our indigenous worldview -- the Earth is living and holy, is the habitat that sustains us, and is composed of all natural & living systems, flora and fauna -- interrelated, interdependent and complementary -- which share our common destiny: The right to live free from contamination.

<u>Section 3.7:</u>   "Natural Gas" shall mean any gaseous substance, either combustible or noncombustible, which is produced in a natural state from the earth and which maintains a gaseous or rarified state at standard temperature or pressure conditions, and/or gaseous components or vapors occurring in, or derived from, petroleum or natural gas.

Section 3.8:   "Oil" shall mean any thick, flammable, yellow-to-black mixture of gaseous, liquid, and solid hydrocarbons that occur naturally beneath the earth's surface.

## Section 4.   Statements of Law -- Rights of Mora County Residents and the Natural Environment

Section 4.1. *Right to Water*:   All residents, natural communities and ecosystems in Mora County possess a fundamental and inalienable right to sustainably access, use, consume, and preserve water drawn from natural water cycles that provide water necessary to sustain life within the County.

Section 4.2. *Right of Water for Agriculture*:   All Mora County residents possess the fundamental and inalienable right to unpolluted natural water to produce healthy food, to nourish our bodies, livestock and land and to continue "La Querencia de la Tierra," Love of the Land.

Section 4.3. *Rights of Natural Communities*:   Natural communities and ecosystems, including, but not limited to, wetlands, streams, rivers, aquifers, and other water systems, possess inalienable and fundamental rights to exist and flourish within Mora County against oil and gas extraction.  Residents of the County, along with the Mora County Commission, shall possess legal standing to enforce those rights on behalf of those natural communities and ecosystems. Natural communities and ecosystems protected by this ordinance shall be protected on all lands within Mora County, including those owned by the state and federal government

Section 4.4. *Right to a Sustainable Energy Future*:   All residents, natural communities, and ecosystems in Mora County possess a right to a sustainable energy future, which includes, but is not limited to, the development, production, and use of energy from renewable fuel sources, and the right to have an energy system based on fuel sources other than fossil fuel sources.  This right shall also include the right to energy practices that do not cause harm, and which do not threaten to cause harm, to people, communities, or the natural environment.

Section 4.5. *Right to Self-Government*:   All residents of Mora County possess the fundamental and inalienable right to a form of governance where they live which recognizes that all power is inherent in the people, that all free governments are founded on the people's authority and consent, and that corporate entities and their directors and managers shall not enjoy special privileges or powers under the law which make community majorities subordinate to them.

Section 4.6 *People are Sovereign*:   The Mora County Commission shall be the governing authority responsible to, and governed by, the residents of the County. Use of the "Mora County" municipal corporation by the sovereign people of the

County to make law shall not be construed to limit or surrender the sovereign authority or immunities of the people to a municipal corporation that is subordinate to them in all respects at all times.   The people at all times enjoy and retain an inalienable and indefeasible right to self-governance in the community where they reside.

Section 4.7.  *Rights of La Querencia de la Tierra*:     The farm-based indigenous/mestizo (mixed blood) people who created the original Mora County culture considered the Earth to be living and holy; thus they referred to their homeland as "La Querencia de la Tierra," Love of the Land.   This sacredness connotes an intrinsic right of the land to exist without defilement.

Section 4.8. *Rights are Self-Executing*:   All rights delineated and secured by this ordinance shall be self-executing and these rights shall be enforceable against both public and private actors, and shall not require implementing legislation for their enforceability.

Section 4.9. *Exemption.*   Nothing in this ordinance shall be construed in such a manner as to impact the water rights of acequias, Mutual Domestic Water Consumers Associations or land grant, or to affect or color any negotiations regarding water rights, distribution or usage between these political subdivisions and the County of Mora.

**Section 5.   Statements of Law Prohibitions Necessary to Secure Bill of Rights' Protections**

Section 5.1:   It shall be unlawful for any corporation to engage in the extraction of oil, natural gas, or other hydrocarbons within Mora County.

Section 5.2:   It shall be unlawful for any corporation to engage in the extraction of water from any surface or subsurface source within Mora County for use in the extraction of subsurface oil, natural gas, or other hydrocarbons, or for any director, officer, owner, or manager of a corporation to use a corporation to extract water from any surface or subsurface source, within Mora County, for use in the extraction of subsurface oil or natural gas or other hydrocarbons.   It shall be unlawful for a corporation to import water or any other substance, including but not limited to, propane, sand, and other substances used in the extraction of oil, natural gas, or other hydrocarbons, into Mora County for use in the extraction of subsurface oil, natural gas, or other hydrocarbons; or for any director, officer, owner, or manager of a corporation to do so.

Section 5.3:   It shall be unlawful for any corporation, or any director, officer, owner, or manager of a corporation to use a corporation to deposit, store, transport or process waste water, "produced" water, "frack" water, brine or other materials, chemicals or by-products used in the extraction of oil, natural gas, or other hydrocarbons, into the land, air or waters within Mora County.

- 11 -

Section 5.4:  It shall be unlawful for any corporation, or any director, officer, owner, or manager of a corporation to use a corporation to construct or maintain infrastructure related to the extraction of oil, natural gas, or other hydrocarbons within Mora County.   "Infrastructure" shall include, but not be limited to, pipelines or other vehicles of conveyance of oil, natural gas, or other hydrocarbons, and any ponds or other containments used for wastewater, "frack" water, or other materials used during the process of oil, gas, or other hydrocarbon extraction.

Section 5.5:   Corporations in violation of the prohibitions enacted by this ordinance, or seeking to engage in activities prohibited by this ordinance, shall not have the rights of "persons" afforded by the United States and New Mexico Constitutions, nor shall those corporations be afforded rights under the 1st or 5th amendments to the United States Constitution or corresponding sections of the New Mexico Constitution, nor shall those corporations be afforded the protections of the commerce or contracts clauses within the United States Constitution or corresponding sections of the New Mexico Constitution.

Section 5.6:   Individuals or corporations in violation of the prohibitions enacted by this ordinance, or seeking to engage in activities prohibited by this ordinance, shall not possess the authority or power to enforce State or federal preemptive law against the people of Mora County, or to challenge or overturn County ordinances adopted by the Mora County Commission, when that enforcement or challenge interferes with the rights asserted by this ordinance or interferes with the authority of the county to protect the health, safety, and welfare of its residents.

Section 5.7:   No permit, license, privilege or charter issued by any state or federal agency, Commission or Board to any person or any corporation operating under a State charter, or any director, officer, owner, or manager of a corporation operating under a State charter, which would violate the prohibitions of this Ordinance or deprive any County resident(s), natural community, or ecosystem of any rights, privileges, or immunities secured by this Ordinance, the Treaty of Guadalupe Hildalgo, the New Mexico Constitution, the United States Constitution, or other laws, shall be deemed valid within Mora County.

Section 5.8:   The New Mexico Constitution's Bill of Rights, and the United States Constitution's Bill of Rights and amendments thereto, shall be recognized as preemptive law within the County of Mora only to the extent that their interpretation and application are not inconsistent with the provisions of this Ordinance regarding the powers and "rights" of corporations, and to the extent that they do not otherwise elevate property interests over rights secured by this Ordinance.

Section 5.9:   Laws adopted by the legislature of New Mexico and rules adopted by any State agency, and laws adopted by the United States Congress and rules adopted by any federal agency, shall be recognized as preemptive law within the

County of Mora only if those laws and rules both expressly preempt County ordinances and charters, and provide greater protections for the health, safety, and welfare of the people of Mora County than County ordinances and charters.

## Section 6.   Strict Liability

Section 6.1:   Persons using corporations to engage in the extraction of oil, natural gas or other hydrocarbons in a neighboring municipality shall be strictly liable for all harms caused to the health, safety, and welfare of the residents of Mora County from those activities, and for all harms caused to ecosystems and natural communities within Mora County.

## Section 7.   Future Lost Profits

Section 7.1:   Within the County of Mora, corporate claims to "future lost profits" shall not be considered property interests under the law, and thus, shall not be recoverable by corporations seeking those damages.

## Section 8.   Enforcement

Section 8.1:   Any violation of any provision of this Ordinance shall be considered a criminal offense, punishable by maximum penalties and imprisonment as authorized by applicable New Mexico law.  Each instance of a violation of the provisions of this Ordinance shall be treated as a separate offense subject to penalties authorized by applicable New Mexico law.

Section 8.2:   Mora County may enforce this Ordinance through an action brought in any court of competent jurisdiction.  In such an action, Mora County shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees, in addition to damages caused by the violation of this ordinance.

Section 8.3:   Any County resident shall have the authority to enforce this Ordinance through an action brought in a court of competent jurisdiction.   In such an action, the resident shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees.

Section 8.4:   Any person or municipality who brings an action to secure or protect the rights of natural communities or ecosystems against oil and gas extraction within Mora County shall bring that action in the name of the natural community or ecosystem in a court of competent jurisdiction.   Damages shall be measured by the cost of restoring the natural community or ecosystem to its pre-damaged state, and shall be paid to the County of Mora or other applicable governmental entity, to be used exclusively for the full and complete restoration of the natural community or ecosystem.

Section 8.5. Reinstatement of Moratorium on Oil and Gas Extraction.   In the event that this ordinance is overturned or nullified, for any reason, a moratorium on the extraction of oil and gas within the County of Mora shall become effective on the date that this ordinance becomes inactive.   That temporary moratorium shall have a duration of no more than six months, during which the Board of County Commissioners shall adopt another ordinance which permanently bans hydrocarbon extraction within the County of Mora.

## Section 9   Effective Date and Existing State Permit Holders

This Ordinance shall be effective five (5) days after the date of its enactment, at which point the Ordinance shall apply to any and all extractions of oil, natural gas, or other hydrocarbons in Mora County regardless of the date of any applicable governmental permits.

## Section 10. County Commission Action and Voter Referenda to Repeal Ordinance

The foundation for the making and adoption of this law is the people's fundamental and inalienable right to govern themselves, and thereby secure their rights to life, liberty, and the pursuit of happiness.   Accordingly, this Ordinance automatically suspends the operating rules of the Mora County Commission when the question of repealing this Ordinance is introduced.   Repeal of this ordinance shall require both a unanimous vote of the Mora County Commissioners voting in favor of the repeal of the ordinance, and a voter referenda following that vote which shall make the repeal effective only if two thirds of the Mora County electorate vote to repeal the ordinance.

## Section 11.   People's Right to Self-Government - Preemption

Any attempts to use other units and levels of government to preempt, amend, alter, or overturn this Ordinance, or parts of this Ordinance, shall require the County Commission to hold public meetings that explore the adoption of other measures that expand local control and the ability of residents to protect their fundamental and inalienable right to self-government.   Such consideration may include actions to separate the County from the other levels of government used to preempt, amend, alter, or overturn the provisions of this Ordinance or other levels of government used to intimidate the people of Mora County or their elected officials.

## Section 12.   New Mexico Constitutional Changes

Through the adoption of this local law, the people of Mora County call for amendment of the New Mexico Constitution to explicitly secure a community right to local self-government that cannot be preempted by the State if the community's laws enforce rights or standards more protective of the health, safety, and welfare of the people of Mora County and the natural environment, communities, and

ecosystems.  The people of Mora County also call for a state constitutional amendment that explicitly elevates community rights above corporate property rights, and that recognize the rights of nature enforceable by the residents of a community.

**Section 13.    Severability**

The provisions of this Ordinance are severable.  If any court of competent jurisdiction decides that any section, clause, sentence, part, or provision of this Ordinance is illegal, invalid, or unconstitutional, such decision shall not affect, impair, or invalidate any of the remaining sections, clauses, sentences, parts, or provisions of the Ordinance.   The Mora County Commission hereby declares that in the event of such a decision, and the determination that the court's ruling is legitimate, it would have enacted this Ordinance even without the section, clause, sentence, part, or provision that the court decides is illegal, invalid, or unconstitutional.

**Section 14.   Repealer**

All inconsistent provisions of prior Ordinances adopted by the Mora County Commission are hereby repealed, but only to the extent necessary to remedy the inconsistency.

Mora County, N.M., Ordinance 2013-10 (2013), filed January 10, 2014 (Doc. 1-1)("Ordinance")(alterations in original)(bold-face in original).

## PROCEDURAL BACKGROUND

On January 10, 2014, SWEPI, LP, filed suit against Mora County, the Mora County Commissioners, and the Individual Commissioners, bringing a number of federal and state claims. See Complaint at 1.   SWEPI, LP, seeks both injunctive and compensatory relief.   See Complaint ¶¶ 142-52, at 27-28.   Specifically, SWEPI, LP, seeks a declaration that the Ordinance is unconstitutional and that it violates state law, and seeks an entry of judgment that permanently enjoins Mora County from enforcing the Ordinance.   On March 6, 2014, the Intervenor-Applicants filed a motion to intervene as a right or, alternatively, for permissive intervention pursuant to rule 24(b).   See Motion at 1.   On April 9, 2014, the Defendants filed a notice stating that Mr. Jeffrey H. Haas is appearing on behalf of the Defendants.   See Notice of

Appearance at 1, filed April 9, 2014 (Doc. 14).   Mr. Haas also signed the Motion as the Intervenor-Applicants' counsel.   See Motion at 7.

1.   **The Motion and Memorandum in Support.**

On March 6, 2014, the Intervenor-Applicants filed the Motion and the Defendant Intervenor-Applicants' Memorandum in Support of Motion to Intervene, filed March 6, 2014 (Doc. 7)("Memo."). The Intervenor-Applicants assert that the Mora County Commissioners enacted the Ordinance "as an exercise of their police powers and their statutory authority," and that the people of Mora County "adopted the Ordinance as an exercise of their constitutionally-guaranteed and inherent rights to local self-government." Motion ¶¶ 2-3, at 2. The Intervenor-Applicants contend that the Ordinance recognizes and protects a number of rights, including "the right to water, the right to water for agriculture, the right to a sustainable energy future, the rights of natural communities, the rights of La Querencia de La Tierra, and the right to local self-government." Motion ¶ 5, at 2. The Intervenor-Applicants assert that the Mora Land Grant supported the adoption of the Ordinance, and that many members of the Mora Land Grant participated in the drafting of the ordinance and testified in favor of its passage. See Motion ¶¶ 10-11, at 4. The Intervenor-Applicants also assert that Pacheco was involved in drafting the Ordinance. Pacheco Dec. ¶¶ 4-5, at 2. They assert that a ruling in SWEPI, LP's favor will adversely affect the Intervenor-Applicants' interests. See Motion ¶¶ 12-13, at 5; id. ¶¶ 16-18, at 6.

The Intervenor-Applicants attached to the Motion: (i) a copy of the Ordinance; (ii) the Mora Land Grant's bylaws, see Bylaws of Foundation for Self-Sufficiency (Central America), filed March 6, 2014 (Docs. 6-2 & 6-3); (iii) minutes from the Mora Land Grant's Board of Trustee's meeting in which they decided to intervene in the lawsuit, see La Merced de Santa

Getrudis de lo de Mora (Mora Land Grant), Board of Trustees Meeting -- February 26, 2014, filed March 6, 2014 (Doc. 6-4); (iv) a statement by the Mora Land Grant officially supporting the Ordinance, see La Merced de Santa Getrudis de lo de Mora (Mora Land Grant), Statement on Protection of Our Land and Water from Oil and Gas Development, filed March 6, 2014 (Doc. 6-5); (v) and Pacheco's declaration, see Pacheco Dec. ¶¶ 1-14, at 1-3.   The Intervenor-Applicants also attached a Motion to Dismiss.   See Motion to Dismiss, filed March 6, 2014 (Doc. 6-8)("MTD"). In the MTD, the Intervenor-Applicants argue that, because the Ordinance states that corporations do not have any rights that the Constitution of the United States of America or the New Mexico Constitution guarantees, and because the Ordinance states that corporations do not have a right to challenge or overturn the Ordinance, SWEPI, LP, which is a corporation by the Ordinance's definitions, lacks any constitutional protections within Mora County to challenge the Ordinance. See MTD ¶¶ 1-15, at 1-4.   In the MTD, the Intervenor-Applicants argue that, because SWEPI, LP, has no constitutional rights within Mora County -- because the Ordinance took away those rights -- the Court must dismiss SWEPI, LP's Complaint under rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure for failure to state a claim and for lack of standing.   See MTD ¶¶ 14-19, at 4-5.

The Intervenor-Applicants also filed a Memorandum providing the legal arguments for intervention.  See Memo. at 1-19.  The Intervenor-Applicants argue that rule 24(a)(2) of the Federal Rules of Civil Procedure provides a party with a right to intervene in a case "'if (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties.'"  Memo. at 5-6 (quoting Elliot Indust. LP v. BP Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005)).  The

Intervenor-Applicants argue that the Tenth Circuit follows a "'somewhat liberal line in allowing intervention,'" Memo. at 6 (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1249 (10th Cir. 2001)), and that the factors "'are not rigid, technical requirements,'" but instead intervention "'should be granted . . . if the interests favoring intervention outweigh those opposed,'" Memo. at 6 (quoting San Juan Cnty. v. United States, 503 F.3d 1163, 1195 (10th Cir. 2007)(en banc)("San Juan County")).

The Intervenor-Applicants first argue that the Motion is timely.   See Memo. at 6.   They argue that they filed the Motion before the Defendants filed an answer to the Complaint and before the Court entered a scheduling order.   See Memo. at 6.   The Intervenor-Applicants contend that, because the case is in its early stages, and because the Motion would not delay the litigation or prejudice the parties, the request is timely.   See Memo. at 6.

Next, the Intervenor-Applicants argue that they have interest in the subject matter of the litigation.   See Memo. at 7-10.   The Intervenor-Applicants contend that an interest "must be 'direct, substantial, and legally protectable,'" Memo. at 7 (quoting Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 840 (10th Cir. 1996)), and that, in the Tenth Circuit, "it is 'indisputable that a prospective intervenor's environmental concern is a legally protectable interest,'" Memo. at 7 (quoting WildEarth Guardians v. Nat'l Park Serv., 604 F.3d 1192, 1198 (10th Cir. 2010)).   The Intervenor-Applicants maintain that they have interests in environmental concerns and in the right to self-governance.   See Memo. at 7.   The Intervenor-Applicants contend that they have "a direct, substantial, and legally protectable interest in ensuring that the Ordinance's 'Bill of rights' is enforced."   Memo. at 8.   They argue that they publicly supported the Ordinance's adoption and that public interest groups which support a piece of legislation have a protectable interest in defending the legislation's legality.   See Memo. at 8

(citing <u>Sagebrush Rebellion, Inc. v. Watt</u>, 713 F.2d 525, 528 (9th Cir. 1983)).    The Intervenor-Applicants contend that this interest goes to their rights to self-governance.  <u>See</u> Memo. at 8.

The Intervenor-Applicants argue that the Mora Land Grant's bylaws state that its purpose is to protect and assert historical land, water, and use rights; to protect, manage, and reconstitute the Land Grant's communal lands to ensure the hearth of the land grant; and to provide for the health, safety, and general welfare of the land grant's residents.  <u>See</u> Memo. at 8.  The Intervenor-Applicants assert that the Mora Land Grant's public statement supporting the Ordinance reaffirmed these purposes.  <u>See</u> Memo. at 8.  They also contend that the members of the Mora Land Grant have an interest in hunting, fishing, camping, gathering wood, farming, and engaging in other activities in the areas in which SWEPI, LP, seeks to extract hydrocarbons.  <u>See</u> Memo. at 8.

The Intervenor-Applicants assert that Pacheco is a Mora County resident, and that the Ordinance recognizes that Mora County residents "'possess a fundamental and inalienable right to sustainably access, use, consume, and preserve water drawn from natural water cycles that provide water necessary to sustain life within the County.'"   Memo. at 9-10 (quoting Ordinance § 4.1). The Intervenor-Applicants further argue that the United States Forest Service's policy on managing the national forest land in Northern New Mexico "recognizes that Spanish Americans and Indians in Northern New Mexico have a unique connection to the land and natural resources." Memo. at 10.  They contend that "Mora County is a municipal corporation" and that "Mora County residents possess *rights* under the Ordinance which are distinct from the *powers* of Mora County."  Memo. at 10 (emphasis in original).   Similarly, the Intervenor-Applicants argue that

the Ordinance "secures the rights of Mora County *residents and Mora County communities*" and not the rights of Mora County, the municipality.   Memo. at 10 (emphasis in original).

The Intervenor-Applicants next argue that this case may impair their interests in the Ordinance.   See Memo. at 10-12.   They maintain that the burden of proving impairment is a small one and that they need to show only that it is possible that their legal interests will be impaired if intervention is denied.   See Memo. at 10.   The Intervenor-Applicants argue that SWEPI, LP, is seeking a declaration that the Ordinance is invalid, which "would irreparably harm the proposed Intervenors because it would remove individual and community rights that are currently vested under the Ordinance."   Memo. at 11 (citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d at 528).   The Intervenor-Applicants further argue that a decision in SWEPI, LP's favor "would make it impossible for Mora County residents to enforce the Ordinance," and would impair their "land and water rights," and their "right to preserve water and protect natural resources."   Memo. at 11.   The Intervenor-Applicants argue that a decision for SWEPI, LP, would also impair their interest in pursuing "routine outdoor activities without the presence of extractive industries in the same areas."   Memo. at 11-12.

Finally, the Intervenor-Applicants argue that Mora County, the Mora County Commissioners, and the Individual Commissioners will not adequately represent their rights and interests.   See Memo. at 12-18.   The Intervenor-Applicants contend that they need show only the possibility of inadequate representation and that the burden of showing inadequate representation is not high.   See Memo. at 12.   They argue that the "Tenth Circuit has repeatedly granted intervention to environmental and other groups where the question is whether a governmental body will adequately represent the intervenors' interests."   Memo. at 12 (citing Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1249; Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't

of Interior, 100 F.3d at 841).   The Intervenor-Applicants further argue that, generally, "'where a government agency may be placed in the position of defending both public and private interests, the burden of showing inadequacy of representation is satisfied.'"   Memo. at 12 (quoting WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200).

The Intervenor-Applicants argue that, in Utah Association of Counties v. Clinton, the Tenth Circuit allowed environmental agencies to intervene in a lawsuit in which the plaintiff alleged that the Secretary of the Interior created the Grand Escalante National Monument in an illegal attempt the prevent underground coal mining.   See Memo. at 12-13.   There, the Intervenor-Applicants contend, the Tenth Circuit held that, because "'the government is obligated to consider a broader spectrum of views, many of which may conflict with a particular interest of the would-be intervenor,'" the environmental organizations met the minimal burden of showing inadequate representation.   Memo. at 13 (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256).

The Intervenor-Applicants also argue that, in Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, the Tenth Circuit allowed a wildlife photographer to intervene in an action that an organization brought against the Department of Interior, the United States Fish and Wildlife Service, and various government officials, challenging the Wildlife Service's protection of the Mexican Spotted Owl under the Endangered Species Act, 16 U.S.C. §§ 1531-1544.   See Memo. at 13.   There, the Intervenor-Applicants assert, the Tenth Circuit held that the Department of Interior had to represent the public interest, which may differ from the photographer's particular interest in protecting the owls' habitat, where he photographed and studied the owls.   See Memo. at 13-14 (citing Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845).   The Intervenor-Applicants also

discuss National Farm Lines v. Interstate Commerce Commission, 564 F.2d 381 (10th Cir. 1977), and assert that the Tenth Circuit held that it was impossible for a government agency to represent both the public's interest and the intervenors' private interests.   See Memo. at 14.

The Intervenor-Applicants argue that Mora County must represent the interests of every member of the public, some of whom may favor oil-and-gas drilling.   See Memo. at 15.   The Intervenor-Applicants argue that, by representing all of its residents, Mora County's views may conflict with their interests.   See Memo. at 15.   The Intervenor-Applicants maintain that the Tenth Circuit has recognized potential conflicts between the interests of government agencies, which enacted a law or regulation, and the intervenors' interests, who seek to defend the law or regulation.   See Memo. at 15.

The Intervenor-Applicants contend that their acts of drafting and proposing the Ordinance weigh in favor of intervention.   See Memo. at 15 (citing Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d at 383).   They assert that they "will likely make legal arguments directly relevant to the issues in this litigation that Mora County may not make."   Memo. at 15 (citing Colorado City v. United Effort Plan Trust, No. CIV 11-8037 PCT/DGC, 2013 WL 1932838 (D. Ariz. May 8, 2013)(Campbell, J.)).   Specifically, the Intervenor-Applicants contend that they will argue that the "authority of the people of Mora to local self-government is sufficient authority for the adoption of the Ordinance," while the Defendants will only argue that "the power of the municipal corporation itself . . . grants that authority."   Memo. at 16.   The Intervenor-Applicants argue that "[l]itigation of this case without the Intervenors' argument makes it exponentially more likely that the Ordinance will be nullified by the Plaintiff-Corporation's arguments."   Memo. at 16.

The Intervenor-Applicants assert that the "only exception to the presumption in favor of granting intervention in this context is where the government and intervenors' objectives are *identical*." Memo. at 16 (emphasis in Memo.)(citing San Juan Cnty., 503 F.3d at 1204; Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986)). The Intervenor-Applicants contend that the Tenth Circuit has not applied that exception in a case that is analogous with this one. See Memo. at 16. They assert that they share a broad goal with the Defendants in defending the Ordinance but that this broad goal does not cause the Defendant's representation to be adequate. See Memo. at 16. The Intervenor-Applicants contend that the Defendants may shift their litigation strategy to avoid potential damages, which weighs in favor of intervention. See Memo. at 16 (citing N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x 877, 881 (10th Cir. 2013)(unpublished); WildEarth Guardians v. U.S. Forest Serv., 573 F.3d 992, 996 (10th Cir. 2009); Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 844-45).

The Intervenor-Applicants also argue that, if the Court denies their application to intervene as a right under rule 24(a), then it should allow them to intervene under rule 24(b), which provides for permissive intervention. See Memo. at 17. They contend that rule 24(b) allows permissive intervention if they timely filed their application, and have "'a claim or defense that shares with the main action a common question of law or fact.'" Memo. at 17-18 (quoting Fed. R. Civ. P. 24(b)(1)(B)). The Intervenor-Applicants assert that a permissive intervenor does not need to have "'a direct personal or pecuniary interest in the subject of the litigation,'" and that the decision whether to grant a motion for permissive intervention is within the Court's discretion. Memo. at 18 (quoting San Juan Cnty., 503 F.3d at 1207). They also argue that, in exercising this

discretion, the Court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights.   See Memo. at 18.

The Intervenor-Applicants argue that permissive intervention is appropriate because their defense of the Ordinance shares common questions of law and fact with the original action.   See Memo. at 18.   Additionally, they argue that they were key proponents of the Ordinance and that their fundamental rights are at stake in the case.   See Memo. at 18.   They assert that intervention will not delay the case or prejudice the existing parties, and that their participation in the case will assist the Court "in reviewing the complex legal issues" and "will conserve judicial resources by reducing duplicitous litigation."   Memo. at 18.

### 2.    The Original Parties' Responses.

Mora County, the Mora County Commissioners, and the Individual Commissioners filed a statement, which notes that "they have no opposition to the Intervention by" the Intervenor-Applicants.   Statement of Non-Opposition to Intervention, filed April 9, 2014 (Doc. 15)("Statement").   Mr. Haas, the same attorney who represents the Intervenor-Applicants, supplied the Statement.   See Statement at 2.   Accordingly, as of April 9, 2014, Mr. Haas represents the Defendants and the Intervenor-Applicants.

SWEPI, LP, opposes intervention.   See Plaintiff's Response in Opposition to Applicant's Motion to Intervene (Doc. 6), filed March 20, 2014 (Doc. 12)("Response").   SWEPI, LP, argues that the Defendants are capable of defending the Ordinance's constitutionality, and that "there is no divergence of interest between Defendants and Applicants."   Response at 2.   SWEPI, LP, also argues that the Intervenor-Applicants do not meet permissive intervention's requirements and that allowing the Intervenor-Applicants to intervene would "create substantial problems pertaining to

manageability and would open the floodgates for every other concerned party to file a similar motion."   Response at 2.

SWEPI, LP, argues that each individual intervenor must meet rule 24(a)'s requirements. See Response at 2 n.1.   Without addressing whether the Intervenor-Applicants have a legally protected interest, SWEPI, LP, argues that the Intervenor-Applicants and the Defendants "share precisely the same goal in this litigation -- to defend the constitutionality of the Ordinance." Response at 3.   SWEPI, LP, contends that this alignment of objectives causes the Intervenor-Applicants' interests to be adequately protected.   See Response at 3.

SWEPI, LP, contends that the facts in San Juan County "are virtually identical to those at issue here."   Response at 3.   It asserts that San Juan County involved a quite title action by San Juan County against the United States of America in regards to certain roads that were located in a national park in Utah.   See Response at 3.   SWEPI, LP, contends that several conservation groups sought to intervene as defendants to support the United States' position and that the district court denied the application for intervention, because the intervenors' interests were adequately represented.   See Response at 3.   SWEPI, LP, contends that the Tenth Circuit held that, because the United States' interest were so closely aligned with the intervenors' interests, the United States adequately protected their interests.   See Response at 3.   SWEPI, LP, also contends that the Tenth Circuit examined cases in which courts have considered whether an intervenor's interests were adequately protected and held that there is a "'general presumption that representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties.'"   Response at 3 (quoting San Juan Cnty., 503 F.3d at 1204).

SWEPI, LP, argues that the Tenth Circuit's approach in San Juan County is applicable in this case, because the Intervenor-Applicants' "sole interest in this case is to defend the

constitutionality of the Ordinance," which is the "same interest held by the existing Defendants." Response at 4.   SWEPI, LP, addresses the Intervenor-Applicants' contention that Mora County must balance the interests of all members of the public by arguing that Mora County discharged this duty through the legislative process by passing the Ordinance.   See Response at 4. SWEPI, LP, contends that, after passing the ordinance, "there is absolutely no reason to believe that Defendant Mora County will suddenly change its mind and refuse to defend the constitutionality of the Ordinance."   Response at 4.   SWEPI, LP, maintains that the cases the Intervenor-Applicants cite, which concern parties potentially changing their stance or strategy, are distinguishable, because those cases involve administrative action and not legislative action.   See Response at 4-5 (citing Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d at 381). SWEPI, LP, further argues that, if the Defendants changed their minds about the Ordinance, they could simply repeal or amend it.   See Response at 5.

SWEPI, LP, asserts that the Intervenor-Applicants' arguments focus on only one of the Defendants: Mora County.   See Response at 5.   SWEPI, LP, contends that, if any of the Defendants adequately protect the Intervenor-Applicants' interests, the federal court should deny intervention.   See Response at 5 (citing San Juan County, 503 F.3d at 1204).   It argues that the Intervenor-Applicants have not argued that all of the Defendants may "suddenly fold their tents and decline to defend the constitutionality of the Ordinance."   Response at 5.   SWEPI, LP, maintains that, even if all of the Defendants may eventually decide to stop defending the Ordinance, now is not the proper time to consider intervention.   See Response at 5 (citing San Juan County, 503 F.3d at 1207).

SWEPI, LP, argues that the United States Court of Appeals for the First Circuit's case of Maine v. United States Fish and Wildlife Service, 262 F.3d 13 (1st Cir. 2001), is more factually

analogous to this case than <u>San Juan County</u>.   <u>See</u> Response at 5.   SWEPI, LP, contends that, in

that case, the Wildlife Service designated the Atlantic Salmon as an endangered species and that

several groups sued to set aside that designation.   <u>See</u> Response at 5-6 (citing <u>Maine v. U.S. Fish</u>

<u>& Wildlife Serv.</u>, 262 F.3d at 14).   SWEPI, LP, argues that the First Circuit affirmed the district

court's denial of intervention by holding that the Wildlife Service's and the intervenors' interests

were aligned in upholding the Atlantic Salmon's designation.   <u>See</u> Response at 6.

SWEPI, LP, argues that the Tenth Circuit in <u>San Juan County</u> distinguished the cases on

which the Intervenor-Applicants rely by noting that those cases involved instances in which the

government had multiple interests to pursue.   <u>See</u> Response at 6 (citing <u>San Juan County</u>,

503 F.3d at 1204).   SWEPI, LP, contends that the Intervenor-Applicants are unable to show that

the Defendants have multiple interests to pursue other than defending the Ordinance.   <u>See</u>

Response at 6-7.   SWEPI, LP, also contends that, if the Defendants have multiple interests, the

Individual Commissioners adequately protect the Intervenor-Applicants' interests.   <u>See</u> Response

at 7.

SWEPI, LP, highlights the dissent of the Honorable Neil M. Gorsuch, United States Circuit

Judge for the Tenth Circuit, in <u>New Mexico Off-Highway Vehicle Alliance v. United States Forest</u>

<u>Service</u> to note that mere speculation of a possible divergence in interests between an intervenor

and a defendant is insufficient for intervention.   <u>See</u> Response at 8.   It argues that the

Intervenor-Applicants' argument relies on a speculation that sometime in the future their interests

may diverge from the Defendants' interests.   <u>See</u> Response at 8.

SWEPI, LP, also argues that intervention would "open the floodgates to the courthouse."

Response at 8.   It contends that, if the Court permitted intervention here, the Court would also

have to allow "virtually every other land grant and individual resident of Mora County" to

intervene.   Response at 8-9.   SWEPI, LP, notes that the Court can grant the Intervenor-Applicants amicus status if they wish "to have their voices heard on relevant legal issues or arguments."   Response at 9.   Finally, SWEPI, LP, addresses the Intervenor-Applicants' argument that the Court should allow them to intervene under rule 24(b) by arguing that the Intervenor-Applicants cannot offer any defense or argument that is different than those the Defendants will make.   Response at 9.

      **3.**      **The Intervenor-Applicants' Reply.**

The Intervenor-Applicants replied to SWEPI, LP's response on April 4, 2014.   <u>See</u> Defendant Intervenor-Applicants' Reply in Support of Motion to Intervene, filed April 4, 2014 (Doc. 13)("Reply").   The Intervenor-Applicants note that SWEPI, LP, focuses on the adequacy-of-representation element and does not dispute the other three elements for intervention; they, thus, focus solely on the adequacy-of-representation element in their Reply.   Reply at 1-2. The Intervenor-Applicants argue that denying intervention would "withhold voices who will live with the impact of this litigation in their daily life in perpetuity."   Reply at 3.   They contend that Mora County, the Mora County Commissioners, and the Individual Commissioners "must represent a broad spectrum of interests," while the Intervenor-Applicants' interest is focused "on the individual impacts that this litigation will have on their property rights as landowners and on the individual rights vested in them by the Ordinance."   Reply at 3.

The Intervenor-Applicants first argue that the Court should not give any precedential deference to <u>San Juan County</u>, because only three members of the en banc court joined the portion of the decision in which the Tenth Circuit discussed adequate representation.   <u>See</u> Reply at 3-4. The Intervenor-Applicants argue that the Supreme Court of the United States holds that, for plurality opinions, the holding of the Supreme Court should be interpreted as the narrowest

position taken by the concurring Justices.   Reply at 4 (citing Marks v. United States, 430 U.S. 188, 193 (1977); Republican Party of N.M. v. King, 741 F.3d 1089 (10th Cir. 2013)).   The Intervenor-Applicants contend that, in San Juan County, only three judges held that intervention should be denied because of adequate representation while five concurring judges concluded that intervention should have been denied for a lack of interest, without deciding the adequacy of the representation.   See Reply at 4.   The Intervenor-Applicants argue that the holding of the five concurring judges is the "'narrowest grounds' upon which the case was decided," and that the Court should give this lack-of-interest grounds precedential value and not the adequacy-of-representation grounds.   Reply at 4 (quoting Marks v. United States, 430 U.S. at 193).

The Intervenor-Applicants argue that, even if the Court gives precedential value to San Juan County, the facts in that case are "easily differentiated from the present case."   Reply at 4. They argue that they have more significant interests than the intervenors did in San Juan County. See Reply at 5.   The Intervenor-Applicants contend that, in San Juan County, the intervenor was an environmental organization whose members visited the national park for recreation, scientific, aesthetic, and conservation purposes, and who were concerned about the potential damage to the environment.   See Reply at 5.   The Intervenor-Applicants assert that they are more than mere visitors to the lands that the law suit may affect, because they "have concrete property ownership rights in the land subject to the Ordinance," and because they "have vested rights expressly granted to them as individuals by the Ordinance."   Reply at 5.

The Intervenor-Applicants also argue that, in a prior litigation, the defendants and intervenors in San Juan County adopted identical language to oppose summary judgment, which indicated that they had the same narrow interests and that they would make the same arguments.

See Reply at 5.   The Intervenor-Applicants maintain that they will make different legal arguments than the Defendants.   See Reply at 5.   The Intervenor-Applicants assert that they will argue "that the people of Mora's right to local self-government is sufficient authority for the authority for the adoption of the Ordinance; whereas Defendants will likely assert that it is the power of the municipal corporation itself that grants authority."   Reply at 5.   The Intervenor-Applicants further argue that, in San Juan County, the defendants and the intervenors had a single interest and goal, which was defending the exclusive title to the road.   See Reply at 6.   The Intervenor-Applicants contend that there are a number of potential outcomes, including the Defendants choosing to defend portions of the Ordinance but not others.   See Reply at 6.

The Intervenor-Applicants next argue that the Defendants have multiple interests that are different from the Intervenor-Applicants' interests.   Reply at 7-10.   The Intervenor-Applicants contend that the Tenth Circuit has held that government entities must represent a broad spectrum of interests, including the public's interests, which is still valid law even after San Juan County. See Reply at 6 & n.7.   The Intervenor-Applicants address SWEPI, LP's contention that most of the cases addressing this issue deal with agency regulations by arguing that the Tenth Circuit has allowed intervention when legislative action is challenged.   See Reply at 7 n.2 (citing Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d at 381).   They also distinguish Maine v. United States Fish and Wildlife Service by arguing that, in that case, the First Circuit had an already-created administration record, which is different than this case in which there is no developed record and the Intervenor-Applicants wish to have a role in developing the record.   See Reply at 7-8 n.3.

The Intervenor-Applicants address SWEPI, LP's contention that the Intervenor-Applicants and the Defendants have only one interest -- defending the Ordinance -- by arguing that

SWEPI, LP, conflates goals and interests.   See Reply at 7-8 (citing Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56).   They argue that the Defendants' goal is to uphold the Ordinance, but that their interests include representing the public, representing the electorate, and representing the community members, including those who oppose the Ordinance.   See Reply at 8.   On the other hand, the Intervenor-Applicants contend that their interest is to protect the rights that the Ordinance gives them, to protect their individually owned real property from oil-and-gas exploration, to protect natural resources, and to protect "their right to self-government."   Reply at 8.   They argue that the Individual Commissioners will not adequately represent these interests, because SWEPI, LP, has sued the Individual Commissioners in their official capacities and thus have the same broad spectrum of interests as Mora County.   See Reply at 9.

The Intervenor-Applicants argue that the Defendants' interest is "to protect the power to enact the Ordinance," while the Intervenor-Applicants' interest is to protect "the rights vested in them by the Ordinance."   Reply at 9.   They assert that these different interests support "the fact that different arguments will be pursued in the case and thereby increase the likelihood of victory." Reply at 9.   The Intervenor-Applicants contend that the Defendants will have to consider the potential of paying monetary damages while the Intervenor-Applicants will have to consider the potential impact of having oil-and-gas industries extract hydrocarbons "in their backyards." Reply at 9.   The Intervenor-Applicants argue that the Defendants may not adequately represent their interests, which is sufficient to allow intervention.   See Reply at 10.

Lastly, the Intervenor-Applicants argue that intervention will not make the case unmanageable or open the floodgates to the courthouse.   See Reply at 10.   They contend that SWEPI, LP, has not presented any facts to indicate that other persons will attempt to intervene. See Reply at 11.   Additionally, the Intervenor-Applicants argue that any future intervenors will

have to show that the Defendants and the Intervenor-Applicants -- once the Intervenor-Applicants are allowed to intervene -- cannot adequately represent their interests.  See Reply at 11.  The Intervenor-Applicants maintain that courts routinely manage cases with multiple parties and with more complex issues than this case.  See Reply at 11.

### 4.    The November 3, 2014, Hearing.

The Court held a hearing on November 3, 2014.  See Transcript of Hearing (taken November 3, 2014), filed November 14, 2014 (Doc. 54)("Tr.").   At the hearing, the Intervenor-Applicants repeated the arguments from their Motion that their application is timely, that they have a legally protected interest, and that the case may impair their interest.  See Tr. at 4:16-6:19 (Hass).  They also repeated the arguments that the burden of showing inadequate representation is a minimal burden and that government entities must represent a large spectrum of interests, which makes inadequacy likely.   See Tr. at 6:20-8:1 (Haas).   The Intervenor-Applicants noted that SWEPI, LP, relies heavily on San Juan County in which only three judges joined the plurality opinion.  See Tr. at 9:1-4 (Haas).  The Intervenor-Applicants contended that the majority of the en banc court in San Juan County held that the intervenors had no interest in the litigation.  See Tr. at 9:9-12 (Haas).  The Court asked whether the majority of the Tenth Circuit judges in San Juan County would have found that the intervenors' interests were not adequately protected if they found that there was an interest.   See Tr. at 9:15-24 (Court).   The Intervenor-Applicants responded by arguing that the Court should adopt the holding of the larger number of judges and not the holding of only three judges.   See Tr. at 9:1-10:9 (Haas).

When asked if they could identify arguments or issues that they would raise but the Defendants would not, the Intervenor-Applicants argued that Pacheco has an interest in hunting, fishing, and gathering wood in areas in which SWEPI, LP, wishes to drill for oil-and-gas, and that

the Mora Land Grant has an interest in protecting the land for itself and for its members, which is "slightly different than Mora County, which claims the right to protect lands within its jurisdiction."  Tr. at 10:16-12:11 (Haas, Court).  The Court asked what concrete argument the Intervenor-Applicants would raise Mr. Haas, their counsel, who is also the Defendants' counsel, would not raise on behalf of Mora County, the Mora County Commissioners, or the Individual Commissioners.  See Tr. at 11:21-12:4 (Haas, Court).  The Intervenor-Applicants answered by arguing that they have slightly different interests than the Defendants and by noting that the Tenth Circuit allows intervention when parties have different interests in a case.  See Tr. at 12:4-20 (Haas).  They also contended that they will argue that "the people of Mora's right to local self-government is sufficient authority for the adoption of the ordinance" while the Defendants "will likely assert that it is a power of the municipal corporation itself that grants authority."  Tr. at 13:6-11 (Haas).  They also contended that they have individual rights to enjoy the land and protect it for their use, while the Defendants have authority under their police powers to pass the Ordinance and to protect the community, water, and environment.  See Tr. at 14:3-14 (Haas).

The Intervenor-Applicants asserted that the Court would have to find that there are no issues that would be different between their position and the Defendants' position to find that the Defendants adequately represent their interests, which they assert was the case in San Juan County.  See Tr. at 13:12-14.  The Intervenor-Applicants argued that the Court could dispose of this case in a number of different ways.  See Tr. at 13:24-14:2 (Haas).  They argue that one of intervention's purposes is to allow for the maximum number of arguments to be raised in support of the Ordinance.  See Tr. at 15:21-24 (Haas).

The Court asked the Intervenor-Applicants' counsel, Mr. Haas, how he came to represent both the Defendants and the Intervenor-Applicants.  See Tr. at 22:12-23:4 (Anderson, Court).

The Intervenor-Applicants' counsel stated that he had previously had a relationship with the Mora Land Grant and many attorneys were not willing to represent the Intervenor-Applicants pro bono, and, when the Intervenor-Applicants asked, he agreed to represent them.  See Tr. at 23:7-12 (Hass).   The Intervenor-Applicants responded to SWEPI, LP's argument that intervention would open up the floodgates for more intervenors by arguing that, in the seven months since they filed their Motion, no other parties have sought to intervene.  See Tr. at 24:1-5 (Haas).   They also argued that any future intervenors would have to show that neither the current Defendants nor the Intervenor-Applicants adequately represent their interests.  See Tr. at 24:5-9 (Haas).   The Intervenor-Applicants further argued that they have not seen a case in which the floodgates argument was used to deny intervention.   See Tr. at 24:10-12 (Haas).

The Intervenor-Applicants noted that they agree with SWEPI, LP, that the case is fact specific and that their involvement would help resolve factual disputes whether oil-and-gas extraction would interfere with their rights, including their rights to hunt and fish.  See Tr. at 24:25-25:10 (Haas).   The Intervenor-Applicants argued that they could rely on these facts to make arguments, including arguments opposing a potential motion for summary judgment, which the Defendants cannot make.  See Tr. at 25:11-14 (Haas).   The Intervenor-Applicants argued that the Ordinance guarantees certain traditional community rights, including the right to hunt, and that the Defendants cannot raise those arguments while the Intervenor-Applicants can.  See Tr. at 172:1-16 (Haas).

SWEPI, LP, responded to the Intervenor-Applicants' arguments by arguing that, in the Tenth Circuit, intervention as a matter of right requires a fact intensive determination whether the Defendants will adequately represent the Intervenor-Applicants' interests.  See Tr. at 16:25-17:7 (Anderson).   SWEPI, LP, argued that the Defendants will vigorously defend the Ordinance's

constitutionality.   See Tr. at 17:17-19 (Anderson).   It argued that the Intervenor-Applicants'

interests are not different than the Defendants' interests.   See Tr. at 17:21-18:2 (Anderson, Court).

SWEPI, LP, argued that this case involves members of the public seeking to intervene to defend

the constitutionality of a legislative act, which is the same interest as the Defendants' interest.

See Tr. at 18:21-19:1 (Anderson).   It argued that, if the Court permits intervention here, then a

number of other individuals would come into court and ask to intervene as well.   See Tr. at

19:7-22 (Anderson, Court).

        In response to the Court's question, concerning whether the Intervenor-Applicants have

different interests than the Defendants because one may be interested in fishing while the other in

clean water, SWEPI, LP, argued that the interest element and the adequate representation element

overlap, and that the closer the Intervenor-Applicants' interests are with the Defendants' interests

the more likely the Defendants adequately represents the interests.   See Tr. at 21:4-17 (Anderson).

It contended that fishing and clean water are so closely related that the Defendants' advocacy

based on an interest in clean water would adequately represent an interest in fishing.   See Tr. at

21:9-17 (Anderson).   SWEPI, LP, argued that the Intervenor-Applicants and the Defendants will

make the same arguments, in defending the Ordinance's constitutionality, because their interests

are closely related.   See Tr. at 21:18-22:5 (Anderson).

        The Defendants again noted that they do not take a position on the Motion and do not

oppose it.   See Tr. at 16:6-12 (Long, Court).   The Court informed the parties that it was inclined

to deny the Motion without prejudice to renew if there were developments that made the

Defendants' representation inadequate, but that it needed look more into the Intervenor-Applicants

arguments before issuing a final ruling.   See Tr. at 25:19-26:4 (Court).

5.      __The Intervenor-Applicants' Supplemental Argument__.

After the hearing, the Intervenor-Applicants filed the Supplemental Argument in Support of Petition to Intervenors, filed November 18, 2014 (Doc. 56)("Supplement").      The Intervenor-Applicants address the Court's questions from the hearing concerning additional arguments that they will raise and the Defendants will not.   See Supplement ¶¶ 1-5, at 1-3.   The Intervenor-Applicants argue that they attached the MTD to the Motion and argue that the Defendants have not filed any similar motion, because the Defendants "are not specifically the class protected by the Ordinance."   Supplement ¶ 5, at 2.   The Intervenor-Applicants also argue that the bill of rights that is contained within the Ordinance do not "accrue to the municipal corporation, but to the people within the County," and that this "difference in interest logically leads to different arguments and legal strategies."   Supplement ¶ 6, at 3.   They contend that, without intervention, no party can represent the bill of rights.   See Supplement ¶ 6, at 3.

The Intervenor-Applicants repeat many arguments from the Motion, Reply, and the hearing regarding the interests of environmental groups and that an intervenor need show only that there may be inadequate representation.   See Supplement ¶¶ 10-11, at 4.   They also repeat their arguments concerning other parties seeking intervention, having multiple parties in the case, and permissive intervention.   See Supplement ¶¶ 13-15, at 5-6.   The Intervenor-Applicants again argue that they have satisfied the standard for intervention and discuss their involvement in enacting the ordinance.   See Supplement ¶¶ 17-18, at 6-7.[4]

---

[4]While the Intervenor-Applicants title this document "Supplemental Argument in Support of Petition to Intervenors," the Supplement raises only one additional point -- explaining the purpose of the MTD that they attached to the Motion -- and then repeats the arguments that they raised in the Motion, the Reply, and at the hearing.   Supplement ¶¶ 1-18, at 1-7.   It is unclear whether the Supplement a true supplement or an attempt by the Intervenor-Applicants to repeat their arguments.   See Black's Law Dictionary 1577 (9th ed. 2009)(defining "Supplemental" as "Supplying something additional; adding what is lacking").

## LAW REGARDING INTERVENTION AS OF RIGHT

Rule 24(a) provides for intervention as a right:

(a)   **Intervention of Right.**   On timely motion, the court must permit anyone to intervene who:

(1)   is given an unconditional right to intervene by a federal statute; or

(2)   claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).   The movant bears the burden of establishing its right to intervene.   See United States v. Tex. E. Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991).   A court generally may not consider concerns of judicial economy and efficiency when ruling on a request to intervene as a right.   See United States v. Union Elec. Co., 64 F.3d 1152, 1158 & n.1 (8th Cir. 1995)("We find that supplanting the standards applicable to intervention as of right under Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case."); In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991)("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.   Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").

To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the motion is timely; (ii) the movant asserts an interest relating to the property or transaction which is the subject of the action; (iii) the movant's interest relating to the property may be impaired or impeded; and (iv) existing parties do not adequately represent the movant's interest.   See Elliot Indus. LP v. Am. Prod. Co., 407 F.3d at 1103.

- 37 -

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."   Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M. 2008)(Browning, J.)(quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1250)(alteration omitted)(internal quotation marks omitted).   "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene.   In re SEC, 296 F. App'x 637, 640 (10th Cir. 2008)(unpublished).[5]   In measuring timeliness by the length of time that the applicant knew of its interest, the Tenth Circuit looks to the point in time "when the movant was on notice that its interests may not be protected by a party already in the case."   Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d 1223, 1232 (10th Cir. 2010).

"Under rule 24(a)(2), the applicants must claim . . . an interest relating to the property or transaction which is the subject of the action."   Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1250 (internal quotation marks omitted).   "The Tenth Circuit requires that the interest be 'direct, substantial, and legally protectable.'"   Forest Guardians v.  U.S. Dep't of Interior, No.  CIV

---

[5]In re SEC is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds that In re Sec, New Mexico Off-Highway Vehicle Alliance v. United States Forest Service, 540 F. App'x 877 (10th Cir. 2013)(unpublished), and Ute Distribution Corp. v. Norton, 43 F. App'x 272 (10th Cir. 2002)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

02-1003, 2004 WL 3426413, at *5 (D.N.M. Jan. 12, 2004)(Browning, J.)(quoting Utah Ass'n of Cntys. v. Clinton, 255 F. 3d at 1250).   The Tenth Circuit has also noted that the inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."   Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1251-52.   "The threshold for finding the requisite legal protectable interest is not high."   Forest Guardians v.   U.S. Dep't of Interior, 2004 WL 3426413, at *5 (citing Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002))("Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.").

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal."   WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 995 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").   "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation."   San Juan Cnty., 503 F.3d at 1203. A third party's interest may be impaired "when the resolution of the legal questions in the case effectively foreclose [sic] the rights of the intervenor in later proceedings, whether through res judicata, collateral estoppel, or stare decisis."   Ute Distrib. Corp. v. Norton, 43 F. App'x 272, 279 (10th Cir. 2002)(unpublished).

"Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate."   Forest Guardians v.   U.S. Dep't of Interior, 2004 WL 3426413 at *6.   "The most

common situation in which courts find representation adequate arise when the objective of the [movant] is <u>identical</u> to that of one of the parties." <u>Bottoms v. Dresser Indus., Inc.</u>, 797 F.2d 869, 872-73 (10th Cir. 1986)(emphasis added). The Tenth Circuit has found, however, that the "possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." <u>Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior</u>, 100 F.3d at 845. This minimal burden is further reduced when it is the government that is supposed to adequately represent the potential intervenor's interest. <u>See Utah Ass'n of Cntys. v. Clinton</u>, 255 F.3d at 1254-1255. "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption [is] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be-intervenor's particular interest." <u>Utah Ass'n of Cntys. v. Clinton</u>, 255 F.3d at 1255. The Tenth Circuit stated:

> [T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.

<u>Utah Ass'n of Cntys. v. Clinton</u>, 255 F.3d at 1255-56. Thus, when a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. <u>Utah Ass'n of Cntys. v. Clinton</u>, 255 F.3d at 1255.

## <u>LAW REGARDING PERMISSIVE INTERVENTION</u>

Rule 24(b) provides for permissive intervention:

(1) **In General.** On timely motion, the court may permit anyone to intervene who:

(A)    is given a conditional right to intervene by a federal statute; or

(B)    has a claim or defense that shares with the main action a common question of law or fact.

(2)    **By a Government Officer or Agency.**   On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A)    a statute or executive order administered by the officer or agency; or

(B)    any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3)    **Delay or Prejudice.**   In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).   The movant bears the burden of establishing its right to intervene.   See United States v. Tex. E. Transmission Corp., 923 F.2d at 414.   "Unlike Rule 24(a), which governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties."   6 James W. Moore, Moore's Federal Practice § 24.10[1], at 24-63 (3d ed. 2012)(citation omitted).   Accord In re Sierra Club, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.   Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").   "The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal."   6 Moore, supra, § 24.10[1], at 24-63.   "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention."   6 Moore, supra, § 24.10[1], at 24-63.   Accord Garza v. Cnty. of

L.A., 918 F.2d 763, 777 (9th Cir. 1990)("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." San Juan Cnty., 503 F.3d at 1207. Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse. See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d 1424, 1427 (10th Cir. 1990). As the Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10-11. Rule 24(b)(3) requires the court to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention. See Fed. R. Civ. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259. While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention. See City of Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

## ANALYSIS

The Court will grant the Motion. The Intervenor-Applicants have a right to intervene under rule 24(a)(2). The Intervenor-Applicants timely filed the Motion for intervention. They have a protectable interest in this case and, if the Court rules against the Defendants, that ruling

may impair their protectable interests.   Finally, under current Tenth Circuit law, the Defendants do not adequately represent the Intervenor-Applicants' interests.   If Tenth Circuit law did not require the Court to grant the Motion under rule 24(a), the Court would not allow the Intervenor-Applicants to intervene under rule 24(b), because the Intervenor-Applicants will not, and cannot, raise any additional legal arguments beyond those that the Defendants will raise. Additionally, the Court believes that the Defendants adequately represent the Intervenor-Applicants' interests for rule 24(b) purposes.

## I.   THE INTERVENOR-APPLICANTS ARE ENTITLED TO INTERVENTION UNDER RULE 24(a)(2).

The Intervenor-Applicants are entitled to intervention as a matter of right under rule 24(a)(2).   A party may intervene in a suit, as a matter of right, if it can show that "(1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties."   Elliott Indus. LP v. BP Am. Prod. Co., 407 F.3d at 1103.   SWEPI, LP, has challenged only the last element: adequate representation.   See Response at 2.   While SWEPI, LP, has not challenged the first three elements, the Court concludes that the Intervenor-Applicants have satisfied these elements.   The Intervenor-Applicants have also satisfied the last element -- based on Tenth Circuit law -- by showing that there is a possibility that the Defendants' interests in the suit may diverge from the Intervenor-Applicants' interests, because the Defendants must pursue the interests of the public at large and not the Intervenor-Applicants' "individual parochial interest[s]."   Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56.

The Court will apply Tenth Circuit law and grant the Motion.   The Court, however, believes that this result is contrary to the intended purpose behind rule 24, and will serve only to

slow down litigation without advancing or protecting any of the parties' interests or the Intervenor-Applicants' interests.   Currently, there is no indication -- whatsoever -- that the Defendants will not vigorously defend the Ordinance, and will not fight tooth-and-nail to protect the Intervenor-Applicants' interests.   Under Tenth Circuit law, however, because a government entity represents the public at large, there is a possibility that the Defendants' interests may diverge from the Intervenor-Applicants' interests, despite no evidence indicating that such a divergence is likely to occur.   The Tenth Circuit holds that this mere possibility is sufficient to find that the Intervenor-Applicants' interests are not adequately represented.   The Court disagrees with this result, but will faithfully apply Tenth Circuit law.   The Court believes that a government entity, especially a legislative body, is in the best possible position to defend the constitutionality of its own laws.

### A.     THE INTERVENOR-APPLICANTS TIMELY FILED THE MOTION.

The Intervenor-Applicants timely filed the Motion.   "The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."   Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 245 (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1250).   The Intervenor-Applicants filed the Motion less than two months after SWEPI, LP, filed the Complaint.   Compare Complaint at 1 (filed on January 10, 2014), with Motion at 1 (filed March 6, 2014).   When the Intervenor-Applicants filed the Motion, the Defendants had not yet responded to the Complaint.   See Memo. at 6.   Additionally, the Court had not set a scheduling order, no party has conducted discovery, and neither party had filed any motions.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1251 (concluding that application was timely when "no

scheduling order has been issued, no trial date set, and no cut-off date for motions set," and the only documents that had been filed concerned discovery disputes and "motions by defendants seeking dismissal on jurisdictional grounds").

Because of how early in the case the Intervenor-Applicants filed the Motion, they likely filed it as soon as they discovered their interests in the case. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 245. Also, because the Intervenor-Applicants filed the Motion early in the case, the existing parties will not be prejudiced. See Oklahoma ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d at 1235-37 (holding that application would prejudice existing parties when application was filed over four years after the complaint was filed and less than a week before trial). Finally, denial of the Motion may prejudice the Intervenor-Applicants, because -- as the Court discusses in greater detail below -- the Intervenor-Applicants have interests that the case's result may impair. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 245. Accordingly, the Intervenor-Applicants timely filed the Motion.

## B. THE INTERVENOR-APPLICANTS HAVE LEGALLY PROTECTABLE INTERESTS.

An intervenor must have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The Tenth Circuit requires the interest to be "'direct, substantial, and legally protectable.'" Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1251 (quoting Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 840). "The threshold for finding the requisite legal protectable interest is not high," Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *5, and this inquiry is "'highly fact-specific,'" Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1251-52 (quoting Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841).

The Tenth Circuit has "declared it 'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest." WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1198 (quoting San Juan Cnty., 503 F.3d at 1199). In WildEarth Guardians v. National Parks Service, an environmental group sued the National Park Service, challenging the Park Service's decision to reduce the Rocky Mountain National Park's elk population through the use of authorized agents who would "lethally reduce" the elk population rather than using other means to cull the population, such as releasing gray wolves into Rough Mountain to cull the elk herd. See 604 F.3d at 1194-95. A wildlife conservationist group sought to intervene as a defendant. See 604 F.3d at 1195. The conservation group argued that it had a number of interests in the case including:

> (1) its endorsement of sustainable use wildlife management and conservation techniques, (2) its members' interests in hunting and otherwise enjoying wildlife in and near RMNP, (3) its approval of the use of volunteers in culling activities, and (4) its desire to prevent gray wolves from being used to control RMNP's elk population.

WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1195-96. The conservation group also argued that its members had submitted comments to the National Park Service, during the administrative decision-making process, and had supported the National Park Service's decision to cull the elk herd. See WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200. The Tenth Circuit, in an opinion that Judge Tymkovich authored, and Chief Judge Briscoe and Judge Holmes joined, held that the conservationist group's interest in the use of culling as a management and conservation tool was a sufficient interest to satisfy rule 24(a)(2). See WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200-01.

In Utah Association of Counties v. Clinton, an organization sued President William J. Clinton and a number of other officials, challenging President Clinton's proclamation creating the

Grand Staircase Escalante National Monument.   See 255 F.3d at 1248.   The organization argued

that the proclamation was an illegal attempt to prevent the creation of a proposed underground coal

mine.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1248.   A group of environmental groups

sought to intervene claiming an interest in

> the continued existence of the monument and its reservation from public entry, both
> on the basis on their financial stake in tourism the monument has created and on the
> basis of their desire to further their environmental and conservationist goals by
> preserving the undeveloped nature of the lands encompassed by the monument.

Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1249, 1251.   The environmental groups also argued

that they were outspoken advocates for the monument's creation, and that they "regularly visit the

monument for aesthetic, scientific, and recreational purposes."   Utah Ass'n of Cntys. v. Clinton,

255 F.3d at 1251.   The Tenth Circuit, in an opinion that Judge Seymour authored, and Judges

McKay and Brorby joined, held "that organizations whose purpose is the protection and

conservation of wildlife and its habitat have a protectable interest in litigation that threatens those

goals."   Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1252.   The Tenth Circuit noted that, even

though the case's focus would be on President Clinton's authority to create the monument, "the

interest of the intervenor is not measured by the particular issue before the court but is instead

measured by whether the interest the intervenor claims is *related to the property that is the subject

of the action*."   Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1252 (emphasis in original).

In Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department

of Interior, an organization sued the Department of Interior, challenging the Wildlife Service's

designation of the Mexican Spotted Owl as an endangered and threatened species under the

Endangered Species Act, 16 U.S.C. § 1531.   See Coal. of Ariz./N.M. Cntys. for Stable Econ.

Growth v. Dep't of Interior, 100 F.3d at 838-39.   A wildlife photographer sought to intervene in

the suit based on his "interest in the Owl, as a photographer, an amateur biologist, and a naturalist

who has been at the forefront of efforts to protect the Owl." Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841. The photographer had previously threatened to sue, and had sued, to force the Wildlife Service to designate the Mexican Spotted Owl as an endangered and threatened species. See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 839. The Tenth Circuit, in an opinion that Judge Henry wrote, and Judge Murphy and the Honorable F. Pierce Lively, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation, joined, held that these interests were sufficient for rule 24(a)(2) purposes. See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 844. The Tenth Circuit held that the photographer's "involvement with the Owl in the wild and his persistent record of advocacy for its protection amounts to a direct and substantial interest in the listing of the Owl for the purpose of intervention as of right, even though [the photographer] has little economic interest in the Owl itself." Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841.

The Intervenor-Applicants have identified a number of interests. Based on Tenth Circuit cases holding that an environmental or conservationist interest is sufficient, the Intervenor-Applicants' interests satisfy rule 24(a)(2)'s requirement.

### 1.    Pacheco's Interests.

The Intervenor-Applicants assert that Pacheco has an interest in self-governance, and in accessing, using, consuming, and preserving the water in Mora County. See Memo. at 9. Additionally, they assert that Pacheco has an interest in using state lands for gathering wood, fishing, and hunting. See Tr. at 10:22-11:3 (Haas). Pacheco also contends that he uses the state lands for riding horseback, hiking, and driving all-terrain vehicles. See Pacheco Dec. ¶ 7, at 2. Finally, Pacheco supported and helped draft the Ordinance. See Pacheco Dec. ¶¶ 4-5, at 2.

These environmental interests are sufficient to satisfy rule 24(a)(2), but the self-governance interest is not.

The right to self-governance, in this case, is not a sufficient interest for intervention. Pacheco appears to be arguing that, because his right to self-governance helped lead to the passage of the Ordinance -- through the elected County Commissioners -- a challenge to the Ordinance is also a challenge to his right to self-governance.   Pacheco's argument may be that, because the validity of the Ordinance may affect his interest in self-governance, SWEPI, LP's suit may implicate his right in self-governance.   The Intervenor-Applicants have not cited a case in which a court found that a citizen's interest in self-governance was a sufficient interest under rule 24(a)(2), and the Court concludes that this interest cannot, in this case,[6] be a sufficient legally protected interest, because it would lead to absurd results.  If Pacheco's interest to self-governance is sufficient for rule 24(a)(2), then every citizen of Mora County could also join the suit.  Every citizen of Mora County has a self-governance interest that the Ordinance and this case affects.   If that interest is sufficient, then essentially, anytime a law is challenged, every person whom the legislative body that passed the law represents would be able to join the case under rule 24(a)(2). When a federal law is challenged, then every citizen of the United States would be able to

---

[6]There may be cases in which an intervenor's interest in self-governance may be a sufficient interest under rule 24(a)(2).  For instance, if the State of New Mexico passed a law which stated that the state legislature would appoint the commissioners of a county, rather than the citizens of that county, see Territory ex rel. Curran v. Gutierrez, 1904-NMSC-020, 78 P. 139 (1904)(voiding territory statute that allowed territory legislature to appoint county commissioners), then a citizen of the county may have sufficient interest in self-governance to intervene.  The sufficiency of an interest requires a fact-specific inquiry.  See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1251-52.  Thus, there may be situations in which self-governance is a sufficient interest.   In this case, however, the interest is insufficient, because it would otherwise lead to absurd results.

intervene in the case.[7]   Conferring on every represented person is not rule 24(a)(2)'s purpose. Because this interest in self-governance would lead to absurd results, the Court concludes that this interest is insufficient for intervention under rule 24(a)(2).   See Griffin v. Ocean Contractors, Inc., 458 U.S. 564, 574 (1982)(noting "that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").[8]

While Pacheco's interest in self-governance is an insufficient interest, his remaining interests are sufficient.   Pacheco's remaining interests concern environmental interests, and concern his use and enjoyment of state lands.   See WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1198 ("With respect to Rule 24(a)(2), we have declared it 'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest."   (quoting San Juan Cnty., 503 F.3d at 1199)).   Pacheco asserts that he has an interest in using the state lands for hunting, fishing, riding horseback, hiking, and traveling on all-terrain vehicles.   See Pacheco Dec. ¶ 7, at 2. Pacheco's interest in these activities and his environmental concern[9] that the Ordinance's validity

---

[7]While this concern goes only to the intervenor's interest, under Tenth Circuit law, if a government body is a party, then an intervenor will almost always be able to show that the representation is inadequate and intervention is necessary.   See infra. Section I.D.1.

[8]"The rules of statutory construction apply to the Federal Rules . . . ."   In re Kubler, No. CR 11-0048 JB, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.).   Accord Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").   The rules of statutory construction include the cannon that "[s]tatutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."   Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).

[9]The Intervenor-Applicants also asserts that Pacheco has an interest in the water that the Ordinance protects.   See Memo. at 9.   They cite to § 4 of the Ordinance to support this interest. See Memo. at 9.   The relevant portions of § 4 state:

affects these activities create a sufficient interest under rule 24(a)(2).   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1253 (holding that environmental groups' "scientific, recreational, and aesthetic interests in the" Grand Staircase Escalante National Monument were sufficient rule 24(a)(2) interests); Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841 (holding that photographer's interest in Mexican Spotted Owl is a sufficient interest).   Finally, Pacheco was active in supporting the Ordinance and assisted in drafting the Ordinance.   See WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1200 (noting that intervenor's members were involved in the National Park Service's decision-making process and supported the park service's ultimate decision); Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1251 (noting that the intervenors were outspoken advocates for the creation of the Grand Staircase Escalante National Monument); Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841 (noting that intervenor was influential in forcing the Wildlife Service to

---

Section 4.1. _Right to Water_:   All residents, natural communities and ecosystems in Mora County possess a fundamental and inalienable right to sustainably access, use, consume, and preserve water drawn from natural water cycles that provide water necessary to sustain life within the County.

Section 4.2. _Right of Water for Agriculture_:   All Mora County residents possess the fundamental and inalienable right to unpolluted natural water to produce healthy food, to nourish our bodies, livestock and land and to continue "La Querencia de la Tierra," Love of the Land.

Ordinance §§ 4.1, 4.2.   It is not clear whether Pacheco is arguing that the Ordinance gives him the right to obtain or use water, or whether the Ordinance gives him the right to clean water, unpolluted from oil-and-gas exploration and extraction activities.   Because the Ordinance appears to focus on the environment, and the effect that oil-and-gas exploration may have on the environment, the Court will conclude that his interest in water is an environmental interest in clean, unpolluted water.   In any case, the Court concludes that Pacheco's interest is sufficient.

designate the Mexican Spotted Owl as an endangered and threatened species).   Pacheco, thus, has

protectable legal interests that are sufficient for rule 24(a)(2).[10]

## 2. The Mora Land Grant's Interests.

The Intervenor-Applicants argue that the Mora Land Grant has an interest to

environmental stewardship, public health, and to the right to self-governance.   See Memo. at 9.

They also assert that Mora Land Grant members "hunt, fish, camp, gather wood, farm, and engage

in numerous other activities in the area where Plaintiff seeks to extract hydrocarbons."   Memo.

at 9.   The Intervenor-Applicants also contend that the Mora Land Grant officially supported the

Ordinance.   See Memo. at 4.

For the same reasons that Pacheco's interest in self-governance is insufficient, the Mora

Land Grant's interest in self-governance is insufficient.   Additionally, for the same reasons that

Pacheco's other interests are sufficient, the Mora Land Grant's environmental interests and their

interests in the activities in which their members engage are sufficient interests.[11]   See WildEarth

---

[10]That Pacheco has protectable interests affected by the Ordinance is highlighted by the
fact that the Ordinance appears to provide a private right of action for individuals to enforce the
Ordinance.   See Ordinance § 8.4.   Section 8.4 provides:

> Section 8.4:   Any person or municipality who brings an action to secure or protect
> the rights of natural communities or ecosystems against oil and gas extraction
> within Mora County shall bring that action in the name of the natural community or
> ecosystem in a court of competent jurisdiction.   Damages shall be measured by the
> cost of restoring the natural community or ecosystem to its pre-damaged state, and
> shall be paid to the County of Mora or other applicable governmental entity, to be
> used exclusively for the full and complete restoration of the natural community or
> ecosystem.

Ordinance § 8.4.

[11]The Tenth Circuit has considered an intervenor-organization's members' interests in
determining whether the intervenor-organization has a protectable interest in the case.   See
WildEarth Guardians v. Nat'l Park Serv., 604 F.3d at 1197-98 (noting that intervenor-organization
asserted that its members' interests in hunting to determine that the intervenor-organization had an
interest in the case); N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 880

Guardians v. Nat'l Park Serv., 604 F.3d at 1198 ("With respect to Rule 24(a)(2), we have declared it 'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest." (quoting San Juan Cnty., 503 F.3d at 1199)).

### C.   THIS CASE MAY IMPAIR THE INTERVENOR-APPLICANTS' INTERESTS.

This case may impair the Intervenor-Applicants' interests.   The Intervenor-Applicants need to show only that "impairment of [their] substantial legal interest is possible if intervention is denied," which is a "minimal" burden.   WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 995.   The Intervenor-Applicants argue that a decision in SWEPI, LP's favor would impair the "Mora Land Grant's interest in protecting land and water rights," and its interests in preserving water and natural resources.   Memo. at 11.   They also argue that a favorable decision for SWEPI, LP, would impair Pacheco's interests in pursuing "outdoor activities without the presence of extractive industries in the same areas that activities occur."   Memo. at 11-12.

If the Court denies intervention and SWEPI, LP, prevails, there is the possibility that the Intervenor-Applicants' interests will be impaired.   See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 995.   In Utah Association of Counties v. Clinton, the Tenth Circuit held that, if the designation of the area as a national monument was invalidated, the environmental groups' interests in the conservation of the Grand Staircase Escalante National Monument would be impaired.   See 255 F.3d at 1253-54 (noting that, if the monument's protected status were removed, intervenors' "scientific, recreational, and aesthetic interests in the monument" may be impaired).   In the same way, the Intervenor-Applicants' environmental concerns and use of the state land without the interference of oil-and-gas extraction would be impaired if the Court

_____

(noting that the intervenor "environmental groups' staff, members, and volunteers regularly enjoy the forest for recreational and aesthetic reasons"); Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *7-8 (concluding that intervenor-organization had a protectable interest in the case because the case implicated its members' privacy interests).

invalidated the Ordinance.   SWEPI, LP, has not argued that the Intervenor-Applicants' interests would not be impaired if the Court invalidated the Ordinance or that oil-and-gas extraction activities would not interfere with the Intervenor-Applicants' use of state lands.   Accordingly, the Intervenor-Applicants have satisfied this "minimal" burden of showing that this case may impair their interests.   WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 995.

**D.   UNDER TENTH CIRCUIT LAW, THE DEFENDANTS DO NOT ADEQUATELY REPRESENT THE INTERVENOR-APPLICANTS' INTERESTS.**

Under Tenth Circuit law, the Defendants do not adequately represent the Intervenor-Applicants' interests.   The Intervenor-Applicants and the Defendants have a common objective in this case: defending the Ordinance's constitutionality and preventing oil-and-gas exploration and extraction.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255 (noting "that a presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation").   The Tenth Circuit, however, holds that, if an intervenor's interests potentially diverge from that of an existing party, then representation is inadequate.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255 ("The possibility that the interests of the applicant and the parties may diverge 'need not be great' to satisfy this minimal burden." (quoting Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n, 578 F.2d 1341, 1346 (10th Cir. 1978))).   Additionally, because a government entity must represent the interests of the public at large, the Tenth Circuit holds that there is always the possibility that an intervenor's private interest may potentially diverge from that of a government entity, see WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 995 (citing Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255), which essentially means that a government entity will always inadequately represent an intervenor's private interest.

Here, the Defendants are a government entity and members of a government entity. According to the Tenth Circuit, the Defendants must represent the interests of the public at large. This representation of the public's interests creates the possibility that the Defendants' interests may diverge from the Intervenor-Applicants' interests. According to the Tenth Circuit, this potential divergence is sufficient to conclude that the Intervenor-Applicants' interests are not adequately represented. See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 846.

The Court disagrees with this result. If an intervenor's objectives are the same as those of an existing party, the intervenor's presence in the case is unnecessary. The existing party will protect the intervenor's interests. This fact remains true even if the existing party is a government entity and especially true if the government entity is protecting its own laws' validity. The Court believes that a government entity is more than capable of defending its own laws, even laws that protect others' private interests.

## 1.    Under Tenth Circuit Law, the Defendants Do Not Adequately Protect the Intervenor-Applicants' Interests.

Under Tenth Circuit law, the Defendants do not adequately protect the Intervenor-Applicants' interests. There is a presumption that representation is adequate if the intervenors and existing parties' objectives are identical. See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255. The intervenor may rebut this presumption if the intervenor can show that its interest may differ from that of an existing party. See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255. "The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255 (quoting Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n, 578 F.2d at 1346). Moreover, under Tenth Circuit law, a government entity is considered to represent the

public's interests, which will necessarily diverge in some aspects with an intervenor's private interest.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255 (Seymour, J., joined by McKay & Brorby, J.J.)("We have here also the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible." (quoting Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d at 384)).

In Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, the Tenth Circuit seemed to indicate that a common objective would lead to adequate representation if there is only a possibility of diverging interests.   See 100 F.3d at 845.   The Tenth Circuit stated:

> "The possibility of divergence of interest need not be great in order to satisfy the burden of the applicants . . . ."   Natural Resources Defense Council[v. U.S. Nuclear Regulatory Comm'n], 578 F.2d at 1346.   However, "representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.'"   [City of Stilwell v.] Ozarks Rural Elec. Coop., 79 F.3d at 1042 (quoting Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986)); see also Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996)("Where an applicant for intervention and an existing party 'have the same ultimate objective, a presumption of adequacy of representation arises.'")(quoting Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality, 775 F. Supp. 353, 359 (D. Ore. 1991)(citing American Nat'l Bank and Trust Co. v. City of Chicago, 865 F.2d 144, 148 n.3 (7th Cir. 1989))).

Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845.   The Tenth Circuit held, however, that, despite identical objectives, the government represents the public's interests, some of which may have differed from the intervenor's interests.   See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845.   The Tenth Circuit, thus, concluded that the intervenor's interests were not adequately protected.   See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845-46. Accordingly, even if an intervenor's objectives are the same as an existing party's objectives, if the

government is the party, its interests will by necessity differ from the intervenor's private interests.

See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845.

Here, the Defendants are government entities -- Mora County Commissioners -- or are members of a government entity -- the Individual Commissioners, whom SWEPI, LP, sues only in their individual capacities as County Commissioners.   See Complaint ¶¶ 8-12, at 3-4.   According to the Tenth Circuit, the Defendants must represent the public's interests, some of which will differ from the Intervenor-Applicants' private interests.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255.   Because the Defendants' interests differ from the Intervenor-Applicants' interests, there is the possibility that the Defendants may not adequately represent the Intervenor-Applicants' interests.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56.   As the Court has previously held:

> Because the [government agency] must consider the public's interest in disclosure when defending this case, it is possible, and perhaps likely, that the [government agency's] interests and the [intervenors]' interests will diverge.   Accordingly, the [government agency] may not adequately represent the [intervenors]' interests. Thus, the Court will grant the [intervenors]' motion and allow them to intervene as a matter of right.

Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10.

SWEPI, LP, argues that there is no indication that the Defendants will change course and stop defending the Ordinance.   See Response at 5; Tr. at 17:17-19 (Anderson).   While the Court agrees that, if there is no indication that party will not vigorously pursue the same objectives as the intervenor, representation is adequate, the Tenth Circuit holds to the contrary.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.   The Tenth Circuit holds that differing interests, by itself, is sufficient to find inadequate representation.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.

Plaintiffs also maintain that, given the government's past conduct in this litigation, there is nothing to indicate it will not continue to vigorously represent the interest of the intervenors in defending the creation of the monument.   However, "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts."   Kleissler v. United States Forest Serv., 157 F.3d 964, 974 (3d Cir. 1998).   The government has taken no position on the motion to intervene in this case.   Its "silence on any intent to defend the [intervenors'] special interests is deafening."   Conservation Law Found., 966 F.2d at 44. We conclude that under the authority of this and other circuits, the intervenors have met the minimal burden of showing that their interests may not be adequately represented by the existing parties.

Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256 (alterations in Utah Association of Counties v.

Clinton but not in Conservation Law Foundation of New England v. Mosbacher).

In this area, the Tenth Circuit does not rely on concrete facts, or reasonable assumptions based on the case's facts or the parties' conduct.   The Tenth Circuit relies on possibilities that lead to the possibility of other possibilities.   The Tenth Circuit holds that it is possible that the government's interests diverge from the intervenor's interests, which makes it possible that the government may change its policy down the road, which makes it possible that it will no longer represent the intervenor's interests.   See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996-97 (holding that government's public interest may not be identical with intervenors, that "government policy may shift," and that government may not adequately represent the intervenor). The lack of any indication that the Defendants will not vigorously defend the Ordinance, and thus represent the Intervenor-Applicants' interests, is not determinative, or even a factor to consider, in the Tenth Circuit.   The mere possibility of inadequate representation, which the assumption that the Defendants represent the public's interests and not the Intervenor-Applicants' private interests creates, is sufficient.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.[12]   See also

---

[12]In Utah Association of Counties v. Clinton, the Tenth Circuit held that the United States did not adequately represent the potential intervenors' interests despite the United States' vigorous defense of the Grand Staircase Escalante National Monument's creation and of the potential intervenors' interests.   See 255 F.3d at 1256.   The Tenth Circuit reasoned that the potential

WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996 ("An intervenor need only show the

*possibility* of inadequate representation." (emphasis in original)(alterations omitted)(citation

omitted)(internal quotation marks omitted)).[13]

---

intervenors' interests "may not be adequately represented" because the United States could change its stance in the case, see Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256 ("However, 'it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts.'" (quoting Kleissler v. U.S. Forest Serv., 157 F.3d at 974)), and because the United States had not taken a position on whether the district court should have granted the motion to intervene, see Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256 ("The government has taken no position on the motion to intervene in this case. Its silence on any intent to defend the intervenors' special interests is deafening." (alterations omitted)(internal quotation marks omitted)(citation omitted)). In the same way, the Defendants have refused to take a position on the Motion. See Statement at 1-2 ("[The Defendants] state they have no opposition to the intervention . . . ."); Tr. at 16:10-12 (Long)("The Mora County did not take a position on the motion; therefore did not oppose it."). According to the Tenth Circuit, the Defendants' refusal to take a stance and oppose the Motion weighs in favor of the Court finding inadequate representation. See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.

[13]The Court previously denied intervention, based on the adequacy-of-representation prong, in a case in which the State of New Mexico represented potential intervenors' private interests. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 260. While the Court continues to believe that its reasoning concerning the state's ability to adequately represent some of the potential intervenors' private interests is correct, its conclusion may be contrary to Tenth Circuit law, as the Court has construed it in this opinion. In that case, several public interests groups sued the New Mexico Secretary of State, seeking a declaration that amendments to the New Mexico electoral statute, N.M. Stat. Ann. § 1-4-49, were unconstitutional. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 240-41. The amendments required third-party voter registration agents to register with the state; the amendments also provided "various procedures and penalties regarding the activities of third-party registration agents." Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 241 (citing N.M. Stat. Ann. § 1-4-49). A number of potential intervenors sought to intervene in the case. See 257 F.R.D. at 241. They included a New Mexico State Senator; the Republican Party of New Mexico and its secretary; a New Mexico State Representative; and a county clerk. See 257 F.R.D. at 241. The Court denied intervention and found that the State of New Mexico adequately represented each of the potential intervenors' interests. See 257 F.R.D. at 252-58.

For the New Mexico State Senator and the Republican Party's secretary, the Court concluded that their interests were public interests in "fair elections free of fraud" rather than private interests. 257 F.R.D. at 253-54. The Court reasoned that the Tenth Circuit's skepticism towards a government entity's representation of private interests did not apply because the senator and secretary did not have private interests in the case; they had public interests. See 257 F.R.D. at 253-54. Thus, the Court reasoned that these potential intervenors had the same interests as the State of New Mexico and that the State adequately protected their interests. See 257 F.R.D. at 253-54. This reasoning is not contrary to Tenth Circuit law, because the Tenth Circuit has not

---

yet addressed whether a government entity adequately represents an intervenor who asserts a public interest.   The Court's conclusion that the State adequately represented the private interests of the remaining potential intervenors, however, may be contrary to Tenth Circuit law, as the Court has construed it in this opinion.

The Court relied on three grounds to conclude that the State of New Mexico adequately represented the remaining potential intervenors' private interests.   First, the Court concluded that, at the time it was considering the motion to intervene, the State was vigorously defending the statute and there was no indication that it would cease its vigorous defense.   See 257 F.R.D. at 255, 257, 258.   Second, the Court noted that the potential intervenors and the State had taken the same legal position: to defend the statute.   See 257 F.R.D. at 255, 257, 258.   Third, the Court concluded that the potential intervenors had failed to show that the State would not adequately represent their interests.   See 257 F.R.D. at 255, 257, 258.   The Tenth Circuit has addressed each of these arguments and has concluded that they are insufficient to find adequate representation when a potential intervenor must rely on a government entity to protect its private interests.

First, the Court found that the State of New Mexico was vigorously defending the statute and that there was no indication that it would cease its defense of the statute.   See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255, 257, 258.   The Court noted that it was "certainly possible that in the future the Defendant will quit representing [the potential intervenors'] interests adequately."   257 F.R.D. at 257.   The Court did not use this possibility of future inadequate representation to permit intervention, but instead noted that the potential intervenors could renew their motion at a later date, if the State stopped vigorously defending the statute and their interests.   See 257 F.R.D. at 257-58.   The Tenth Circuit has held that the possibility of inadequate representation is sufficient for intervention.   See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996 ("'An intervenor need only show the possibility of inadequate representation.'" (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1254)(alterations omitted)(emphasis in WildEarth Guardians but not in Utah Association of Counties)).   The Tenth Circuit also held that the "possibility that the interests of the applicant and the parties may diverge need not be great."   Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1254 (internal quotation marks omitted).   Finally, the Tenth Circuit has held that, when a government entity is a party in a case, its past conduct in vigorously supporting a potential intervenor's interests is insufficient to find adequate representation.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256 (holding that the United States did not adequately represent intervenors' private interests despite the United States vigorously supporting the intervenors interests up until that point by noting that "'it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts'" (quoting Kleissler v. U.S. Forest Serv., 157 F.3d at 974)).   Accordingly, even though there was no indication in American Association of People with Disabilities v. Herrera that the State of New Mexico would stop representing the potential intervenors' interests, according to the Tenth Circuit, the mere possibility that the State could change its position should have been sufficient to warrant intervention.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.

Second, the Court noted that the potential intervenors and the State had taken the same legal position: defend the statute.   See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255, 257, 258.   This reasoning is similar to the Tenth Circuit's presumption that representation is adequate when an existing party and a potential intervenor share the same objectives in the case.   See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845.   The Tenth Circuit has held that this presumption is rebutted when the existing party represents multiple interests, such as a government entity representing the public's

a.       **San Juan County Does Not Require Different Results**.

SWEPI, LP, argues that, in San Juan County, the Tenth Circuit held that, if the government's interests are closely aligned to the intervenors' interests, the intervenors' interests are adequately protected.  See Response at 3.  Only two judges -- Judges Henry and Murphy -- joined this portion of the Tenth Circuit's en banc opinion.  See San Juan Cnty., 503 F.3d

interests.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56; WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.   Thus, even though the State and the potential intervenors shared the same objective in the case -- defending the statute -- the Tenth Circuit's assumption that the State must represent multiple interests -- the public's interests -- rebuts the presumption that the State adequately represented the potential intervenor's private interests.

Third, the Court concluded that the potential intervenors failed to show that the State would not adequately represent their interests.  See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255, 257, 258.  The Court stated: "While the Tenth Circuit has cautioned that district courts must be skeptical that the government can adequately represent private interests, it has not eliminated that requirement [that the potential intervenor must prove inadequate representation] in cases against the government.  The potential intervenor still must make the minimal showing."  Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 255.  The Tenth Circuit, however, has held that a potential intervenor has to show only that its interests may diverge from the existing parties' interests to satisfy its burden of showing inadequate representation.  See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1254.  Because, under Tenth Circuit law, a government entity is assumed to represent the public's interests, which will by necessity diverge from a potential intervenor's private interests, a potential intervenor has to show only that it is relying on the government to protect its interests to prove inadequate representation.  See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.   The Tenth Circuit has noted:

> We have held, however, that the intervenor's 'showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest.

WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996 (quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1254).   According to Tenth Circuit law, once the potential intervenors, in American Association of People With Disabilities v. Herrera, showed that they must rely on the State of New Mexico to protect their private interests, they met their burden of showing inadequate representation, because the State's interests differed from the potential intervenors' private interests.  See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.

While the Court continues to agree with its result in American Association of People with Disabilities v. Herrera, because the Court believes that the State of New Mexico is in the best possible position to defend its own laws, even laws that protect others' private interests, its rationale is contrary to the Tenth Circuit's law as the Court has strictly construed the law in this opinion.

at 1203-07.   The eventual majority ruling in San Juan County is composed of a fractured plurality opinion and two concurring opinions.   The Honorable Harris L. Hartz, United States Circuit Judge for the Tenth Circuit, wrote the Court's opinion.   See San Juan Cnty., 503 F.3d at 1167-1207.   Judge Hartz held that the intervenors had a sufficient legal interest in that case to warrant intervention.   See San Juan Cnty., 503 F.3d at 1190-1203.   Judges Henry, Murphy, Seymour, Ebel, Briscoe, and Lucero joined this portion of Judge Hartz' opinion.   See San Juan Cnty., 503 F.3d at 1167, 1190-1203.   Judge Hartz went on to hold that the United States' government adequately represented the intervenors' interests, and, thus, intervention was not warranted.   See San Juan Cnty., 503 F.3d at 1203-07.   Only Judges Henry and Murphy joined this portion of Judge Hartz' opinion.   See San Juan Cnty., 503 F.3d at 1167, 1203-07.   Six concurring judges held that the intervenors did not have a protectable interest.   See San Juan Cnty., 503 F.3d 1208-10 (Kelly, J., concurring).   The Honorable Paul J. Kelly, United States Circuit Judge for the Tenth Circuit, wrote a concurring opinion, in which he argued that the intervenors did not have a protectable interest.   See San Juan Cnty., 503 F.3d 1208-10 (Kelly, J., concurring).   Chief Judge Tacha and Judges Porfilio, O'Brien, McConnell, and Holmes joined Judge Kelly's opinion.   See San Juan Cnty., 503 F.3d 1208-10 (Kelly, J., concurring).   Judge Kelly did not, however, address the adequate representation element.   See San Juan Cnty., 503 F.3d 1208-10 (Kelly, J., concurring).

The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, wrote an opinion, which Judges Seymour, Briscoe, and Lucero joined.   See San Juan Cnty., 503 F.3d at 1226-32 (Ebel, J., dissenting in part and concurring in part).   Judge Ebel dissented in part and concurred in part by opining that the intervenors had a protectable interest and that their interest was not adequately protected.   See San Juan Cnty., 503 F.3d 1226-32 (Ebel, J., dissenting in part

and concurring in part).  The Honorable Carlos F. Lucero, United States Circuit Judge for the Tenth Circuit, wrote an opinion in which he also argued that the intervenors had a protectable interest and that their interest was not adequately protected.  See San Juan Cnty., 503 F.3d 1232-34 (Lucero, J., dissenting in part and concurring in part).

At the end of the day, six judges believed that there were no protectable interests -- Chief Judge Tacha and Judges Porfilio, O'Brien, McConnell, Holmes, and Kelly -- three judges believed that the interest was adequately protected -- Judges Hartz, Henry, and Murphy -- seven judges believed that there was a protectable interest -- Judges Henry, Murphy, Seymour, Ebel, Briscoe, Lucero, and Hartz -- and four judges believed that the interest was not adequately protected -- Judges Seymour, Ebel, Briscoe, and Lucero.  Accordingly, San Juan County's rationale is unclear, but its holding is clear: San Juan County's holding is that intervention should be denied, and indeed nine judges believed that intervention should have been denied.  These nine judges, however, reached this conclusion on different grounds.  San Juan County's analysis can be interpreted as being that there was no sufficient interest, or as being that there was adequate representation.  San Juan County's holding is that the intervenors could not intervene.

In Marks v. United States, the Supreme Court held that "'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.'"  430 U.S. at 193 (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)).  The reasoning in Marks v. United States, however, may not be applicable in this case.  As the Tenth Circuit has noted:

> In practice, however, the Marks rule produces a determinate holding "only when one opinion is a logical subset of other, broader opinions."  King v. Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991)(en banc).  When the plurality and concurring opinions take distinct approaches, and there is no "narrowest opinion" representing the "common denominator of the Court's reasoning," then Marks becomes "problematic."  Id. at 781, 782; see, e.g., Nichols v. United States, 511 U.S. 738,

745 . . . (1994)(discussing the lower courts' treatment of <u>Baldasar v. Illinois</u>, 446 U.S. 222 . . . (1980)); <u>Grutter v. Bollinger</u>, 539 U.S. 306 . . . (2003)(discussing the lower courts' treatment of <u>Regents of University of California v. Bakke</u>, 438 U.S. 265 . . . (1978)).  We do not apply <u>Marks</u> when the various opinions supporting the Court's decision are mutually exclusive.  <u>See Homeward Bound, Inc. v. Hissom Mem'l Ctr.</u>, 963 F.2d 1352, 1359 (10th Cir. 1992)(citing <u>King</u>, 950 F.2d at 782).

<u>United States v. Carrizales-Toledo</u>, 454 F.3d 1142, 1151 (10th Cir. 2006).   Here, neither opinion is a logical subset of the other.   <u>See United States v. Carrizales-Toledo</u>, 454 F.3d at 1151 (citing <u>King v. Palmer</u>, 950 F.2d at 781).   Judge Hartz, whom two other judges joined, held that the intervenor's interests were adequately protected.   <u>See San Juan Cnty.</u>, 503 F.3d at 1203-07.   Judge Kelly, whom five other judges joined, held that the intervenors did not have a protectable interest.   <u>See San Juan Cnty.</u>, 503 F.3d 1208-10 (Kelly, J., concurring).   Each opinion took "distinctive approaches," and neither represents a "'common denominator of the Court's reasoning.'"   <u>United States v. Carrizales-Toledo</u>, 454 F.3d at 1151 (quoting <u>King v. Palmer</u>, 950 F.2d at 781).[14]

---

[14]Between Judge Hartz' and Judge Kelly's opinions in <u>San Juan County</u>, Judge Hartz' opinion is the narrowest.   Judge Kelly held that the intervenor had no protectable interest, <u>see San Juan Cnty.</u>, 503 F.3d at 1210 (Kelly, J., concurring), while Judge Hartz held that the intervenor's interests were adequately represented, <u>see</u> 503 F.3d at 1207.   Deciding the case on the adequacy of representation prong results in a narrower ruling than deciding the case on the interest prong.   If a case fails the protectable interest prong, it will implicitly fail the adequacy of representation prong.   If there is no interest, then the potential intervenors' interests cannot be inadequately represented.   The potential intervenor's interests cannot be adequately represented either.   There is no interest to which the adequacy-of-representation prong can be determined.   On the other hand, if a potential intervenor fails on the adequacy-of-representation prong, the adequacy of representation does not mean that the potential intervenor did not have a protectable interest.   A potential intervenor may, as Judge Hartz held, have a protectable interest, but then the existing parties adequately represent that interest.   A potential intervenor may satisfy the protectable interest prong but fail the adequacy-of-representation prong, but a potential intervenor cannot fail the protectable interest prong and then satisfy the adequacy-of-representation prong.   Judge Hartz' opinion relies on a narrower holding than Judge Kelly's.   Judge Hartz determined that the intervenor satisfied the first three prongs before deciding that the intervenor failed to satisfy the fourth prong.   On the other hand, Judge Kelly determined that the intervenor failed the second prong, and, as such, he did address the third and fourth prongs.   <u>See San Juan Cnty.</u>, 503 F.3d at 1201 (Kelly, J., concurring)("I conclude that SUWA has not asserted an interest relating to the

Judge Gorsuch, in a dissenting opinion, argued that Marks v. United States necessitates that Judge Hartz' opinion is the controlling opinion.   See N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 883 (Gorsuch, J., dissenting).   Judge Gorsuch wrote: "The en banc plurality in San Juan issued the narrowest and so controlling ruling, see Marks v. United States, 430 U.S. 188, 193-94 . . . (1977), and it held that Rule 24(a)(2) doesn't permit intervention as a matter of right if an existing party already adequately represents that interest."   N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 883 (Gorsuch, J., dissenting). This suggestion is contrary to the Tenth Circuit's limitations of Marks v. United States and contrary to the Tenth Circuit's application of San Juan County.

First, as discussed above, neither Judge Kelly's nor Judge Hartz' opinions are a subset of the other, but instead each uses different approaches.   See United States v. Carrizales-Toledo, 454 F.3d at 1151.   Accordingly, Marks v. United States does not apply.   See United States v. Carrizales-Toledo, 454 F.3d at 1151.   Second, the Tenth Circuit has held that Judge Hartz' discussion on adequate representation is not binding.   See Kane Cnty. v. United States, 597 F.3d 1129, 1134 (2010); WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 997 ("We are well

property . . . which is the subject of the action . . . .   As a result, it is not necessary in my view to reach the question of adequate representation."   (citation omitted)(internal quotation marks omitted)).   Accordingly, because Judge Kelly concluded that the intervenor failed the second prong, and thus implicitly failed the third and fourth, while Judge Hartz concluded that the intervenor failed only the fourth prong, Judge Hartz' opinion may be considered the narrower opinion.

Being the narrower opinion, however, does not make Judge Hartz' opinion the controlling one.   Judge Hartz' opinion is not a "'logical subset of'" Judge Kelly's opinion.   United States v. Carrizales-Toledo, 454 F.3d at 1151 (quoting King v. Palmer, 950 F.2d at 781).   Nor does Judge Hartz' opinion represent a "'common denominator'" of the Tenth Circuit's reasoning.   United States v. Carrizales-Toledo, 454 F.3d at 1151 (quoting King v. Palmer, 950 F.2d at 781).   Judge Kelly concluded that the intervenor had not protectable interests, while Judge Hartz explicitly rejected this rationale by concluding that the intervenor had a protectable interest.   Judge Hartz' opinion is completely at odds with Judge Kelly's in every way except the holding: denying intervention.   Because Judge Hartz' and Judge Kelly's opinions "are mutually exclusive," Marks v. United States cannot apply even though Judge Hartz' opinion is the narrower one.

aware that the lead opinion in San Juan County stated that a presumption of adequate representation should apply when the government is a party pursuing a single objective.   But only three members of the en banc court joined this portion of the opinion." (citations omitted)(internal quotation marks omitted)).[15]   In Kane County v. United States, in an opinion

---

[15]It is worth noting that Judge Hartz authored the Tenth Circuit's opinion in WildEarth Guardians v. United States Forest Service.   See 573 F.3d at 993.   There, the parties objecting to intervention argued that, because the intervenor and the Forest Service shared the same ultimate objective in defending the Forest Service's prior decision, the intervenor's interests were adequately represented by the Forest Service.   See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.   Judge Hartz addressed this argument by stating:

> We have held, however, that the intervenor's "showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest."   Utah Ass'n of Counties, 255 F.3d at 1254.   As we have explained,
>
>> the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation.   In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor.
>
> Id. at 1255-56; see also Utahns for Better Transp., 295 F.3d at 1117; Coalition, 100 F.3d at 845.   Moreover, we have recognized that government policy may shift.   See Utah Ass'n of Counties, 255 F.3d at 1256.

WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996.   By quoting and relying on Utah Association of Counties v. Clinton, the Tenth Circuit indicated, in WildEarth Guardians v. United States Forest Service, that it did not overrule Utah Association of Counties v. Clinton in San Juan County.   In Utah Association of Counties v. Clinton, the Tenth Circuit stated:

> Although we recognized in Coalition that a presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation, see [Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845] (quoting Northwest Forest Res. Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996)), we held this presumption rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest, see id.

that Judge Briscoe authored and Judges Ebel and Kelly joined, the Tenth Circuit held that the

United States' government adequately represented an environmental group's interests.   See

597 F.3d at 1135.   The Tenth Circuit reached this conclusion by holding, in an opinion that Judge

Kelly authored, and Judges Ebel and Briscoe joined, that, "[a]lthough San Juan County does not

mandate a particular outcome in this case," the rationales behind Judge Hartz' and Judge Ebel's

opinions lead to the conclusion that the United States adequately represented the group's interests.

See Kane Cnty. v. United States, 597 F.3d at 1134.   There, the sole question was whether the

United States had exclusive title to roads on federal land.   See Kane Cnty. v. United States, 597

F.3d at 1131, 1134.   The Tenth Circuit noted that Judge Ebel, in his dissenting opinion in San

Juan County, argued that the issue in San Juan County was not only whether the federal

government had title to roads on federal land, but also what was the scope and nature of any

right-of-way that existed on those roads.   See Kane Cnty. v. United States, 597 F.3d at 1134

_____

Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255.   If Judge Hartz' opinion in San Juan County
were the controlling opinion, then his opinion would have overruled Utah Association of Counties
v. Clinton.   Compare Utah Ass'n of Cntys. v. Clinton, 255 at 1255 (noting that the presumption
"of adequate representation [that] arises when an applicant for intervention and an existing party
have the same objective in the litigation" is "rebutted by the fact that the public interest the
government is obligated to represent may differ from the would-be intervenor's particular
interest"), with San Juan Cnty., 503 F.3d at 1204-05 (noting that "the general presumption that
representation is adequate when the objective of the applicant for intervention is identical to that of
one of the parties" applies "when the government is a party pursuing a single objective" (emphasis
omitted)(citations omitted)(internal quotation marks omitted)).   The Tenth Circuit, however, in
an opinion that Judge Hartz wrote after San Juan County, applied Utah Association of Counties v.
Clinton to conclude that the intervenor's interests were not adequately represented because the
government represents the public's interests, some of which may differ from the intervenor's
interests.   See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 996-97.
        In WildEarth Guardians v. United States Forest Service, the Tenth Circuit, after noting that
"only three members of the en banc court" in San Juan County joined Judge Hartz' opinion, noted
that, even under Judge Hartz' analysis from San Juan County, the intervenor's interests were not
adequately represented, because the government had "multiple objectives" in the case.
WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 997.   By applying Utah Association of
Counties v. Clinton, however, the Tenth Circuit indicated that Judge Hartz' opinion is not the
controlling opinion, even though the Tenth Circuit later noted that its outcome would have been
the same even if it applied Judge Hartz' opinion.

(citing San Juan Cnty., 503 F.3d at 1228 (Ebel, J., dissenting in part and concurring in part)(noting that the case does not require "a simple binary determination -- i.e., does San Juan County have a right-of-way easement" but also "the nature and scope of that right-of-way if it does exist")).   The Tenth Circuit reasoned, in Kane County v. United States, that, because the intervenors had waived the argument on the scope and nature of the easement, the only issue was to make a binary determination whether the United States had exclusive title.   See 597 F.3d at 1135.   The Tenth Circuit concluded that, under Judge Hartz' rationale and Judge Ebel's rationale, the United States adequately protected the intervenors' interests.   See 597 F.3d at 1135.   If the Judge Hartz' opinion in San Juan County were the controlling opinion, the Tenth Circuit, in Kane County v. United States, would have been bound to follow Judge Hartz' opinion, rather than relying on Judge Ebel's dissenting opinion.   See United States v. Chang Hong, 671 F.3d 1147, 1150 n.4 (10th Cir. 2011)(noting that the Tenth Circuit is bound by its prior en banc decision).   Instead, the Tenth Circuit held that "San Juan County does not mandate a particular outcome in this case."   See Kane Cnty. v. United States, 597 F.3d at 1134.   Accordingly, in Kane County v. United States, the Tenth Circuit indicated that Judge Hartz' opinion is not the controlling opinion.

Finally, Judge Gorsuch's argument that Marks v. United States causes Judge Hartz' opinion to be binding is subject to an additional concern.   Judge Gorsuch made this argument in a dissenting opinion.   See N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 883 (Gorsuch, J., dissenting).   There, the majority -- Judges Anderson and Holmes -- concluded that, even though the intervenors' and the government agency's objective was the same, the government agency could not adequately represent the intervenors' interests because the agency had to represent the interests of the public and because the agency may change its policy during litigation.   See N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 881.   If

Judge Hartz' opinion were controlling, the intervenors' and the government agency's common objectives would have been sufficient to find adequate representation.  See San Juan Cnty., 503 F.3d at 1204 (holding that "'representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties'" and that "[t]his presumption should apply when the government is a party pursuing a single objective" (quoting Stilwell v. Ozarks Rural Elec. Coop. Corp., 79 F.3d at 1042)(emphasis omitted)).  If Judge Hartz' opinion were the controlling opinion, then the United States would have adequately represented the intervenors' interests because they had the same objective as the government agency.  See N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 881.  If Marks v. United States caused Judge Hartz' opinion to be binding, Judge Gorsuch's dissenting opinion in New Mexico Off-Highway Vehicle Alliance v. United States Forest Service would have been the majority opinion.  The majority, however, held that the government agency's multiple interests prevented adequate representation -- despite their common objective -- thus, rejecting Judge Hartz' reasoning in San Juan County and Judge Gorsuch's argument in dissent.  See N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv., 540 F. App'x at 881.  Because the majority rejected Judge Gorsuch's dissenting argument, Judge Gorsuch's assertion does not make Judge Hartz' opinion the binding opinion from San Juan County, and the Court will not treat it as such.[16]

_____

[16]While the Court agrees with Judge Gorsuch's assertion that Judge Hartz' opinion is the narrowest opinion, the Court disagrees that Judge Hartz' opinion is the controlling one, because it is not a logical subset of Judge Kelly's opinion.  See supra note 14.  The Court concludes that Judge Hartz' opinion is the narrowest but not the controlling opinion in San Juan County.  In any case, even if the Court applied Judge Hartz' opinion in this case, the result would be the same. Judge Hartz held that there is a "general presumption that representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties" and that this "presumption should apply when the government is a party pursuing a single objective."  San Juan Cnty., 503 F.3d at 1204 (emphasis omitted)(citation omitted)(internal quotation marks omitted).  In a later opinion, which Judge Hartz also wrote, the Tenth Circuit noted that, without adopting Judge Hartz' San Juan County opinion, the rationale from that opinion does not apply if "the government has multiple objectives."  WildEarth Guardians v. U.S. Forest Serv., 573 F.3d

> **b.** **The Defendants and the Intervenor-Applicants Do Not Share Identical Interests.**

SWEPI, LP, argues that the Intervenor-Applicants and the Defendants have the same interest in this case, which "is to defend the constitutionality of the Ordinance."   Response at 4. See Tr. at 17:21-18:2 (Anderson, Court); id. at 18:21-19:1 (Anderson).   This argument conflates the Intervenor-Applicants' and Defendants' interests and their objectives.   The

---

at 997.   In WildEarth Guardians v. United States Forest Service, the Forest Service approved a plan for venting a large coal mining complex, which lay beneath several national forests in Colorado.   See 573 F.3d at 992.   An environmental group sued the Forest Service, challenging the plan's validity.   See 573 F.3d at 992.   The mining company, which owned the mining complex, sought to intervene in the suit.   See 573 F.3d at 992.   Judge Hartz, writing for the Tenth Circuit, held that the mining company could intervene.   See 573 F.3d at 997.   Judge Hartz concluded that the mining company's interests were not adequately represented, because the government represented the public's interests, which were different than the mining company's interests.   See 573 F.3d at 996-97.   The plaintiff argued that the mining company and the Forest Service had the same objective, and, thus, the mining company's interests were adequately represented.   See 573 F.3d at 996.   Judge Hartz stated that, in San Juan County, he wrote that, "'when the government is a party pursuing a single objective,'" adequate representation is assumed. WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 997.   Judge Hartz noted that "only three members of the en banc court joined this portion of the opinion."   WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 997.   Judge Hartz concluded, however, that, even if this sentence from San Juan County applied, it would not change the results in the case.   See WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 997.

> In San Juan County "the Federal Defendants had only a single litigation objective -- namely, defending exclusive title to the road -- and the proposed intervenor could have had no other objective regarding the quiet-title claim."   [San Juan Cnty., 503 F.3d] at 1206.   We were not informed of any potential federal policy that could be advanced by the government's relinquishing its claim of title to the road.   Here, in contrast, the government has multiple objectives and could well decide to embrace some of the environmental goals of [the plaintiff].   Therefore, [the mining company] should not be required to rely on the defendants to represent its interests.

WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 997.   In the same way, the Defendants have multiple objectives in this case.   The Defendants have an objective to uphold the validity of the Ordinance.   They have an objective to protect the environment and the quality of the water in Mora County.   They also have an objective to avoid paying monetary damages.   Additionally, the Individual Commissioners likely have an objective to appease their constituents.   Because the Defendants have multiple objectives in this case, under Judge Hartz' rationale in San Juan County, the Intervenor-Applicants' interests are not adequately represented.   Accordingly, even if Judge Hartz' opinion in San Juan County were the controlling opinion, the Court would still grant the Motion and permit the Intervenor-Applicants to intervene.

Intervenor-Applicants' interests are their environmental concerns and their uses of state lands. See supra Section I.B. Their objective is to defend the Ordinance's constitutionality. The Defendants' interests are the public's interests. See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255. The Defendants' objective is to defend the Ordinance's constitutionality. The Intervenor-Applicants and the Defendants' share the same objective -- defend the Ordinance's constitutionality -- but their interests are different.

A party's objective is its successful outcome in litigation. For example, in Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, the intervenor and the Department of Interior had the same objective: defend the designation of the Mexican Spotted Owl as an endangered species. See 100 F.3d at 845. See also Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255 (noting that Department of Interior and intervenor had same objective in Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior). The Tenth Circuit held, however, that they had differing interests, because the Department of Interior represented the public's interests, while the intervenor represented his private interests "as a photographer, an amateur biologist, and a naturalist." Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 841, 845. Also, in Utah Association of Counties v. Clinton, the Tenth Circuit noted that the intervenors and the federal government had the same interest in defending the creation of the Grand Escalante National Monument, but held that intervenors' private environmental and economic interests differed from the government's public interests. See 255 F.3d at 1255-56. Again, in New Mexico Off-Highway Vehicle Alliance v. United States Forest Service, the Tenth Circuit held that the intervenors and the United States forest service had the same objective in defending the Forest Service's plan to reduce the roads and trails that are open to motorized vehicles within the Santa Fe

National Forest, but held that the intervenors' interests in the use of the national forest differed from the Forest Service's public interests.   See 540 F. App'x at 879, 880-81.

Under the broad sense of the word, the Intervenor-Applicants and the Defendants have a common interest.   See Black's Law Dictionary 885 (9th ed. 2009)(defining "interest" as "[t]he object of any human desire").   Under the Tenth Circuit's differentiation between interests and objectives, for rule 24(a)(2) purposes, the Intervenor-Applicants and the Defendants share only in their objective and not in their interests.[17]

### c.   The Tenth Circuit's Public-Interest Assumption Applies to Governments in General and Not Only to Government Agencies.

SWEPI, LP, may try to differentiate this case from prior Tenth Circuit cases by arguing that the Tenth Circuit's assumption -- that a government entity represents the public's interests -- applies only to government agencies and not to legislative bodies.   The Tenth Circuit, however, has not made such a distinction and its rationale for government agencies applies equally to legislative bodies.

Many intervention cases, in which a government entity is a party, involve government agencies.   See, e.g., WildEarth Guardians v. U.S. Forest Serv., 573 F.3d at 992 (United States

---

[17]SWEPI relies on the First Circuit case, Maine v. United States Fish and Wildlife Service, to argue that, if an intervenor's interest in upholding an agency's decision is the same as the agency, representation is adequate.   See Response at 6.   This case, however, is inapplicable. While the First Circuit refers to the potential intervenors' desire to defend the Wildlife Service's designation of the Atlantic Salmon as an endangered species as an interest, see Maine v. U.S. Fish & Wildlife Serv., 262 F.3d 19, the First Circuit's law concerning government agencies and intervention differs from the Tenth Circuit.   The First Circuit presumes, "subject to evidence to the contrary, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor."   Maine v. U.S. Fish & Wildlife Serv., 262 F.3d at 19.   The Tenth Circuit, on the other hand, assumes that government entities cannot adequately represent private interests.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255. The Court, which is bound by Tenth Circuit law, cannot rely on a First Circuit case that applies law contrary to that of the Tenth Circuit.   The holding of Maine v. United States Fish and Wildlife Service is, thus, inapplicable in this case.

Forest Service); Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d

at 837 (Department of Interior and the FWS); Nat'l Farm Lines v. Interstate Commerce Comm'n,

564 F.2d at 381 (Interstate Commerce Commission); N.M. Off-Highway Vehicle Alliance v. U.S.

Forest Serv., 540 F. App'x at 877 (United States Forest Service).   In some earlier cases, the Tenth

Circuit's language suggests that the rule applies to government agencies.   See Coal. of Ariz./N.M.

Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845 ("'We have here . . . the

familiar situation in which the governmental agency is seeking to protect not only the interest of

the public but also the private interest of the petitioners in intervention, a task which is on its face

impossible.'"   (quoting Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d at 384).   In

later cases, the Tenth Circuit's language suggests that the rule applies to the government and not

just to government agencies.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255 (noting that

"government representation may not adequately represent private interests because the

government protects the public interest"); WildEarth Guardians v. U.S. Forest Serv., 573 F.3d

at 996-97 (noting "'the government's representation of the public interest generally cannot be

assumed to be identical to the individual parochial interest of a particular member of the public'"

(quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56)).   The rule, thus, appears to apply

to the government in general and not just to government agencies.   See Utah Ass'n of Cntys. v.

Clinton, 255 F.3d at 1255.

The Tenth Circuit's rationale applies to government bodies -- such as the Mora County

Commissioners.   The Tenth Circuit holds that the government must represent the public's

interests.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255.   Legislative bodies, such as the

Mora County Commissioners, represent the interests of its constituents.   See Reynolds v. Sims,

377 U.S. 533, 562 (1964)("Legislators represent people, not trees or acres.").   The Mora County

Commissioners and the Individual Commissioners must, according to the Tenth Circuit, represent the interests of the people of Mora County in the same way that a government agency represents the public's interests.   Accordingly, under Tenth Circuit law, this public interest will necessarily diverge from the Intervenor-Applicants' private interests, making the representation of their private interests inadequate.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255.[18]

_____

[18]The Tenth Circuit has not applied its public-interest analysis in a case brought against a legislative body.   The Court considered denying the Motion and stating that, because the Tenth Circuit has not considered a case such as this, the Court could consider anew whether a legislative body can adequately represent a private party's interests.   For the reasons stated above, the Court believes that the Tenth Circuit's law has been sufficiently clear and that its reasoning applies equally to this case.   SWEPI, LP, argues that, if the Defendants decide to stop defending the Ordinance, the Defendants can just vote to repeal it, effectively destroying the Intervenor-Applicants' interests in the Ordinance.   See Response at 5.   This argument is subject to two flaws.   First, it is not clear whether the Defendants can repeal the Ordinance.   Second, this argument is contrary a Tenth Circuit case involving a presidential proclamation.

First, it is not clear whether the Mora County Commissioners can repeal the Ordinance. Section 10 of the Ordinance states:

**Section 10. County Commission Action and Voter Referenda to Repeal Ordinance**

The foundation for the making and adoption of this law is the people's fundamental and inalienable right to govern themselves, and thereby secure their rights to life, liberty, and the pursuit of happiness.   Accordingly, this Ordinance automatically suspends the operating rules of the Mora County Commission when the question of repealing this Ordinance is introduced.   Repeal of this ordinance shall require both a unanimous vote of the Mora County Commissioners voting in favor of the repeal of the ordinance, and a voter referenda following that vote which shall make the repeal effective only if two thirds of the Mora County electorate vote to repeal the ordinance.

Ordinance § 10.   This section seems to imply that the Mora County Commissioners cannot repeal the Ordinance, even if they wanted.   It is not clear whether suspending "the operating rules of the Mora County Commission" would prevent the Mora County Commissioners from repealing the Ordinance.   Ordinance § 10.   Additionally, even if Mora County Commissioners could still repeal the Ordinance after their "operating rules" are suspended, Ordinance § 10, repealing the Ordinance cannot be accomplished by two commissioners' vote, which was all it took to pass the Ordinance.   See Complaint ¶ 31, at 8 (noting that the Ordinance was passed by a two to one vote). According to Section 10, a unanimous vote of the County Commissioners and a super-majority (two thirds) of the Mora County voters are necessary to repeal the Ordinance.   See Ordinance § 10.   Because of Section 10's heightened requirements to repeal, the Defendants cannot just repeal

d. **Mr. Haas' Representation of Both the Defendants and the Intervenor-Applicants Does Not Change the Court's Analysis Under Rule 24(a).**

Mr. Haas represents the Defendants and the Intervenor-Applicants.  Under the Tenth Circuit's strict interpretation of adequate representation, this dual representation does not change whether the Defendants adequately represent the Intervenor-Applicants' interests.  Courts are split over what effect the same counsel representing potential intervenors and an existing party has on the adequacy-of-representation prong.  Some Courts presume adequate representation when the same counsel represents a potential intervenor and an existing party.  See Union Cent. Life Ins. Co. v. Hamilton Steel Prod. Inc., 374 F.2d 820, 823 (7th Cir. 1967)("Inadequate representation can hardly be claimed where the same attorneys represent the Union's class

_____

the Ordinance if they decide that they no longer want to defend it.

Second, even if Section 10 were invalid or not binding on the Mora County Commissioners, the Tenth Circuit's case of Utah Association of Counties v. Clinton prevents the Court from adopting SWEPI, LP's argument that, because the Defendants could repeal the Ordinance if they decide to stop defending it, a legislative body should be treated differently than other government bodies.  In Utah Association of Counties v. Clinton, President Clinton issued a proclamation, creating the Grand Staircase Escalante National Monument.  See 255 F.3d at 1248.  The Tenth Circuit held that the United States did not adequately represent the intervenors' interests, because the United States represents the public's interests.  See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56.  The Tenth Circuit noted that, even though there was no indication that the United States would stop defending the monument's creation, the United States could later change its policy and stop its vigorous defense.  See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.  If the United States changed its policy, however, President Clinton could just revoke the proclamation; thus, destroying the intervenors' interests in the proclamation.  The Tenth Circuit held, however, that the United States did not adequately represent the intervenors' interests, because the United States represented multiple interests, some of which differed from the intervenors'.  See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1256.  The Tenth Circuit's application of rule 24's analysis in Utah Association of Counties v. Clinton to a Presidential Proclamation applies equally to a legislative body.  While the Defendants -- assuming Section 10 does not apply -- can repeal the Ordinance if they decide to stop defending it, President Clinton could also have revoked his proclamation if he decided to stop defending it.  Without considering this argument, the Tenth Circuit held that the United States did not adequately represent the intervenors in Utah Association of Counties v. Clinton.  See 255 F.3d at 1256.  Accordingly, under Tenth Circuit law, because the Defendants must represent the public's interests, some of which differ from the Intervenor-Applicants' interests, the Defendants do no adequately represent the Intervenor-Applicants' interests even though the Defendants can repeal the Ordinance if they decide to stop defending it.

representatives and the proposed intervenor."); In re Weingarten, 492 F. App'x 754, 756 (9th Cir. 2012)(unpublished)("Moreover, the [potential intervenors] are represented by the same counsel as [an existing party], indicating that he is 'capable and willing to make' the same arguments that the [potential intervenors] would make if they were permitted to intervene."   (quoting United States v. City of Los Angeles, 288 F.3d 391, 398 (9th Cir. 2002))); Guetzko v. KeyBank Nat'l Ass'n, No. C08-2067, 2009 WL 482130, at *4 (N.D. Iowa Feb. 25, 2009)(Scoles, M.J.)("Inadequate representation can hardly be claimed as the same attorney represents both the original plaintiffs and the proposed intervenors."   (quoting Carroll v. Am. Fed'n of Musicians, 33 F.R.D. 353, 353 (S.D.N.Y 1963)(Levet, J.))).   Other courts conclude that the same counsel representing a potential intervenor and an existing party is not determinative whether the existing party adequately represents the potential intervenor's interests.   See Fund for Animals, Inc. v. Norton, 322 F.3d 728, 737-38 (D.C. Cir. 2003); S2 Automation LLC v. Micron Tech., No. CIV 11-0884, 2012 WL 3656462, at *15 (D.N.M. Aug. 14, 2012)(Browning, J.); Steinberg v. Shearson Hayden Stone, Inc., 598 F. Supp. 273, 281 (D. Del. 1984)(Wright, S.J.).   Because rule 24(a)'s focus is on the potential intervenors, and not on their attorneys, and because the Tenth Circuit focuses on the parties and potential intervenors' interests, the Court concludes that sharing the same attorney is not determinative of the adequacy-of-representation prong.

First, rule 24(a) focuses on the potential intervenors and not on their counsel.   In S2 Automation LLC v. Micron Technology, Inc., the Court granted an intervenor's motion to intervene even though the same counsel represented the intervenor and an existing party.   See 2012 WL 3656462, at *15.   There, the Court noted that rule 24(a) provides parties, and not just the parties' attorneys, with a right to intervene in a case.   See S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3656462, at *15.

> While [the existing party] and [the potential intervenor] may share attorneys, the contracts at issue are not with the attorneys, but with parties. [The potential intervenor], not just its attorneys, has a right to be part of the case to protect its interests and bring claims that only it may have. Thus, [the potential intervenor] has satisfied the fourth element for intervention as a matter of right. Because [the potential intervenor] has satisfied all of the elements for intervention as a matter of right under rule 24(a)(2), the Court will grant the Motion to Intervene.

S2 Automation LLC v. Micron Technology, Inc., 2012 WL 3656462, at *15. The United States Court of Appeals for the District of Columbia Circuit reached a similar conclusion in Fund for Animals, Inc. v. Norton. See 322 F.3d at 737. There, the district court permitted some potential intervenors to intervene in the case while prohibiting another from intervening. See Fund for Animals, Inc. v. Norton, 322 F.3d at 731. The same counsel represented the potential intervenor for which the district court denied intervention as well as several other intervenors for which the district court granted intervention. See Fund for Animals, Inc. v. Norton, 322 F.3d at 731. The D.C. Circuit reversed the denial of the one potential intervenor's application. See 322 F.3d at 737-38. In addressing the same-counsel issue, the D.C. Circuit, in an opinion that Judge Garland authored, and Judge Tatel and Senior Judge Williams joined, reasoned:

> Nor does the fact that the [potential intervenor] is represented by the same counsel as the [other] intervenors establish the adequacy of representation. Rule 24(a)(2) requires a showing that the existing parties, not their lawyers, will adequately represent the applicant. Sharing the same counsel does not guarantee that the clients' interests are congruent, and if there is a divergence, it is counsel and not the clients who must bend. We are satisfied that the [potential intervenor's] interests in this litigation are not adequately represented as measured by the Trbovich[ v. United Mine Workers, 404 U.S. 528 (1972)] standard, and we therefore find that the last of the Rule 24(a)(2) requirements for intervention has been met.

Fund For Animals, Inc. v. Norton, 322 F.3d at 737. "Although the court agrees that representation by the same counsel is evidence that, at least at this point, those parties have no conflicting arguments or defenses, it does not automatically follow that counsel would continue to represent the petitioner's interests even if it were not allowed to proceed as a party in this case."

Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am., 272 F.R.D. 26, 30 n.2 (D.D.C. 2010)(Urbina, J).

Second, in determining adequate representation, the Tenth Circuit focuses heavily on the interests of the potential intervenor and of the existing parties.   See Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845 (holding that the "'possibility of divergence of interest need not be great in order to satisfy the burden of'" showing inadequate representation (quoting Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n, 578 F.2d at 1346)); Bottoms v.  Dresser Indus., Inc., 797 F.2d at 872-73 ("The most common situation in which courts find representation adequate arise when the objective of the [movant] is identical to that of one of the parties.").   This focus on the parties and on potential intervenors' interests cautions against finding adequate representation based solely on an existing party and a potential intervenor sharing an attorney.   While joint representation is a factor, the analysis is more nuanced than making that one factor determinative.   The Honorable Caleb M. Wright, United States Senior District Judge for the District of Delaware, reasoned:

> At least one court has held that when the same attorney represents both the proposed intervenor and the original plaintiff, adequacy of representation must be presumed.   See Carroll v. American Fed. of Musicians, 33 F.R.D. 353 (S.D.N.Y. 1963).   Certainly, the fact that an intervenor has retained the same attorney as that of an existing party is a strong factor pointing to adequate representation. However, the better view is that this factor by itself is not dispositive and that adequacy of representation depends on a variety of factors.   Thus, in the leading case of Stadin v. Union Elec. Co., 309 F.2d 912 (8th Cir. 1962) . . . , the court set out three factors pointing to inadequate representation: (1) proof of collusion between the representative and an opposing party; (2) the representative having an interest adverse to the intervenor and (3) the failure of the representative in the fulfillment of his duty.   These factors are not exhaustive.   As we have noted, the representative and the intervenor having the same counsel would be relevant, as would the incompetence of the representative's counsel.   Nevertheless, the most important factor to consider is the relation of the representative's interest to that of the proposed intervenor.   As a leading treatise has declared,

> The most important factor in determining adequacy of
> representation is how the interest of the absentee compares with the
> interests of the present parties.   If the interest of the absentee is not
> represented at all, or if all existing parties are adverse to him, then he
> is not adequately represented.   If his interest is identical to that of
> one of the present parties, or if there is a party charged by law with
> representing his interest, then a compelling showing should be
> required to demonstrate why this representation is not adequate.
> Finally, if his interest is similar to, but not identical with, that of one
> of the parties, a discriminating judgment is required on the
> circumstances of the particular case, but he ordinarily should be
> allowed to intervene unless it is clear that the party will provide
> adequate representation for the absentee.

7A C. Wright & A. Miller, Federal Practice and Procedure, § 1909 at 524 (1972).

Steinberg v. Shearson Hayden Stone, Inc., 598 F. Supp. at 281 (footnotes omitted).   Similarly, the

existing parties' and the potential intervenor's interests, and not the same counsel representing the

existing parties and the potential intervenor, are the determinative factor whether the existing

parties adequately represent the potential intervenor's interests,.

Here, the same counsel, Mr. Haas, represents the Defendants and the

Intervenor-Applicants.   This identical representation, however, is not determinative of the

adequacy of the Defendants' representation of the Intervenor-Applicants' interests.   See S2

Automation LLC v. Micron Technology, Inc., 2012 WL 3656462, at *15.   Rule 24(a) focuses on

the Intervenor-Applicants' right to intervene in the case and not on their right have an attorney who

is in the case represent them.   See S2 Automation LLC v. Micron Technology, Inc., 2012 WL

3656462, at *15.   Additionally, whether they have differing interests determines the Defendants'

ability to adequately represent the Intervenor-Applicants' interests.   See Coal. of Ariz./N.M.

Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 845.   Accordingly, because Tenth

Circuit law holds that a government entity must represent the public's interests and cannot

adequately represent a private individual's interest, see Utah Ass'n of Cntys. v. Clinton, 255 F.3d

at 1255-56, the Defendants do not adequately represent the Intervenor-Applicants' interests despite that the same counsel represents the Defendants and the Intervenor-Applicants.   In a case not including government entities, the dual representation may play a more substantial role in the Court's analysis.

> **2.**     **The Court Believes that a Government Entity is Fully Capable of Defending its Own Laws in a Manner that Protects Private Interests.**

The Defendants are fully capable of defending the Ordinance -- and thus the Intervenor-Applicants' interests -- without intervention.   The Tenth Circuit has created what essentially amounts to a per se rule that, when a government entity is a party in a case, it is unable to represent a potential intervenor's private interests, despite the government and the intervenor's common objectives.   See Utah Ass'n of Cntys. v. Clinton, 255 F.3d at 1255-56.   This rule is especially troubling in a case such as this one where the Defendants are defending an Ordinance that they passed.   It is difficult to posit who is in a better position to defend the constitutionality of legislation than the legislature and legislators who enacted it.

Moreover, with the Tenth Circuit's lenient rules in finding a protectable interest, any private party, with a creative enough attorney, can intervene in a case in which the government is a party.   One intervenor may have an interest in hunting in a flat grassy region of the county and another in a mountainous wooded area.   One intervenor may have an interest in fishing in lakes and ponds, and another in fishing in streams and creeks.   One intervenor may have an interest in studying specific foliage, and other intervenors have interests in studying other foliage.   One intervenor photographs the forests and the landscapes; another paints.   With a creative enough attorney, an intervenor -- or dozens of intervenors -- can think of specific enough interests that a case may impair, and, once the interest prongs are satisfied, the intervenors automatically satisfy

rule 24(a)(2), because, according to the Tenth Circuit, a government entity is incapable of adequately protecting these private interests in spite of the common objectives.

A number of Circuit Courts of Appeals hold that adequate representation is presumed if a government entity is a party in a case.  See Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 567 (1st Cir. 1999)("But, perhaps as a counterweight to the broad reading of interest, the courts have been quite ready to presume that a government defendant will adequately represent the interests of all private defenders of the statute or regulation unless there is a showing to the contrary."  (citation omitted)(internal quotation marks omitted)); Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir. 1976)("Furthermore, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee."); United States v. S. Bend Cmty. Sch. Corp., 692 F.2d 623, 627 (7th Cir. 1982)("The school board is a governmental body and its officers are charged by law with representing the interests of the students.   Adequate representation of the students is therefore to be presumed where, as here, there has been no showing of gross negligence or bad faith."  (citation omitted)); Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir. 2004)("[T]he burden is greater if the named party is a government entity that represents interests common to the public.   We presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation . . . ."); Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003)("There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents.   In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest."  (citation omitted)(internal quotation marks omitted)).   See also

Washington v. Keller, 479 F. Supp. 569, 572 (D. Md. 1979)("Furthermore, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee.").

These courts appear to recognize that a government body, which is entrusted with representing the needs of its constituents, is in the best position to defend its laws that protect the interests of its people.   The Tenth Circuit takes the opposite view; essentially espousing a viewpoint that the government is unable to adequately defend its own laws that benefit its people's interests.   This is a bleak outlook on democracy.   The Court takes an opposing viewpoint.   The Court believes that a government entity is more than capable of protecting the private interests of its people in defending a law that grants or protects those interests.   The people of Mora County elected the Individual Commissioners to the Mora County Commissioners to represent the people and to protect their interests.   The Court should respect this decision rather than view it with such suspicion.

The Court would require an affirmative showing that a government entity is unable or unwilling to adequately protect an intervenor's private interests.   For example, in Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, the Tenth Circuit noted that the intervenor had to threaten to sue, and then actually sue, to force the Wildlife Service to designate the Mexican Spotted Owl as an endangered species.   See 100 F.3d at 845. This reluctance to even designate the Mexican Spotted Owl as an endangered species would likely be sufficient to make an affirmative showing that the government was reluctant to adequately defend the designation and protect the intervenor's interests.   Writing on a blank slate, the Court would follow the rules from other circuits and presume that the government can provide adequate

representation until an intervenor can make an affirmative showing to rebut this presumption.[19]
Judge Hartz' opinion in San Juan County would have been a first step in this direction.   See San
Juan Cnty., 503 F.3d at 1204 ("We have stated the general presumption that representation is
adequate when the objective of the applicant for intervention is identical to that of one of the
parties . . . .   This presumption should apply when the government is a party pursuing a single
objective." (citations omitted)(internal quotation marks omitted)(emphasis omitted)).   The Tenth
Circuit has, however, refused to adopt Judge Hartz' reasoning.   See supra Section I.D.1.a.

    That several district courts within the Tenth Circuit have refused to follow the Tenth
Circuit's rules highlights the illogicality of the Tenth Circuit's rule and the resistance by courts to
adopt the Tenth Circuit's distrust of the government's ability to adequately represent its
constituents.   In Herriman City v. Swensen, No. CIV 07-0711 TS, 2007 WL 4270590, (D. Utah
Nov. 30, 2007)(Stewart, J.), the Honorable B. Ted Stewart, United States District Judge for the
District of Utah, concluded that the state of Utah could adequately represent potential intervenors'
private interests.   See 2007 WL 4270590, at *1.   Judge Stewart did not consider the state's public
interests, but instead relied on Judge Hartz' opinion in San Juan County to conclude that, because
a state statute required the state to defend its statutes' constitutionality, and because the potential
intervenors had the same objective as the state -- defend the statute's constitutionality -- the state
adequately protected the potential intervenor's interests.   See 2007 WL 4270590, at *1.   In
Bishop v. Oklahoma ex rel. Edmondson, 447 F. Supp. 2d 1239 (N.D. Okla. 2006)(Kern, L.), rev'd
in part on other grounds, 333 F. App'x 361 (10th Cir. June 5, 2009)(unpublished), the Honorable
Terence C. Kern, United States District Judge for the Northern District of Oklahoma, concluded

_____

[19]Writing on a blank slate, the Court would do as it did in American Association of People
with Disabilities v. Herrera and deny intervention but allow the Intervenor-Applicants to renew
their motion if, at some point in the case, the Defendants stopped adequately representing their
interests.   See 257 F.R.D. at 254-57.

that the State of Oklahoma adequately protected the potential intervenors' interests in defending Oklahoma's constitutional provision, defining marriage as "the union of one man and one woman."   447 F. Supp. 2d at 1253, 1258.   Judge Kern did not consider the state's public interests, but instead concluded that, because the potential intervenors' objectives were the same as the state -- defending the constitutional amendment -- the state adequately protected their interests. See 447 F. Supp. 2d at 1258.   Judge Stewart and Judge Kern may have misinterpreted San Juan County, or may have knowingly chosen to not fully apply the Tenth Circuit's law concerning rule 24(a)(2).   Their failure or refusal to fully apply the Tenth Circuit's law in those cases, however, is at least indicative of their understanding of the illogical results that the Tent Circuit's rules create.

Because the Court has more faith in the government -- especially elected officials -- than the Tenth Circuit, and because the Court believes that government entities are in the best position to defend their laws, the Court disagrees with the Tenth Circuit's public interests rule in applying rule 24(a)(2) when a government entity is a party to a case.   The Court disagrees with the Tenth Circuit's law and the result that it creates in this case, but the Court will continue to faithfully follow and apply the Tenth Circuit's precedent.   See Montoya v. Sheldon, No. CIV 10-0360, 2012 WL 5476882, at *14 (D.N.M. Oct. 31, 2012)(Browning, J.)("'The Court must faithfully follow the Tenth Circuit's decision and judgment.'"   (quoting Kerns v. Bd. of Comm'rs of Bernalillo Cnty., 888 F. Supp. 2d 1176, 1227 (D.N.M. 2012)(Browning, J.))).   Accordingly, the Court will grant the Motion and permit the Intervenor-Applicants to intervene in this case.[20]

_____

[20]The Court is permitted to impose appropriate conditions on the Intervenor-Applicants. See United States v. Albert Inv. Co., 585 F.3d 1386, 1396 (10th Cir. 2009)("In addition, intervention as of right 'may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.'"   (quoting San Juan Cnty., 503 F.3d at 1189)).   See Fed. R. Civ. P. 24 advisory committee notes (1966 Amendment)("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").   At this time, the Court will not impose any conditions on

## II.     IF RULE 24(A)(2) DID NOT REQUIRE INTERVENTION, THE COURT WOULD NOT ALLOW THE INTERVENOR-APPLICANTS TO PERMISSIVELY INTERVENE UNDER RULE 24(B).

The Intervenor-Applicants argue that, if the Court denies intervention under rule 24(a)(2), it should permit them to intervene under rule 24(b).   See Memo. at 17-18.

Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *10-11.  Rule 24(b) grants district courts discretion that appellate courts will not disturb absent a showing of clear abuse.

See United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d at 1427 ("Of course, permissive intervention is a matter within the sound discretion of the district court, and we will not disturb its order except upon a 'showing of clear abuse.'"  (quoting Shump v. Balka, 574 F.2d 1341, 1345

---

the Intervenor-Applicants, but, if the Intervenor-Applicants' conduct in this case so requires, the Court may impose appropriate conditions and restrict their participation under its power to control discovery and the process before.   The Court is especially concerned that the same attorney, Mr. Haas, represents the Defendants and the Intervenor-Applicants.   The Court will not restrain Mr. Hass from vigorously representing all of his clients' interests and positions, but many of the Defendants' and the Intervenor-Applicants' arguments will be identical in this case.   See infra, Section II.   If Mr. Haas is filing, or responding to, a motion on behalf of the Defendants and the Intervenor-Applicants, to prevent duplicative arguments, if his motion/response for the Defendants raises identical arguments as his motion/response for the Intervenor-Applicants, the Court may limit Mr. Haas to filing only one motion/response on behalf of the Defendants and the Intervenor-Applicants.   The same goes for discovery.   Mr. Haas may not need to file duplicative requests on behalf of both the Defendants and the Intervenor-Applicants.   If depositions are held, Mr. Haas may not need to conduct duplicative depositions for both the Defendants and the Intervenor-Applicants.   There may be no need to double SWEPI, LP's burden when the same attorney represents the Defendants and the Intervenor-Applicants.   There may also be no need to slow down the case by filing twice as many documents.   If there comes a point in the case where the Court concludes that the Intervenor-Applicants are using their position as intervenors merely to burden SWEPI, LP, or to slow down the resolution of the case, the Court may impose appropriate conditions that will limit the Intervenor-Applicants' participation in the case.   At this point, however, there does not seem to be any indication that the Intervenor-Applicants will use their party positions in an unreasonable way, and SWEPI, LP, has not asked for any conditions.

(10th Cir. 1978)).   The Court concludes that, while the Motion satisfies rule 24(b)'s elements, it would deny the Motion and not permit permissive intervention.

The Intervenor-Applicants have satisfied rule 24(b)'s requirements, such that the Court may permit intervention under rule 24(b).   First, the Intervenor-Applicants timely filed the Motion.   See supra Section I.A.   Second, the Intervenor-Applicants' defense has a common question of law and fact as the "main action."   Fed. R. Civ. P. 24(b)(1)(B).   The Intervenor-Applicants' desire to defend the Ordinance, which is the main question in the case: whether the Ordinance is valid under state and federal law.   Third, intervention will not unduly delay or prejudice the adjudication of the original parties' rights.   See Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").   The Intervenor-Applicants filed the Motion within two months after SWEPI, LP, filed the Complaint and before the Defendants had answered the Complaint.   With this early filing, the Court cannot reasonably and fairly say that granting the Motion would unduly delay the case or prejudice the parties.[21]   See W&W Steel, LLC v. BSC Steel, Inc., No. CIV 11-2613 RDR, 2013 WL 1858465, at *3 (D. Kan. May 2, 2013)(Robinson, J.)("The intervention will not unduly delay the main action for the same reason that the motions are timely: the case is at its early stages since there has been no scheduling

---

[21]The same attorney, Mr. Haas, represents the Defendants and the Intervenor-Applicants. At least one court has found that duel representation of potential intervenors and existing parties lessens the possible prejudice to other parties.   See Arc/Connecticut v. O'Meara, No. CIV 01-1871, 2002 WL 31106383, at *5 (D. Conn. Aug. 20, 2002)(Arterton, J.)("Further, because the proposed intervenors and original plaintiffs are all represented by the same attorneys and the proposed intervenors are already part of the proposed class, the Court discerns no potential delay or prejudice in the adjudication of the rights of the original parties.").   See also Ashford v. Milwaukee, No. CIV 13-0771, 2014 WL 1281524, at *1-2 (E.D. Wis. Mar. 26, 2014)(Adelman, J.)(granting intervention but noting parties' argument that, because different attorneys represent the intervenors and existing parties, the parties will be prejudiced by having to work around an additional attorney's schedule and permitting another attorney to attend depositions).

conferences set."); <u>SEC v. Mgmt. Solutions, Inc.</u>, No. CIV 11-1165 BJS, 2013 WL 820340, at *3 (D. Utah Mar. 5, 2013)(Jenkins, S.J.)(finding no prejudice or delay when motion was filed before pretrial conference).   <u>C.f.</u> <u>Gaedeke Holdings VII. Ltd. V. Mills</u>, No. CIV 11-0649 M, 2013 WL 2532501, at *4 (W.D. Okla. June 10, 2013)(Miles-LaGrange, C.J.)(finding prejudice and delay when motion was filed two years after commencement of the case and four months before trial); <u>In re Bank of Am. Wage & Hour Emp't   Litig.</u>, No. CIV 10-2138 JWL, 2014 WL 3894356, at *1 (D. Kan. Aug. 8, 2014)(Lungstrum, J.)("Without question, permitting intervention at this juncture . . . would unduly delay and prejudice the parties . . . who have been litigating their claims and defenses for many years and who are now nearly 8 months into the process of settlement administration in a complex case.").   The Intervenor-Applicants thus have satisfied rule 24(b)'s requirements, and the Court may use its discretion to permit the Intervenor-Applicants to intervene.   <u>See</u> Fed. R. Civ. P. 24(b).   The Court, however -- if it were not required to permit intervention under rule 24(a)(2) -- would deny the Motion and not permit the Intervenor-Applicants to intervene in this case.

The Defendants have not shown any indication that they intend to do anything other than vigorously defend the Ordinance.   With the Defendants already defending the Ordinance, and with the Defendants' better position to defend the Ordinance than the Intervenor-Applicants, <u>see</u>, <u>supra</u>, Section I.D.2., the Defendants already adequately represent the Intervenor-Applicants' position.   <u>See</u> <u>City of Stilwell v. Ozarks Rural Elec. Coop. Corp.</u>, 79 F.3d at 1043 (affirming the district court's denial of intervention under rule 24(b) when district court found that potential intervenor's interests were adequately protected).   Additionally, the Intervenor-Applicants will not raise any additional arguments that the Defendants will not raise.   <u>See</u> <u>Kane Cnty. v. United States</u>, 596 F.3d at 1136 (affirming district court's decision to deny intervention under rule 24(b)

when district court found that the potential intervenors would not raise any additional claims or defenses than those that the existing defendant would raise); Perry v. Schwarzenegger, 630 F.3d 898, 906 (9th Cir. 2011)(affirming district court's denial of intervention under rule 24(b) when the court, in part, "based this conclusion first on the fact that Movants had explained that they had no new evidence or arguments to introduce into the case").   The Intervenor-Applicants offer two ways in which it would advance additional arguments in the case.   First, the Intervenor-Applicants contend that they will argue that the "authority of the people of Mora to local self-government is sufficient authority for the adoption of the Ordinance" while the Defendants will argue that "the power of the municipal corporation itself . . . grants that authority." Memo. at 16.   Second, the Intervenor-Applicants contend that they will file the MTD, and make the argument that SWEPI, LP, lacks standing and has failed to state a claim, because it has no constitutional rights within Mora County.   See Supplement ¶ 5, at 2.   See also MTD ¶¶ 1-19, at 1-5.

While the Intervenor-Applicants may be able to argue self-governance, it is not clear how this argument helps them in this case.   The Intervenor-Applicants have not shown how their right to self-governance could save the validity of the Ordinance if any argument that the Defendants make cannot.   SWEPI, LP's claims are based on the Constitution of the United States, see Complaint ¶¶ 52-102, at 13-20; id. ¶¶ 121-141, at 23-26, and on New Mexico state law, see id. ¶¶ 103-120, at 20-23.   If the Court found the Ordinance, or parts of it, to be in violation of the Constitution or New Mexico state law, it is unclear how the Intervenor-Applicants' self-governance argument could save the Ordinance.   Unless the Intervenor-Applicants are asserting that the people of Mora County, by themselves, have the self-governing authority to contravene the Constitution of the United States or of the law of the entire state of New Mexico,

then the self-governance argument is irrelevant in this case.   Because such a claim lacks a sound

basis in established law, any argument that the Intervenor-Applicants may raise concerning

self-governance is irrelevant to this case.   The Intervenor-Applicants next contend that they will

file the MTD, which they assert is "an argument that could not be raised in the same manner by the

Defendants."   Supplement ¶ 5, at 2.   This contention fails on two grounds.

     First, the Intervenor-Applicants do not state why the Defendants cannot raise the same

arguments and file a similar motion.   The same attorney is representing both the

Intervenor-Applicants and the Defendants; thus, this is not a situation in which counsel for one

party conceived a legal argument that another's counsel did not.   If the Intervenor-Applicants'

counsel believes in the arguments that the MTD contains, he can file the MTD on the Defendants'

behalf just as he could file it on the Intervenor-Applicants' behalf.   The MTD states that

SWEPI, LP, lacks constitutional rights and thus both fails to state a claim and lacks standing.   See

MTD ¶¶ 18-19, at 5.   The Defendants, as parties to the case, can raise either of these issues.   The

Intervenor-Applicants have not stated why the Defendants cannot, or have not, raised the

arguments in the MTD.   Thus, the Defendants can raise these same arguments, and intervention is

unnecessary.

     Second, the argument in the MTD lacks a sound basis in established law.   The Supreme

Court has long recognized that corporations have certain constitutional rights.   See, e.g., Citizens

United v. Fed. Election Comm'n, 558 U.S. 310 (2010).   The Intervenor-Applicants' argument in

the MTD is that the Ordinance, which a county passed, can strip corporations of their

constitutional rights.   They essentially argue, in contradiction of the Supremacy Clause, that a

county ordinance trumps the Constitution of the United States.

The Intervenor-Applicants further argue that SWEPI, LP, does not have standing to challenge the Ordinance, because § 5.6 of the Ordinance states that corporations lack authority to challenge or overturn "ordinances adopted by the Mora County Commission" when the challenge "interferes with the authority of the county to protect the health, safety, and welfare of its residents."   MTD ¶ 8, at 3 (quoting Ordinance § 5.6).   Section 5.6 of the Ordinance does not, however, apply only to corporations, such as SWEPI, LP, it states also that "Individuals or corporations in violation of the prohibitions enacted by this ordinance . . . shall not possess the authority . . . to challenge or overturn County ordinances adopted by the Mora County Commission."   Ordinance § 5.6.   The Ordinance, thus, appears to state that no one can challenge it, or any other Mora County ordinance, as long as the ordinance concerns the health, safety, or welfare of its residents.   See Ordinance § 5.6.   The Intervenor-Applicants' argument is that SWEPI, LP, cannot challenge the Ordinance's constitutionality, because the Ordinance deprives SWEPI, LP, of its constitutional rights.   See generally MTD.   If this argument has validity, it would signal the end of all civil rights that the Constitution protects.   A county could pass an unconstitutional ordinance, but then say that anyone who challenged the ordinance lacks constitutional rights to support the challenge.   The county could enforce its unconstitutional ordinance free of constitutional restrictions, because no one could challenge the validity of the ordinance.   The consequences of such an outcome could be devastating to the Union as the Nation has known it since the Civil War.   Some counties could prohibit speech on certain viewpoints. Others could deny basic rights to members of certain racial ethnicities.   Still others could prohibit religious practices; others could require participation in religious services.   The Constitution would be applied in a cookie-cutter fashion across the United States with such inconsistency from

place-to-place that it would cease to be a Constitution of the United States at all.   The Supremacy

Clause prohibits such a result.   See U.S. Const. art. VI, cl. 2.

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.[22]

The Intervenor-Applicants cannot raise any additional valid arguments that the Defendants

have not or will not raise.   Accordingly, if Tenth Circuit law did not require the Court to grant the

Motion under rule 24(a)(2), the Court would not allow the Intervenor-Applicants to intervene

under rule 24(b).

**IT IS ORDERED** that the Defendant-Intervenor-Applicants' Motion to Intervene, filed

March 6, 2014 (Doc. 6), is granted.

_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Bradford C. Berge
Larry J. Montano
John C. Anderson
Michael H. Feldewert
Holland & Hart, LLP
Santa Fe, New Mexico

> *Attorneys for the Plaintiff*

---

[22]The Court includes this discussion to show why the Intervenor-Applicants do not have any additional arguments and to show why the Court would deny intervention under rule 24(b). The Court will decide the Ordinance's validity under the Supremacy Clause and other constitutional provisions another day.

Jeff H. Haas
Law Offices of Nanasi & Haas
Santa Fe, New Mexico

    -- and --

Nancy Ruth Long
Justin W. Miller
Long Komer & Associates, P.A.
Santa Fe, New Mexico

    *Attorneys for the Defendants*

Jeff H. Haas
Law Offices of Nanasi & Haas
Santa Fe, New Mexico

    *Attorneys for Intervenor-Applicants*