## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SWEPI, LP, a Delaware
Limited Partnership,

       Plaintiff,

vs.                                       No. CIV 14-0035 JB/SCY

MORA COUNTY, NEW MEXICO;
MORA COUNTY BOARD OF COUNTY
COMMISSIONERS; PAULA A. GARCIA,
Mora County Commissioner; JOHN P. OLIVAS,
Mora County Commissioner; and ALFONSO J.
GRIEGO, Mora County Commissioner,

       Defendants,

and

LA MERCED DE SANTA GETRUDIS DE LO
DE MORA, a Land Grant; and JACOBO E.
PACHECO, an individual,

       Defendant-Intervenors.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff SWEPI, LP's Motion to Stay

Discovery, filed May 15, 2014 (Doc. 25)("Motion to Stay").   The Court held a hearing on

November 3, 2014.   The primary issue is whether the Court should exercise its discretion and stay

discovery until it decides SWEPI's Motion for Partial Judgment on the Pleadings, filed May 5,

2013 (Doc. 21)("JOP Motion").   Because the JOP Motion may not dispose of the case, because

discovery may assist the parties in supplementing the record and assist the Court in ruling on the

JOP Motion, and because staying discovery would prejudice the Defendants, the Court will deny

the Motion to Stay.

## FACTUAL BACKGROUND

On April 29, 2013, Mora County, New Mexico, Board of County Commissioners adopted the "Mora County Community Water Rights and Local Self-Government Ordinance," Ordinance 2013-01 (the "Ordinance").   Complaint ¶ 1, at 1.

The Ordinance purports to strip corporations of their constitutional rights.   See Complaint ¶ 1, at 1.   It also criminalizes almost any activity that a corporation undertakes that is related to oil and gas exploration and production in Mora County.   See Complaint ¶ 1, at 1.

### 1.    The Parties.

SWEPI, LP is a Delaware Limited Partnership that has its principal place of business in Houston, Texas.   See Complaint ¶ 3, at 2.   SWEPI, LP has leased the mineral rights associated with certain lands located in Mora County for the purposes of exploring and producing hydrocarbons.   See Complaint ¶ 4, at 2.   According to SWEPI, LP the leases have no economic value aside from the right to explore for and extract hydrocarbons.   See Complaint ¶ 4, at 2. SWEPI, LP leased at least one of these leases from the State of New Mexico through the Commissioner of Public Lands.   See Complaint ¶ 5, at 2-3.   SWEPI, LP represents that it is prepared to exercise its rights under the leases by exploring for and producing hydrocarbons within Mora County.   See Complaint ¶ 6, at 3.   Specifically, according to SWEPI, LP it is prepared to (i) drill wells for the purpose of exploring for oil, gas, and other hydrocarbons; (ii) transport to and store in Mora County equipment for the exploration and extraction of oil, gas, and other hydrocarbons; and (iii) construct and maintain infrastructure related to the exploration and extraction of oil, gas, and other hydrocarbons.   See Complaint ¶ 6, at 3.

Mora County is a political subdivision of the State of New Mexico.   See Complaint ¶ 8, at 3.   Mora County has the governing authority and the power to act under color of state law as the

New Mexico State Legislature has expressly granted.  See Complaint ¶ 8, at 3.  The Mora County Commissioners is the governing body responsible for exercising the powers that the State of New Mexico has vested in Mora County.  See Complaint ¶ 9, at 4.  Paula A. Garcia, John P. Olivas, and Alfonso J. Griego (collectively the "Individual Commissioners") are the three members of the Mora County Board of Commissioners.  Complaint ¶¶ 10-12, at 4.

La Merced de Santa Getrudis de lo de Mora ("Mora Land Grant") is a political subdivision of the State of New Mexico and is governed by: (i) the Treaty of Guadalupe Hidalgo; (ii) §§ 49-1-1 to -18 of the New Mexico Statutes Annotated; and (iii) the Mora Land Grant's bylaws.  See Defendant Intervenor-Applicants' Motion to Intervene ¶ 9, at 3, filed March 6, 2014 (Doc. 6)("Intervention Motion").  The Mora Land Grant was established in 1835, was confirmed by Congress in 1860, and was patented in 1876.[1]  See Intervention Motion ¶ 9, at 3.  The majority of the individual members of the Mora Land Grant live in Mora County.  See Intervention Motion ¶ 10, at 4.  According to the Mora Land Grant, its purpose of is to

> protect and assert historical land rights, water rights and use rights of the members of the Land Grant, to protect, manage and reconstitute communal lands of the Land Grant, to ensure the health of the Land Grant in perpetuity, and to provide for the health, safety and general welfare of the residents of the Land Grant.

Intervention Motion ¶ 10, at 4.

---

[1]The Mora Land Grant was established in 1835 when Mexican settlors settled the Valley of Mora and petitioned the governor of the area to convey title of the land to them.  See Michael Miller, Lo de Mora: A History of the Mora Land Grant on the Eve of Transition, New Mexico Office of the State Historian, http://dev.newmexicohistory.org/filedetails.php?fileID=21925 (last visited Dec. 18, 2014).  After the Mexican-American War, in 1859, two Mora residents petitioned the United States Congress to confirm the Mora Land Grant on behalf of all Mora residents, which Congress did.  See Miller, supra.  Because of the Civil War, and "bureaucratic and legal wrangling," the issuance of a land patent was delayed until 1876, when it was issued to the original seventy-six grantees.  Miller, supra.

A land patent "is an exclusive land grant made by a sovereign entity with respect to a particular tract of land."  Land Patent, Wikipedia.org, http://en.wikipedia.org/wiki/Land_patent (last visited Dec. 18, 2014).  "The patent stands as supreme title to the land because it attests that all evidence of title existent before its issue date was reviewed by the sovereign authority under which it was sealed and was so sealed as irrefutable."  Land Patent, supra.

Jacobo Pacheco is a twenty-five year old Mora County individual resident.   See id. ¶ 12, at 5.   For five months, Pacheco chaired the Mora County "Democracy School Committee," which is an association that Mora County residents formed to draft an ordinance for "Mora County that would recognize rights for Mora residents and which would protect those rights by banning oil and gas extraction within the County."   Declaration of Jacobo E. Pacheco ¶ 4, at 2, filed March 6, 2014 (Doc. 6-6)("Pacheco Dec.").   Pacheco lives about thirty miles from the New Mexico state lands where SWEPI, LP intends to drill for oil, gas, and other hydrocarbons.   See Pacheco Dec. ¶ 6, at 2.   Pacheco and his family frequently visit the state lands, and Pacheco uses the state lands for hunting, fishing, hiking, riding horseback, and traveling on all-terrain vehicles.   See id. ¶ 7, at 2.

### 2.        New Mexico Oil and Gas Rights.

New Mexico recognizes, as an interest in real property, a mineral interest that is severable from the surface estate.   See Complaint ¶ 18, at 5.   Mineral estates may be conveyed, leased, or reserved, and taxes are assessed against the mineral estate separately from the surface estate.   See Complaint ¶ 18, at 5.

The Enabling Act of 1910, 36 Stat. 557, granted New Mexico its statehood, gave New Mexico the authority to enact a state constitution and state laws, and transferred certain federal lands to the State of New Mexico to be held in trust for the benefit of public schools.   See Complaint ¶ 18, at 5.   Section 10 of the Enabling Act gave New Mexico the authority to sell or lease public state lands, with the proceeds from the sales and leases going towards public schools, public universities, or other public purposes.   See Complaint ¶ 19, at 5-6.

According to SWEPI, LP the Land Commissioner is the executive officer of the State Land Office and has jurisdiction over all land that the State of New Mexico owns.[2]  See Complaint ¶ 21, at 6 (citing N.M. Stat. Ann. § 19-1-1 ("[T]he commissioner of public lands . . . shall have jurisdiction over all lands owned in this chapter by the state, except as may be otherwise specifically provided by law . . . .")).  The Land Commissioner is authorized to lease any state land for oil-and-gas development, subject to limitations that the New Mexico Legislature places on the Land Office.  See Complaint ¶ 22, at 6.  The oil-and-gas lease forms, which the Land Commissioner is authorized to use, grants the lessee the exclusive right to explore, develop, and produce oil and gas on the specified state land, and grants the lessee various ancillary rights, including rights to drill for and produce oil.  See Complaint ¶ 23, at 6.  The Land Commissioner "has promulgated rules designed to ensure that oil-and-gas exploration and extraction is done with minimal disruption and damages to the surface estate and to prevent contamination of surface and subsurface waters."  Complaint ¶ 24, at 6-7.

In 1978, the New Mexico Legislature passed the New Mexico Oil and Gas Act, N.M. Stat. Ann. § 70-2-1 to -38.  See Complaint ¶ 25, at 7.  The Act created the Oil Conservation Commission and its sub-agency, the Oil Conservation Division.  See Complaint ¶ 25, at 7.  The Legislature empowered the Oil Commission "to conserve oil and gas, prevent waste, protect correlative rights, and to ensure that oil and gas operations throughout the state are conducted safely and do not impose an unreasonable risk to water, public health and the environment."  Complaint ¶ 27, at 7.  The Oil Commission has adopted an extensive set of rules and regulations

---

[2]While SWEPI, LP contends that the Land Commissioner has jurisdiction over all land that the State of New Mexico owns, the Land Commissioner and the State Land Office have jurisdiction over only state trust lands.  See State Trust Land, New Mexico State Land Office, http://www.nmstatelands.org/overview-1.aspx (last visited Dec. 18, 2014)(noting that the State Land Office is responsible for state trust land).  The United States Congress granted state trust lands to the State of New Mexico through the Ferguson Act of 1898, 30 Stat. 484, and the Enabling Act of 1910.  See State Trust Land, supra.

to carry out its mission.   See Complaint ¶ 29, at 7-8.   The Oil Commission also has the authority

to obtain injunctions and to seek monetary penalties for violations of the Oil and Gas Act, or of its

rules, regulations, or orders.   See Complaint ¶ 30, at 8.

> **3.      The Ordinance.**

On April 29, 2013, the Individual Commissioners voted two to one to enact the

anti-oil-and-gas Ordinance.   Complaint ¶ 31, at 8.   The Ordinance, in full, provides:

> WHEREAS, We, the residents in Mora County, are a multi-cultural community with indigenous roots of Many; and
>
> WHEREAS, We recognize the Earth, water, and air as a source of life for all living in Mora County; and
>
> WHEREAS, We are convinced that the quality of life for residents in Mora County, for both the present and the future, will be destroyed if we allow at-risk exploitation and pollution of the Earth, water, and air; and
>
> **WHEREAS, We the People of the County of Mora declare that we have the duty to safeguard the water both on and beneath the Earth's surface, and in the process, safeguard the rights of people within the county of Mora and the rights of the ecosystems of which Mora County is a part; and**
>
> **WHEREAS, We the People of Mora County declare that all of our water is held in the public trust as a common resource to be used for the benefit of Mora residents and of the natural ecosystems of which they are a part.   We believe that industrial use of water supplies in this county placing the control of water in the hands of a corporate few, rather than the county would constitute abuse and usurpation; and that we are therefore duty bound to oppose such abuse and usurpation.   That same duty requires us to recognize that two centuries' worth of governmental conferral of constitutional powers upon corporations has deprived people of the authority to govern their own communities, and requires us to take affirmative steps to remedy that usurpation of governing power; and**
>
> WHEREAS, we are conscious of the urgency of taking decisive action to protect our collective rights and the rights of future generations, and of ensuring a balanced environment for the survival of all residents of Mora County; THEREFORE,
>
> BE IT ORDAINED BY THE GOVERNING BODY OF MORA COUNTY, NEW MEXICO . . . AN ORDINANCE PROTECTING THE RIGHT OF HUMAN COMMUNITIES, NATURE, AND NATURAL WATER, BY ESTABLISHING

A LOCAL BILL OF RIGHTS FOR MORA COUNTY THAT PROTECTS THE NATURAL SOURCES OF WATER FROM DAMAGE RELATED TO THE EXTRACTION OF OIL, NATURAL GAS, OR OTHER HYDROCARBONS, BY AFFIRMING THE RIGHT TO LOCAL AUTONOMY AND SELF-GOVERNANCE, AND BY ELIMINATING LEGAL PRIVILEGES AND POWERS FROM CORPORATIONS VIOLATING THE ORDINANCE.

## Section 1.   Name and Purpose

Section 1.1 *Name*:   This Ordinance shall be known and may be cited as the "Mora County Community Water Rights and Local Self-Government Ordinance."

Section 1.2 *Purpose*:   The People of the County of Mora are a cohesive community of diverse elements, united by common culture, social bonds and a common destiny, and are represented politically in various aspects by the Mora County Government, numerous Acequias, Land Grants and Mutual Domestic Water Consumers Associations.   The People of Mora County recognize that water is essential for the life, prosperity, sustainability, and health of their community and that damage to natural groundwater and surface water sources imposes great tangible loss, to the People, natural communities and ecosystems of Mora County, not just for today but for future generations.   The People of Mora County recognize that they may be forced, without their consent, to endure or attempt to repair harm inflicted on their environment and their vital water supply, which they have no equivalent governing authority to prevent under current state and federal law.   The governing body of Mora County adopts this Mora County Community Water Rights and Local Self-Government Ordinance to overcome that liability, to provide for community health and safety, to promote a sustainable lifestyle, and to secure the comfort and convenience of the people.

## Section 2.   Authority

This Ordinance is enacted pursuant to the inherent right of the residents of Mora County to govern their own community.   That authority precedes government and is secured, without limitation, by:

> The Treaty of Guadalupe Hidalgo, Article VIII & Article IX, which guarantees the "free enjoyment of their liberty and property" of the inhabitants of what became Mora County, and which states that property of every kind "shall be inviolably respected."   According to a 2001 Government Accounting Office report (http://www.gao.gov/new.iemts/d01951.pdt), this guarantees traditional communal use rights under the Treaty, including, but not limited to, the following rights-hunting "caza," pasture "pastas," wood gathering "leña," and watering "abrevederos;"

The Declaration of Independence, which states that governments are instituted to secure the rights of people, "deriving their just powers from the consent of the governed;"

The New Mexico Constitution, Article 2, which declares that "all political power is vested in and derived from the people: all government of right originates with the people, is founded upon their will and is instituted solely for their good." That section also declares that the people "have the sole and exclusive right to govern themselves as a free, sovereign, and independent state" and that "all persons are born equally free, and have certain natural, inherent and inalienable rights" and that "[t]he enumeration in this constitution of certain rights shall not be construed to deny, impair, or disparage others retained by the people;"

The Mora County Comprehensive Land Use Plan, which states that "[t]he connection between our land, our water and our people has sustained our culture since the first settlements in Mora County, and our future depends on keeping these connections strong. Water is a vital link, which, if severed from the land, will also fragment our people from their land. The allocation of our limited water resources must recognize traditional subsistence agricultural and grazing activities as a priority over other types of more profitable land uses. Water is not just a commodity to be bought and sold, or exploited for short-term gains. Water is the lifeblood of Mora County's traditions, culture and land use. A sustainable future for Mora County requires protection of the most valuable resource for our communities -- the Water!"

## Section 3.   Definitions

Section 3.1:   "Corporation" shall mean any corporation, limited partnership, limited liability partnership, business trust, or limited liability company organized under the laws of any state of the United States or under the laws of any country, and any other business entity that possesses State-conferred limited liability attributes for its owners, directors, officers, and/or managers.

Section 3.2:   "Extraction" shall mean the digging or drilling of a well for the purposes of exploring for, developing or producing oil, natural gas, or other hydrocarbons.

Section 3.3:   "Horizontal drilling" shall mean intentional deviation of a wellbore from the vertical for the purpose of reaching subsurface areas laterally remote from the point where a well drilling bit or similar equipment enters the earth at the surface.

<u>Section 3.4:</u>   "Hydraulic fracturing" shall mean an activity in which water, propane, diesel, chemicals and a solid proppant or any other agent are pumped into a wellbore at a rate sufficient to increase the pressure downhole to a value in excess of the fracture gradient of the formation rock, causing the formation to crack, thus allowing the fracturing fluid to enter and extend the crack farther into the formation, forming passages through which natural gas, oil, or other hydrocarbons can flow.

<u>Section 3.5:</u>   "Hydrocarbons" shall mean any of numerous organic compounds, such as benzene and methane, that contain only carbon and hydrogen.

<u>Section 3.6:</u>   "La Querencia de la Tierra" shall mean the loving respect which Mora County residents have towards the land and Earth, which is rooted in our indigenous worldview -- the Earth is living and holy, is the habitat that sustains us, and is composed of all natural & living systems, flora and fauna -- interrelated, interdependent and complementary -- which share our common destiny: The right to live free from contamination.

<u>Section 3.7:</u>   "Natural Gas" shall mean any gaseous substance, either combustible or noncombustible, which is produced in a natural state from the earth and which maintains a gaseous or rarified state at standard temperature or pressure conditions, and/or gaseous components or vapors occurring in, or derived from, petroleum or natural gas.

<u>Section 3.8:</u>   "Oil" shall mean any thick, flammable, yellow-to-black mixture of gaseous, liquid, and solid hydrocarbons that occur naturally beneath the earth's surface.

## <u>Section 4.   Statements of Law -- Rights of Mora County Residents and the Natural Environment</u>

<u>Section 4.1. *Right to Water*</u>:   All residents, natural communities and ecosystems in Mora County possess a fundamental and inalienable right to sustainably access, use, consume, and preserve water drawn from natural water cycles that provide water necessary to sustain life within the County.

<u>Section 4.2. *Right of Water for Agriculture*</u>:   All Mora County residents possess the fundamental and inalienable right to unpolluted natural water to produce healthy food, to nourish our bodies, livestock and land and to continue "La Querencia de la Tierra," Love of the Land.

<u>Section 4.3. *Rights of Natural* Communities:</u>   Natural communities and ecosystems, including, but not limited to, wetlands, streams, rivers, aquifers, and other water systems, possess inalienable and fundamental rights to exist and flourish within Mora County against oil and gas extraction.  Residents of the County, along with the Mora County Commission, shall possess legal standing to

enforce those rights on behalf of those natural communities and ecosystems. Natural communities and ecosystems protected by this ordinance shall be protected on all lands within Mora County, including those owned by the state and federal government

Section 4.4. *Right to a Sustainable Energy Future*:   All residents, natural communities, and ecosystems in Mora County possess a right to a sustainable energy future, which includes, but is not limited to, the development, production, and use of energy from renewable fuel sources, and the right to have an energy system based on fuel sources other than fossil fuel sources.  This right shall also include the right to energy practices that do not cause harm, and which do not threaten to cause harm, to people, communities, or the natural environment.

Section 4.5. *Right to Self-Government*:   All residents of Mora County possess the fundamental and inalienable right to a form of governance where they live which recognizes that all power is inherent in the people, that all free governments are founded on the people's authority and consent, and that corporate entities and their directors and managers shall not enjoy special privileges or powers under the law which make community majorities subordinate to them.

Section 4.6. *People are Sovereign*:   The Mora County Commission shall be the governing authority responsible to, and governed by, the residents of the County. Use of the "Mora County" municipal corporation by the sovereign people of the County to make law shall not be construed to limit or surrender the sovereign authority or immunities of the people to a municipal corporation that is subordinate to them in all respects at all times.   The people at all times enjoy and retain an inalienable and indefeasible right to self-governance in the community where they reside.

Section 4.7. *Rights of La Querencia de la Tierra*:   The farm-based indigenous/mestizo (mixed blood) people who created the original Mora County culture considered the Earth to be living and holy; thus they referred to their homeland as "La Querencia de la Tierra," Love of the Land.  This sacredness connotes an intrinsic right of the land to exist without defilement.

Section 4.8. *Rights are Self-Executing*:   All rights delineated and secured by this ordinance shall be self-executing and these rights shall be enforceable against both public and private actors, and shall not require implementing legislation for their enforceability.

Section 4.9. *Exemption.*   Nothing in this ordinance shall be construed in such a manner as to impact the water rights of acequias, Mutual Domestic Water Consumers Associations or land grant, or to affect or color any negotiations regarding water rights, distribution or usage between these political subdivisions and the County of Mora.

**Section 5.   Statements of Law Prohibitions Necessary to Secure Bill of Rights' Protections**

Section 5.1:   It shall be unlawful for any corporation to engage in the extraction of oil, natural gas, or other hydrocarbons within Mora County.

Section 5.2:   It shall be unlawful for any corporation to engage in the extraction of water from any surface or subsurface source within Mora County for use in the extraction of subsurface oil, natural gas, or other hydrocarbons, or for any director, officer, owner, or manager of a corporation to use a corporation to extract water from any surface or subsurface source, within Mora County, for use in the extraction of subsurface oil or natural gas or other hydrocarbons.  It shall be unlawful for a corporation to import water or any other substance, including but not limited to, propane, sand, and other substances used in the extraction of oil, natural gas, or other hydrocarbons, into Mora County for use in the extraction of subsurface oil, natural gas, or other hydrocarbons; or for any director, officer, owner, or manager of a corporation to do so.

Section 5.3:   It shall be unlawful for any corporation, or any director, officer, owner, or manager of a corporation to use a corporation to deposit, store, transport or process waste water, "produced" water, "frack" water, brine or other materials, chemicals or by-products used in the extraction of oil, natural gas, or other hydrocarbons, into the land, air or waters within Mora County.

Section 5.4:   It shall be unlawful for any corporation, or any director, officer, owner, or manager of a corporation to use a corporation to construct or maintain infrastructure related to the extraction of oil, natural gas, or other hydrocarbons within Mora County.   "Infrastructure" shall include, but not be limited to, pipelines or other vehicles of conveyance of oil, natural gas, or other hydrocarbons, and any ponds or other containments used for wastewater, "frack" water, or other materials used during the process of oil, gas, or other hydrocarbon extraction.

Section 5.5:   Corporations in violation of the prohibitions enacted by this ordinance, or seeking to engage in activities prohibited by this ordinance, shall not have the rights of "persons" afforded by the United States and New Mexico Constitutions, nor shall those corporations be afforded rights under the 1st or 5th amendments to the United States Constitution or corresponding sections of the New Mexico Constitution, nor shall those corporations be afforded the protections of the commerce or contracts clauses within the United States Constitution or corresponding sections of the New Mexico Constitution.

Section 5.6:   Individuals or corporations in violation of the prohibitions enacted by this ordinance, or seeking to engage in activities prohibited by this ordinance, shall not possess the authority or power to enforce State or federal preemptive law against the people of Mora County, or to challenge or overturn County ordinances adopted by the Mora County Commission, when that enforcement or challenge

interferes with the rights asserted by this ordinance or interferes with the authority of the county to protect the health, safety, and welfare of its residents.

Section 5.7:   No permit, license, privilege or charter issued by any state or federal agency, Commission or Board to any person or any corporation operating under a State charter, or any director, officer, owner, or manager of a corporation operating under a State charter, which would violate the prohibitions of this Ordinance or deprive any County resident(s), natural community, or ecosystem of any rights, privileges, or immunities secured by this Ordinance, the Treaty of Guadalupe Hildalgo, the New Mexico Constitution, the United States Constitution, or other laws, shall be deemed valid within Mora County.

Section 5.8:   The New Mexico Constitution's Bill of Rights, and the United States Constitution's Bill of Rights and amendments thereto, shall be recognized as preemptive law within the County of Mora only to the extent that their interpretation and application are not inconsistent with the provisions of this Ordinance regarding the powers and "rights" of corporations, and to the extent that they do not otherwise elevate property interests over rights secured by this Ordinance.

Section 5.9:   Laws adopted by the legislature of New Mexico and rules adopted by any State agency, and laws adopted by the United States Congress and rules adopted by any federal agency, shall be recognized as preemptive law within the County of Mora only if those laws and rules both expressly preempt County ordinances and charters, and provide greater protections for the health, safety, and welfare of the people of Mora County than County ordinances and charters.

## Section 6.   Strict Liability

Section 6.1:   Persons using corporations to engage in the extraction of oil, natural gas or other hydrocarbons in a neighboring municipality shall be strictly liable for all harms caused to the health, safety, and welfare of the residents of Mora County from those activities, and for all harms caused to ecosystems and natural communities within Mora County.

## Section 7.   Future Lost Profits

Section 7.1:   Within the County of Mora, corporate claims to "future lost profits" shall not be considered property interests under the law, and thus, shall not be recoverable by corporations seeking those damages.

## Section 8.   Enforcement

Section 8.1.   Any violation of any provision of this Ordinance shall be considered a criminal offense, punishable by maximum penalties and imprisonment as authorized by applicable New Mexico law.   Each instance of a violation of the

provisions of this Ordinance shall be treated as a separate offense subject to penalties authorized by applicable New Mexico law.

Section 8.2:   Mora County may enforce this Ordinance through an action brought in any court of competent jurisdiction.   In such an action, Mora County shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees, in addition to damages caused by the violation of this ordinance.

Section 8.3:   Any County resident shall have the authority to enforce this Ordinance through an action brought in a court of competent jurisdiction.   In such an action, the resident shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees.

Section 8.4:   Any person or municipality who brings an action to secure or protect the rights of natural communities or ecosystems against oil and gas extraction within Mora County shall bring that action in the name of the natural community or ecosystem in a court of competent jurisdiction.   Damages shall be measured by the cost of restoring the natural community or ecosystem to its pre-damaged state, and shall be paid to the County of Mora or other applicable governmental entity, to be used exclusively for the full and complete restoration of the natural community or ecosystem.

Section 8.5. Reinstatement of Moratorium on Oil and Gas Extraction.   In the event that this ordinance is overturned or nullified, for any reason, a moratorium on the extraction of oil and gas within the County of Mora shall become effective on the date that this ordinance becomes inactive.   That temporary moratorium shall have a duration of no more than six months, during which the Board of County Commissioners shall adopt another ordinance which permanently bans hydrocarbon extraction within the County of Mora.

## Section 9   Effective Date and Existing State Permit Holders

This Ordinance shall be effective five (5) days after the date of its enactment, at which point the Ordinance shall apply to any and all extractions of oil, natural gas, or other hydrocarbons in Mora County regardless of the date of any applicable governmental permits.

## Section 10. County Commission Action and Voter Referenda to Repeal Ordinance

The foundation for the making and adoption of this law is the people's fundamental and inalienable right to govern themselves, and thereby secure their rights to life, liberty, and the pursuit of happiness.   Accordingly, this Ordinance automatically suspends the operating rules of the Mora County Commission when the question of repealing this Ordinance is introduced.   Repeal of this ordinance shall require both a unanimous vote of the Mora County Commissioners voting in favor of the repeal

of the ordinance, and a voter referenda following that vote which shall make the repeal effective only if two thirds of the Mora County electorate vote to repeal the ordinance.

## Section 11.   People's Right to Self-Government - Preemption

Any attempts to use other units and levels of government to preempt, amend, alter, or overturn this Ordinance, or parts of this Ordinance, shall require the County Commission to hold public meetings that explore the adoption of other measures that expand local control and the ability of residents to protect their fundamental and inalienable right to self-government.   Such consideration may include actions to separate the County from the other levels of government used to preempt, amend, alter, or overturn the provisions of this Ordinance or other levels of government used to intimidate the people of Mora County or their elected officials.

## Section 12.   New Mexico Constitutional Changes

Through the adoption of this local law, the people of Mora County call for amendment of the New Mexico Constitution to explicitly secure a community right to local self-government that cannot be preempted by the State if the community's laws enforce rights or standards more protective of the health, safety, and welfare of the people of Mora County and the natural environment, communities, and ecosystems.   The people of Mora County also call for a state constitutional amendment that explicitly elevates community rights above corporate property rights, and that recognize the rights of nature enforceable by the residents of a community.

## Section 13.     Severability

The provisions of this Ordinance are severable.   If any court of competent jurisdiction decides that any section, clause, sentence, part, or provision of this Ordinance is illegal, invalid, or unconstitutional, such decision shall not affect, impair, or invalidate any of the remaining sections, clauses, sentences, parts, or provisions of the Ordinance.   The Mora County Commission hereby declares that in the event of such a decision, and the determination that the court's ruling is legitimate, it would have enacted this Ordinance even without the section, clause, sentence, part, or provision that the court decides is illegal, invalid, or unconstitutional.

## Section 14.   Repealer

All inconsistent provisions of prior Ordinances adopted by the Mora County Commission are hereby repealed, but only to the extent necessary to remedy the inconsistency.

Mora County, N.M., Ordinance 2013-10 (2013), filed January 10, 2014 (Doc. 1-1)("Ordinance") (alterations in original)(bold in original).

## PROCEDURAL BACKGROUND

On January 10, 2014, SWEPI, LP filed suit against Mora County, the Mora County Commissioners, and the Individual Commissioners, bringing a number of federal and state claims. See Complaint at 1.   SWEPI, LP seeks both injunctive and compensatory relief.   See Complaint ¶¶ 142-52, at 27-28.   Specifically, SWEPI, LP seeks a declaration that the Ordinance is unconstitutional and that it violates state law, and seeks an entry of judgment that permanently enjoins Mora County from enforcing the Ordinance.   See Complaint ¶ 2, at 2.  SWEPI, LP alleges nine claims of relief in the Complaint: (i) violation of the Supremacy Clause, U.S. Const. art. 6, cl. 2; (ii) violation of the Equal Protection Clause, U.S. Const. amend XIV, § 1; (iii) violation of the Dormant Commerce Clause, U.S. Const. art. 1, § 8, cl. 3; (iv) Substantive Due Process violation for taking arbitrary action; (v) Substantive Due Process violation for lacking a compelling or legitimate interest; (vi) Ultra Vires Legislation; (vii) Conflict Preemption; (viii) violations of the First and Fourteenth Amendments to the Constitution of the United States of America; and (ix) violations of the Fifth and Fourteenth Amendments for an inverse condemnation.   See Complaint ¶¶ 52-141, 13-26.

1.     **The JOP Motion.**

On May 13, 2014, SWEPI, LP moved for judgment on the pleadings pursuant to rule 12(c) of the Federal Rules of Civil Procedure.   See JOP Motion at 1.   SWEPI, LP asks the Court to declare the Ordinance unconstitutional and moves for judgment on the pleadings on its first (Supremacy Clause violation), second (Equal Protection Clause violation), fourth (Substantive Due Process violation for taking arbitrary action), fifth (Substantive Due Process violation for

lacking a compelling or legitimate interest), sixth (Ultra Vires Legislation), seventh (Conflict Preemption), eighth (First and Fourth Amendment violations), and ninth (Fifth and Fourteenth Amendment violations for an inverse condemnation) claims of relief.   See JOP Motion at 1.

### 2.    The Motion to Stay.

On May 15, 2014, SWEPI, LP filed the Motion to Stay.   See Motion to Stay at 1. SWEPI, LP requests the "Court to stay all discovery proceedings, including initial disclosures, pending resolution of" the JOP Motion.   Motion to Stay at 1.   SWEPI, LP contends that, as it set forth in the JOP Motion, the Ordinance is unconstitutional on its face, and that SWEPI, LP's claims "present pure questions of law on which no discovery is needed."   Motion to Stay at 1. SWEPI, LP asserts that rule 26(c)(1) of the Federal Rules of Civil Procedure grants the "Court with discretion to stay discovery pending the resolution of a dispositive motion."   Motion to Stay at 2.   It contends that courts use five factors in deciding in whether to stay discovery: "'(1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'"   Motion to Stay at 2 (quoting Cook v. Pensa, Inc., No. CIV 13-3282 RM/KMT, 2014 WL 1660480, at *1 (D. Colo. Apr. 24, 2014)(Tafoya, M.J.)).

SWEPI, LP argues that it has filed a dispositive motion -- the JOP Motion -- that "will almost certainly dispose of most, if not all, of the issues in this case."   Motion to Stay at 2. SWEPI, LP argues that discovery would "constitute a waste of resources on the part of both the litigants and the Court," and that "'discovery is generally inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.'"   Motion to Stay at 2 (quoting Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 201 F.R.D. 1, 2 (D.D.C.

May 21, 2001)(Robinson, M.J.)).   SWEPI, LP states that it has objected to making initial disclosures, as rule 26(a)(1)(C) requires, and that it will not provide the Defendants with its initial disclosures.   See Motion to Stay at 2 n.2.   It contends that, if the Court grants the JOP Motion, the scope of discovery in the case would be drastically reduced.   See Motion to Stay at 3.   SWEPI, LP asserts that, in resolving the Motion to Stay, "the Court may 'take a preliminary peek at the merits' of the [JOP Motion] to see if there is 'an immediate and clear possibility that it will be granted.'"   Motion to Stay at 3 n.3 (quoting Feldman v. Flood, 176 F.R.D. 651, 652 (M.D. Fla. 1997)(Corrigan, M.J.)).   It argues that such a preliminary peek would "only provide further support for granting a stay of discovery."   Motion to Stay at 3 n.3.   SWEPI, LP contends that it would be more efficient for the Court to rule on the JOP Motion before permitting discovery; otherwise, the parties may engage in discovery that the Court's ruling would moot.   See Motion to Stay at 3.   SWEPI, LP maintains that discovery may burden the Court by requiring the Court to resolve discovery disputes.   See Motion to Stay at 3.

SWEPI, LP also argues that a stay is appropriate, because it -- the plaintiff in this case -- is seeking the stay rather than the Defendants.   See Motion to Stay at 3.   SWEPI, LP contends that, because the Ordinance will remain in effect during the pendency of this case, the stay will not prejudice the Defendants' interests.   See Motion to Stay at 3.   Additionally, SWEPI, LP argues that the public at large has an interest in staying discovery, because the Defendants have been sued in their official capacities and because the costs of discovery will fall on the public.   See Motion to Stay at 3.   SWEPI, LP asserts that the public has an interest in not paying "costs associated with needless and wasteful discovery."   Motion to Stay at 4.

The Defendants responded to the Motion to Stay on June 12, 2014.   See Response in Opposition to Motion to Stay Discovery, filed June 12, 2014 (Doc. 35)("Response").   The

Defendants argue that the JOP Motion will not dispose of all or most of SWEPI, LP's claims.   See Response at 1-2.   Specifically, the Defendants contend that the JOP Motion does not present pure questions of law, that numerous factual disputes exist which cannot be resolved without discovery, and that the Defendants have asserted affirmative defenses which could result in the Court dismissing SWEPI, LP's claims.   See Response at 2.   The Defendants argue that they dispute SWEPI, LP's standing, the ripeness of the case, and the validity of SWEPI, LP's leases.   See Response at 2.   They argue that discovery is required to resolve those issues.   See Response at 2. The Defendants contend that it is inappropriate for SWEPI, LP to bring a suit and then prevent the Defendants from engaging in the necessary discovery to defeat its claims by making a "bald assertion" that the Court will grant the JOP Motion.   Response at 2 (citing Cont'l Ill. Bank & Trust Co. v. Caton, 130 F.R.D. 145, 148 (D. Kan. 1990)(Wooley, M.J.)("[B]are assertions that discovery will be unduly burdensome or that it should be stayed because pending dispositive motions will probably be sustained, are insufficient to justify the entry of an order staying discovery generally.")).

        The Defendants assert that the Court has discretion to stay discovery and that, in evaluating a motion to stay, the Court should weigh the burden of discovery against the hardship of denying discovery.   See Response at 3.   The Defendants contend that, if there is a fair possibility that the stay would harm another party, a party must show hardship or inequity to warrant a stay.   See Response at 3 (citing Ben Ezra, Weinstein, & Co. v. Am. Online Inc., 206 F.3d 980 (10th Cir. 2000)).   They maintain that discovery costs, without a specific burden, are unlikely to warrant a stay of discovery.   See Response at 3 (citing City of Lancaster v. Flagstar Bank, FSB, No CIV 10-1041, 2011 WL 1326280 (S.D. Ohio Apr. 5, 2011)(Preston Deavers, M.J.)).   The Defendants argue that SWEPI, LP has not shown a hardship or inequity that outweighs the hardships that

staying discovery would cause the Defendants.   See Response at 3.   The Defendants contend that SWEPI, LP's sole argument for staying discovery is that it will succeed on the JOP Motion.   See Response at 3-4.   They maintain that SWEPI, LP's success on the JOP Motion "is anything but assured," and that staying discovery would prevent the Defendants from being able to "promptly and adequately counter the plaintiff's claims."   Response at 4.   The Defendants argue that, without demonstrating a specific burden which discovery would cause, merely filing a dispositive motion is insufficient to stay discovery.   See Response at 4 (citing Oho Bell Tel. Co. v. Global Naps Ohio, Inc., No. CIV 06-0546, 2008 WL 641252, at *1 (S.D. Ohio Mar. 4, 2008)(Kemp, M.J.)).   The Defendants note that they have willingly participated in discovery by producing their initial disclosures and argue that the Court should require SWEPI, LP to do the same.   See Response at 4.

SWEPI, LP replied to the Defendants' response on July 14, 2014.   See Reply in Support SWEPI's Motion to Stay Discovery (Doc. 25), filed July 14, 2014 (Doc. 40)("Reply").   SWEPI, LP argues that the Defendants admit in the Response that the Court has discretion to grant a stay, but then argued that the Court would abuse its discretion by granting a stay.   Reply at 2. LP contends that the Defendants have not cited to any cases which state that the Court does not have broad discretion to stay discover.   See Reply at 2.   SWEPI, LP argues that, while one United States district judge for the District of Kansas stated, in a case that the Defendants cite, the general policy of the District of Kansas "'is not to stay discovery because dispositive motions are pending,'" Reply at 2 n.1 (quoting Cont'l Ill. Bank & Trust Co. v. Caton, 130 F.R.D. at 148), New Mexico does not have a general policy of not staying discovery and a different District of Kansas judge stated that it is appropriate to stay discovery until a pending dispositive motion is decided, especially when the court's decision on the dispositive motion will conclude the case,

when facts uncovered through discovery will not affect the resolution of the motion, or when discovery of every issue in a broad complaint would be burdensome and wasteful, see Reply at 2 n.2 (citing Kutilek v. Gannon, 132 F.R.D. 296, 298 (D. Kan. 1990)(Wooley, M.J.)).

SWEPI, LP argues that the Defendants' reliance on Ohio Bell Telephone Co. v. Global NAPs Ohio, Inc., is misplaced, because in that case, SWEPI, LP contends, the Honorable Terence P. Kemp, United States Magistrate Judge for the Southern District of Ohio, did not rule that discovery is never appropriate when a dispositive motion is pending.   See Reply at 3. SWEPI, LP argues that Judge Kemp noted that, whether he would grant the defendants' motion to dismiss for lack of subject matter jurisdiction was debatable and that the defendants filed their motion to dismiss thirteen months after the plaintiff filed the complaint and after the parties had conducted a fair amount of discovery.   See Reply at 3.   SWEPI, LP asserts that Judge Kemp's decision does not defeat its Motion to Stay, but instead "confirms the need for this Court to evaluate the specific circumstances of this case before deciding whether a stay is appropriate." Reply at 3. SWEPI, LP responds to the Defendants' argument that discovery is needed to resolve the issues of ripeness, standing, and the validity of SWEPI, LP's leases by arguing that, by its nature, a motion on the pleadings does not require discovery.   See Reply at 3-4.   SWEPI, LP maintains that staying discovery would not prejudice the Defendants' ability to present their defenses to the JOP Motion, because the Court will decide the JOP Motion "on questions of law where no disputed issues of material fact genuinely exist."   Reply at 4.   SWEPI, LP argues that discovery is not needed to resolve factual disputes, because there are no factual disputes.   See Reply at 4.   It contends that staying discovery would reduce or limit any disputes related to the proper scope of discovery.   See Reply at 4.

SWEPI, LP contends that, if the Court finds that it lacks standing, the Court will deny the JOP Motion, but that, if the Court finds that SWEPI, LP has standing, then any discovery on the issue of standing would be meaningless.   See Reply at 5.   It also maintains that issues regarding the "Ordinance's constitutionality are pure questions of law on which no discovery is required."   Reply at 5.   SWEPI, LP again argues that discovery would be wasteful and unnecessary.   See Reply at 5.   SWEPI, LP contends that it has not engaged in any delay tactics and that it filed the JOP Motion "at the earliest possible moment," before any discovery occurred.   Reply at 5.

    **3.**      **<u>The November 3, 2014, Hearing</u>.**

The Court held a hearing on November 3, 2014.   See Transcript of Hearing (taken November 3, 2014), filed November 14, 2014 (Doc. 54)("Tr.").   The parties argued the JOP Motion and the Intervention Motion for the majority of the hearing.   See Tr. at 3:13-167:3 (Anderson, Montaño, Haas, Long, Court).   The parties agreed that the Court needed to decide issues of standing and ripeness before it could resolve the substantive issues in the JOP Motion. See Tr. at 29:18-30:5 (Anderson, Court); id. at 32:19-24 (Haas, Court).   The Court informed the parties that, if SWEPI, LP has standing, it would declare some of the Ordinance's provisions unconstitutional.   See Tr. at 166:20-167:1 (Court).   The Court also advised the parties that it would likely treat the Defendants' challenge to SWEPI, LP's standing as a challenge under rule 12(b)(1) of the Federal Rules of Civil Procedure, and informed the parties that they could supplement the record with additional evidence to show standing or a lack thereof.   See Tr. at 30:16-31:2 (Anderson, Court); id. at 71:3-10 (Court).   The Court also informed the parties that, if it resolved the federal issues in the case, it might need to dismiss the state law claims for lack of jurisdiction.   See Tr. at 176:22-3 (Court).

SWEPI, LP noted that its Motion to Stay may be moot if the Court grants the JOP Motion and invalidates the Ordinance, but still requested that the Court rule on the Motion to Stay.  See Tr. at 167:4-15 (Montaño, Court).  The Court asked SWEPI, LP whether permitting discovery would be beneficial to SWEPI, LP because it could produce a more robust record on the issues of standing and ripeness.  See Tr. at 167:17-168:2 (Court).  SWEPI, LP responded by arguing that the Complaint and documents attached to it are sufficient to establish SWEPI, LP's standing and the case's ripeness.  See Tr. at 168:3-13 (Montaño).  SWEPI, LP asserted that the Defendants' contention that there are no commercially paying quantities of oil and gas wells in Mora County is something that the Defendants can determine by their own analysis without conducting discovery. See Tr. at 168:14-20 (Montaño).  SWEPI, LP argued that it spent millions of dollars on oil-and-gas leases in Mora County, and that it would provide the Defendants with information confirming that amount, but that it did not need to produce evidence of all of those leases, because it only takes one lease in Mora County to establish standing.  See Tr. at 168:21-169:23 (Montaño).  SWEPI, LP contended that, because it has established a specific property interest that is at stake in the case, discovery is not needed to determine standing.  See Tr. at 169:18-23 (Montaño).

The Defendants responded by arguing that, at the hearing, the parties discussed a lot of facts that were not a part of the record and that the lack of facts in the record, which facts could cause a factual dispute, indicated that SWEPI, LP had failed its burden of proof for the JOP Motion.  See Tr. at 170:2-7 (Haas).  The Defendants contended that they question the validity of SWEPI, LP's leases and that they need discovery to determine the leases' validity.  See Tr. at 170:8-11 (Haas).  The Defendants also argued that SWEPI, LP cannot prove its takings claim without additional facts.  See Tr. at 171:20-25 (Haas).

The Court informed the parties that it is inclined to deny the Motion to Stay, especially because the parties may want to supplement the record to better inform the Court on standing and ripeness issues, and to assist the Court in resolving the JOP Motion.   See Tr. at 173:2-8 (Court).

## LAW REGARDING STAYING DISCOVERY

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding.   See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."   (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.   How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55.   Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court of the United States has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow."   Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden.   See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)).   "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others."   Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484.   "The underlying principle clearly is

that 'the right to proceed in court should not be denied except under the most extreme circumstances.'"   Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The United States Court of Appeals for the Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays.   In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity, and appealed to the Tenth Circuit because the district court imposed conditions on the stay.   43 F.3d at 1386.   The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court. The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted)(internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on the facts and progress in each case. In S2 Automation LLC v. Micron Technology, Inc., the Court granted in part and denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting, and to issue a protective order.   See 2012 WL 3150412, at *1.   The Court denied the motion to the extent it requested a discovery stay, because, "[u]ltimately, a stay is unnecessary."   S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3150412, at *3.   The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded."   S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3150412, at *3.   Instead of granting the discovery stay, the Court

- 24 -

extended deadlines that it had previously set in the case based on the case's increasing complexity. See S2 Automation LLC v. Micron Tech., Inc., 2012 WL 3150412, at *3.   In Walker v. THI of New Mexico at Hobbs Center, No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions to dismiss two of the defendants, which would determine whether those defendants would remain in the suit and participate in discovery.   See 2011 WL 2728326, at *1.   The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines.   See Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *1.   The Court denied the motion to stay, because it did "not see a benefit to staying discovery."   Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2.   The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery.   See Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2.   "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case."   Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2.

## LAW REGARDING RULE 12(c)

Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take notice.   See Fed. R. Civ. P. 12(c).   A motion pursuant to rule 12(c) is generally treated in the same manner as a rule 12(b)(6) motion to dismiss.   See Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992).   The court accepts all well-pleaded allegations of the non-moving as true and views all facts in a light most favorable to the non-moving party.   See Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).   In ruling on a motion to dismiss for failure to

state a claim, "courts should look to the specific allegations in the complaint to determine they plausibly support a legal claim for relief."   Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007)(citation omitted)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Erickson v. Pardus, 551 U.S. 89 (2007).

## LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."   Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).   A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.   See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").   Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.   Fed. R. Civ. P. 12(b)(1).   The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."   Ruiz v. McDonnell, 299 F .3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.   See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).   But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations.   A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).   In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133 JB/KBM, 2011 WL 6013025, at *8

(D.N.M. Sept. 30, 2011)(Browning, J.)(quoting Alto Eldorado Partners v. City of Santa Fe, No.

CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. Mar. 11, 2009)(Browning, J.)).

The United States Court of Appeals for the Fifth Circuit has stated,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its
> very power to hear the case -- there is substantial authority that the trial court is
> free to weigh the evidence and satisfy itself as to the existence of its power to hear
> the case.   In short, no presumptive truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the

complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on

affidavits or other evidence properly before the court.   See New Mexicans for Bill Richardson

Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th

Cir. 1995).   In those instances, a court's reference to evidence outside the pleadings does not

necessarily convert the motion to a rule 56 motion for summary judgment.   See Holt v. United

States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion

intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6)

rule 56.   See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999);

v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).   "When deciding whether jurisdiction is

intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of

the jurisdictional question requires resolution of an aspect of the substantive claim.'"   Davis ex

rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).   The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.   See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."   (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.   "Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)."   Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.   See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."   Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).   The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."   The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma,

- 29 -

519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.   If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").   The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.   See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).   If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).   See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).   The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.   Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).   It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243,

251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice, see Anderson Living Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at *17, *37-39 (D.N.M. May 16, 2014)(Browning, J.).

**LAW REGARDING SUPPLEMENTAL JURISDICTION**

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).   Federal courts "possess only that power authorized by Constitution and statute."   Kokkonen v. Guar. Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).   Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

1.      **Congressional Authority.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."   Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.   The term "supplemental jurisdiction" is now used to refer collectively to the common-law doctrines of ancillary jurisdiction, pendent jurisdiction, and pendant-party jurisdiction.   28 U.S.C. § 1367, statutorily codifying Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 (1978)(outlining the doctrine of ancillary jurisdiction), and United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)(outlining the doctrine of pendent jurisdiction), and

invalidating <u>Finley v. United States</u>, 490 U.S. 545 (1989)(rejecting the doctrine of pendent-party

jurisdiction).   Federal courts may exercise pendent jurisdiction over state-law claims when "state

and federal claims . . . derive from a common nucleus of operative fact."   <u>United Mine Workers v.

Gibbs</u>, 383 U.S. at 725.   Supplemental jurisdiction gives federal courts the flexibility to hear a

cause of action after the introduction of third parties whose insertion into the litigation lacks

support of any independent grounds for federal jurisdiction, when those parties share a common

interest in the outcome of the litigation and are logical participants in it.  <u>See</u> <u>Owen Equip. &

Erection Co. v. Kroger</u>, 437 U.S. at 375 n.18.

     In 1988, the Honorable William H. Rehnquist, Chief Justice of the Supreme Court of the

United States, created the Federal Courts Study Committee to analyze the federal court system and

to recommend reforms.   <u>See</u> <u>James v. Chavez</u>, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at *5

(D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 James W. Moore et al., <u>Moore's Federal Practice</u>

§ 106.04[5] (Matthew Bender 3d ed.)).   In response to the Committee's findings regarding

pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed

the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that they form part of
> the same case or controversy under Article III of the United States Constitution.
> Such supplemental jurisdiction shall include claims that involve the joinder or
> intervention of additional parties.

28 U.S.C. § 1367(a).   In enacting 28 U.S.C. § 1367, Congress conferred upon federal district

courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules

on claim and party joinder to deal economically -- in single rather than multiple litigation -- with

matters arising from the same transaction or occurrence."   Report of the Federal Courts Study

Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

2.      **District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.   See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).   In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.   The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.   383 U.S. at 726.   Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

(1)      the claim raises a novel or complex issue of State law,

(2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)      the district court has dismissed all claims over which it has original jurisdiction, or

(4)       in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).   In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."   Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.   See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has

indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by 533 F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994) ("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.) ("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").   At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

The Tenth Circuit has held that district courts should generally decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."   Koch v. Del City, 660 F.3d at 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).   The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.   Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726.   The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when one of the 28 U.S.C. § 1367(c) factors applies.   See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.).   The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.'"   Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)(quoting 28 U.S.C. § 1367(c)(3)).[3]

## ANALYSIS

The Court will deny the Motion to Stay.   It is not assured that the Court will grant the JOP and declare unconstitutional the entire Ordinance.   Any discovery will not necessarily be wasteful, while a stay may delay the case's resolution.   Additionally, both parties can benefit

---

[3]Muller v. Culbertson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds that Muller v. Culbertson has persuasive value with respect to material issues and will assist the Court in its preparation of this Memorandum Opinion and Order.

from discovery by supplementing the record on the issues of SWEPI, LP's standing and the case's ripeness.

## I.     IT IS NOT ASSURED THAT THE COURT WILL GRANT THE JOP MOTION <u>IN FULL AND DECLARE THE ENTIRE ORDINANCE UNCONSTITUTIONAL.</u>

It is not assured that the Court will grant the JOP Motion in full and declare unconstitutional the entire Ordinance.   SWEPI, LP argues that staying discovery is appropriate when a "'thoroughly dispositive'" motion is pending.   Motion to Stay at 2 (quoting <u>Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.</u>, 201 F.R.D. at 2).   It is not clear, however, that the JOP Motion will be "'thoroughly dispositive.'"   <u>Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.</u>, 201 F.R.D. at 2 (quoting <u>Anderson v. U.S. Attorneys Office</u>, No. CIV A 91-2262 LFO, 1992 WL 159186, at *1 (D.D.C. June 19, 1992)(Oberdorfer, J.)).   At the hearing, the Court noted that, if it found that SWEPI, LP has standing and the case is ripe, it would likely declare unconstitutional some of the Ordinance's provisions.   <u>See</u> Tr. at 166:20-167:1 (Court).   The Court has also, previously, indicated that some of the Ordinance's provisions are inconsistent with the Supremacy Clause.   <u>See</u> <u>SWEPI, LP v. Mora Cnty.</u>,   No. CIV 14-0035, 2014 WL 6983288, at *48-49, & 49 n.22 (D.N.M. Dec. 5, 2014)(Browning, J.). The Court has not indicated, however, that the entire Ordinance is unconstitutional or entirely invalid.   Moreover, if the Court resolves all of the federal claims, it may lack jurisdiction to decide the state law claims.   <u>See</u> <u>Salazar v. City of Albuquerque</u>, No. CIV 10-0645, 2014 WL 6065603, at *50 (D.N.M. Oct. 27, 2014)(Browning, J.)("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting <u>Koch v. City of Del City</u>, 660 F.3d at 1248)).   Staying discovery thus may only serve to slow down litigation and delay the case's resolution.

Even if the Court declares unconstitutional some of the Ordinance's provisions, others may remain.   The Defendants argue that, if the Court declares unconstitutional portions of the Ordinance, the Court should severe those portions from the rest of the Ordinance.   See Defendants' Answer to Plaintiff's Motion for Partial Judgment on the Pleadings at 27-29, filed June 12, 2014 (Doc. 33)("JOP Response").   The Ordinance contains a severability clause. Ordinance § 13 ("The provisions of this Ordinance are severable."); JOP Response at 29.   It is, thus, possible that the Court will rule in SWEPI, LP's favor and declare unconstitutional several of the Ordinance's provisions, but then sever those provisions from the rest of the Ordinance.

Additionally, SWEPI, LP alleges that the Ordinance constitutes an unconstitutional regulatory taking.   See Complaint ¶¶ 133-141, at 25-26.   Just compensation is generally the appropriate remedy for a Takings Clause violation.   See Alto Eldorado Partners v. City of Santa Fe, 644 F. Supp. 2d 1313, 1330 (D.N.M. 2009)(Browning, J.), aff'd by 634 F.3d 1170 (10th Cir. 2011).   If the Court were to find that the Ordinance constitutes a taking, SWEPI, LP may be entitled to just compensation.   Discovery would be necessary to determine the amount of compensation owed to it, particularly the validity and value of their leases -- the very things that the Defendants want to obtain through discovery.   See Tr. at 170:8-18 (Haas).   Accordingly, the JOP Motion's resolution, even a resolution in SWEPI, LP's favor, might not completely resolve the case, but would require additional discovery for damages.

SWEPI, LP argues that, "[i]n evaluating a motion to stay discovery, the Court may . . . 'take a preliminary peek at the merits' of the motion to see if there is 'an immediate and clear possibility that it will be granted.'"   Motion to Stay at 3 n.3 (quoting Feldman v. Flood, 176 F.R.D. at 652).   A preliminary peek into the JOP Motion's merits is not helpful in this case. Determination of the JOP Motion will require resolving a number of constitutional and state law

issues.     In the JOP Motion, SWEPI, LP seeks a judgment on eight of its claims that each revolves around a different constitutional or state law theories of relief.   The Court would essentially need to resolve the JOP Motion before resolving the Motion to Stay.   Once the Court resolves the JOP Motion, however, the Motion to Stay is moot, because either the Ordinance will be declared unconstitutional, and thus no discovery is necessary, or it will be upheld and the case will move forward.   This path would be overly burdensome on the Court and would result in the Court essentially ignoring the Motion to Stay until it is moot.   Accordingly, because it is not assured that the Court will grant the JOP Motion, and because discovery may be necessary even if the Court grants the JOP Motion, the Court will exercise its discretion and deny the Motion to Stay.

## II.     DISCOVERY MAY BE BENEFICIAL TO THE COURT'S RESOLUTION OF THE JOP MOTION.

The Court has an additional reason for exercising its discretion in denying the Motion to Stay: discovery may be beneficial to the Court's resolution of the JOP Motion.    The Defendants challenge the validity of SWEPI, LP's leases to argue that SWEPI, LP lacks standing and to argue that the case is not ripe.   See Response at 2.   At the hearing, the Court noted that those are rule 12(b)(1) issues and that, while it is limited to the pleadings for the substance of the JOP Motion, it could treat the standing issues like a motion for lack of subject-matter jurisdiction under rule 12(b)(1).   See Tr. at 30:16-31:2 (Anderson, Court); id. at 31:21-32; id. at 71:3-10 (Court). In considering a rule 12(b)(1) motion, the Court may consider evidence outside the pleadings. See League of United Latin Am. Citizens, N.M. (LULAC) v. Ferrera, 792 F. Supp. 2d 1222, 1229 (D.N.M. 2011)(Browning, J.).   For this reason, the Court informed the parties that they may want to supplement the record for issues of standing and ripeness.   See Tr. at 173:3-11 (Court).

By permitting the parties to supplement the record, staying discovery may not be beneficial to the parties and may prejudice the Defendants.   Each party can benefit by allowing

supplementation on issues of standing and ripeness.   SWEPI, LP contends that it has already established standing, see Tr. at 168:3-13 (Court), but also contends that it has spent over a million dollars on oil-and-gas leases in Mora County, see Tr. at 61:1-8 (Montaño, Court).   While SWEPI, LP may have established its standing solely through the documents attached to the Complaint, if it provided the Court with a dozen leases worth over a million dollars, the issue would be clearer. On the other hand, the Defendants need to supplement the record to show the leases invalidity. The Defendants contend that SWEPI, LP has not shown that its leases are valid.   See Tr. at 47:6-48:2 (Haas).   The Defendants may wish to introduce evidence showing that the leases are not valid or have no value.   Discovery may assist SWEPI, LP in proving the validity of its leases and their value.   Discovery may also assist the Defendants in proving the invalidity of the leases.

Furthermore, if the Court permitted supplementation, but then stayed discovery, the Defendants would be prejudiced.   Information concerning SWEPI, LP's leases is likely in its possession, including information concerning the validity of its leases.   SWEPI, LP, thus, readily has access to the necessary information to prove the validity and value of its leases, while the Defendants might not.   The Defendants likely need to conduct discovery to gain access to relevant evidence going to the leases' validity.   By permitting supplementation, but staying discovery, the Court would provide SWEPI, LP with a platform to show its side of the story while denying the Defendants the same opportunity.   The Court will not prejudice the Defendants.   In exercising its discretion, the Court will deny the Motion to Stay.

**IT IS ORDERED** that the Motion to Stay Discovery, filed May 15, 2014 (Doc. 25), is denied.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Bradford C. Berge
Larry J. Montaño
John C. Anderson
Michael H. Feldewert
Holland & Hart, LLP
Santa Fe, New Mexico

      *Attorneys for the Plaintiff*

Jeff H. Haas
Law Offices of Nanasi & Haas
Santa Fe, New Mexico

      -- and --

Nancy Ruth Long
Justin W. Miller
Long Komer & Associates, P.A.
Santa Fe, New Mexico

      *Attorneys for the Defendants*

Jeff H. Haas
Law Offices of Nanasi & Haas
Santa Fe, New Mexico

      *Attorneys for Defendant-Intervenors*